**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. 11-cv-01874-RC |
| ONE GULFSTREAM G-V JET AIRCRAFT DISPLAYING TAIL NUMBER VPCES, ITS TOOLS AND APPURTENANCES, | |
| Defendant. | |

**CLAIMANTS' REPLY TO THE GOVERNMENT'S OPPOSITION TO CLAIMANTS'
MOTION TO DISMISS COMPLAINT FOR FORFEITURE *IN REM* AND REQUEST
FOR A HEARING ON FOREIGN LAW**

Claimants, Ebony Shine International Ltd. and Teodoro Nguema Obiang Mangue, by and through the undersigned counsel, respectfully submit their Reply to the Government's Opposition to Claimants' Motion to Dismiss Complaint for forfeiture *in rem* and request for a hearing on foreign law.

Respectfully submitted,

/s/ Juan P. Morillo
Juan P. Morillo (D.C. Bar. No. 475196)
L. Lindsay Pinto (D.C. Bar No. 984713)
M. Veronica Yepez (D.C. Bar No. 983950)
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, DC  20006-1801
Telephone: (202) 974-1500
Facsimile:  (202) 974-1999
Email: jmorillo@cgsh.com

*Attorney for Claimants*

DATED:  April 18, 2012

1

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

I.   28 U.S.C. § 1355(B)(2) DOES NOT ELIMINATE ARTICLE III'S CASE
     OR CONTROVERSY REQUIREMENT, WHICH THE GOVERNMENT
     DOES NOT MEET ................................................................................................... 3

II.  THE COURT SHOULD DISMISS THE COMPLAINT BASED ON
     PRINCIPLES OF COMITY AND THE RELATED ACT OF STATE
     DOCTRINE .............................................................................................................. 5

III. THE GOVERNMENT'S CASE IS BARRED BY EQUITABLE
     ESTOPPEL ............................................................................................................... 7

IV.  THE GOVERNMENT'S COMPLAINT FAILS TO STATE A CLAIM
     UPON WHICH RELIEF CAN BE GRANTED ...................................................... 10

     A.   There Is No Exception To The Heightened Pleading Standard
          Applicable Here ............................................................................................ 10

     B.   The Government Fails to Meet The Heightened Pleading Standard ....... 11

     C.   The Government Fails To Plead Any Violation of Equatoguinean
          Law, Which Is Required Under Each Theory Of Forfeiture .................. 12

          1.   Extortion Is Not A Criminal Offense Under The
               Equatoguinean Penal Code ............................................................ 13

          2.   The Penal Code Articles Criminalizing Misappropriation,
               Theft, and Embezzlement Do Not Apply To Minister
               Nguema Because He Is A Member Of The Government,
               Not A Civil Servant ........................................................................ 16

     D.   The Government Fails To Plead A Substantial Connection
          Between The Aircraft And The Criminal Acts It Alleges As
          Required ........................................................................................................ 19

     E.   The Government Fails to Plead the Requisite Knowledge Element
          of Counts II and III ...................................................................................... 21

     F.   The Complaint Fails To Plead Specific Intent To Conceal Required
          Under Count III ............................................................................................ 22

     G.   The Complaint Fails To Plead That The Aircraft Derived From A
          Felony Required Under Count III ................................................................ 23

V.   A DECISION ON FOREIGN LAW AT THIS STAGE OF THE
     PROCEEDINGS IS BOTH APPROPRIATE AND NECESSARY .................... 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Federal Cases**

*AIM Int'l Trading, L.L.C v. Valcucine S.p.A.,*
    IBI, L.L.C., 02 Civ. 1363 (PKL), 2003 U.S. Dist. LEXIS 8594 (S.D.N.Y.
    May 22, 2003) .......................................................................................................... 24

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service,*
    297 F. Supp. 2d 165 (D.D.C. 2003) ........................................................................ 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 21

*Baldwin v. Hashemite Kingdom of Jordan,*
    No. 1:12-cv-39, 2012 U.S. Dist. LEXIS 20755 (S.D. Ohio Feb. 17, 2012) ........... 6

*Cinciarelli v. Reagan,*
    729 F.2d 801 (D.C. Cir. 1984) ................................................................................ 7

*City of Moundridge v. Exxon Mobil Corp.,*
    250 F.R.D. 1 (D.D.C. 2008) .................................................................................... 10

*Cobell v. Norton,*
    391 F.3d 251 (D.C. Cir. 2004) ................................................................................ 4

*EEOC v. St. Francis Xavier Parochial Sch.,*
    117 F.3d 621 (D.C. Cir. 1997) ................................................................................ 7

*Eurasia Int'l. v. Holman Shipping,*
    411 F.3d 578 (5th Cir. 2005) ................................................................................... 4

*Evans v. United States,*
    504 U.S. 255 (1992) ................................................................................................ 13

*Florida, Dep't of State v. Treasure Salvors, Inc.,*
    621 F.2d 1340 (5th Cir. 1980) ................................................................................ 5

*Future Indus. of Am., Inc. v. Advanced UV Light Gmbh,*
    Civil Case No. 3:09-cv-00966 (JCH) 2010 U.S. Dist. LEXIS 90310 (D. Conn.
    Sept. 1, 2010) .......................................................................................................... 24

*Gasner v. Cnty. of Dinwiddie,*
    162 F.R.D. 280 (E.D. Va. 1995) *aff'd,* 103 F.3d 351 (4th Cir. 1996) .................... 7

*Genesis Health Ventures, Inc. v. Sebelius,*
    798 F. Supp. 2d 170 (D.D.C. 2011) ........................................................................ 9

**TABLE OF AUTHORITIES**
**(continued)**

*George v. Bank of Am.,*
   Civ. Action No. 10-1359, 2011 WL 5304054 (D.D.C. Oct. 31, 2011)................... 7

*Graham v. SEC,*
   222 F.3d 994 (D.C. Cir. 2000)................................................................. 8

*Gustave-Schmidt v. Chao,*
   226 F. Supp. 2d 191 (D.D.C. 2002)......................................................... 7

*Hamilton v. Paulson,*
   542 F. Supp. 2d 37 (D.D.C. 2008)........................................................... 7

*Haywin Textile Prods., Inc. v. Int'l Fin. Inv. & Commerce Bank Ltd.,*
   152 F. Supp. 2d 409 (S.D.N.Y. 2001)...................................................... 24

*Heckler v. Cmty. Health Servs.of Crawford Cnty., Inc.,*
   467 U.S. 51 (1984)............................................................................. 8

*\*Hilton v. Guyot,*
   159 U.S. 113 (1895)........................................................................... 5

*HTC Corp. v. IPCom Gmbh & Co. KG,*
   Civil Action No. 08-1897 (RMC), 2009 WL 5908010 (D.D.C. Dec. 18, 2009) .... 7

*In re Extradition of Ye Gon,*
   768 F. Supp. 2d 69 (D.D.C. 2011) .......................................................... 15

*In re Vitamin Antitrust Litig.,*
   Misc. Mo. 99-197, 2000 U.S. Dist. LEXIS 7397 (D.D.C. May 9, 2000) .............. 10

*Investors Research Corp. v. SEC,*
   628 F.2d 168 (D.C. Cir. 1980)............................................................... 8

*Melea, Ltd. v. Jawer SA,*
   511 F.3d 1060 (10th Cir. 2007) ............................................................. 24

*Neubronner v. Milken,*
   6 F.3d 666 (9th Cir. 1993) ................................................................... 10

*Ramallo v. Reno,*
   934 F. Supp. 1 (D.D.C. 1996)................................................................ 7

*Republic of the Philippines v. Westinghouse Elec. Corp.,*
   43 F.3d 65 (3d Cir. 1994) .................................................................... 5-6

*Russello v. United States,*
   464 U.S. 16 (1983)............................................................................ 18

## TABLE OF AUTHORITIES
### (continued)

*Thyssen Steel Co. v. M/V Kavo Yerakas,*
    911 F. Supp. 263 (S.D. Tex. 1966) ........................................................ 25

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001) .................................................................................. 14

*U.S. ex rel. El-Amin v. George Washington Univ.,*
    Civil Action No. 95-2000 (JGP), 2005 U.S. Dist. LEXIS 3563 (D.D.C.
    Feb. 25, 2005) ........................................................................................ 14

*United States v. $1,700,000 in U.S. Currency,*
    545 F. Supp. 2d 645 (E.D. Mich. 2008) ................................................ 20

*United States v. $125,938.62,*
    537 F.3d 1287 (11th Cir. 2008) ............................................................ 16

*United States v. $22,173 in U.S. Currency,*
    716 F. Supp. 2d 245 (S.D.N.Y. 2010) .................................................... 20

*United States v. $22,474 in U.S. Currency,*
    246 F.3d 1212 (9th Cir. 2001) .............................................................. 20

*\*United States v. $242,484.00,*
    389 F.3d 1149 (11th Cir. 2004) ............................................................ 20

*\*United States v. $38,000.00,*
    816 F.2d 1538 (11th Cir. 1987) ............................................................ 10

*United States v. All Funds Deposited in Any Accounts Maintained in the Names of Meza
    or Castro,*
    63 F.3d 148 (2d Cir. 1995) ..................................................................... 4

*\*United States v. All Funds In Account Nos. 747.034/278, 747.009/278, & 747.714/278
    Banco Espanol De Credito, Spain,*
    295 F.3d 23 (D.C. Cir. 2002) ................................................................. 3

*United States v. Awan,*
    No.-CR-06-0154 (CPS), 2007 WL 749739 (E.D.N.Y. Mar. 7, 2007) .................... 16

*United States v. Campos-Serrano,*
    404 U.S. 293 (1971) ................................................................................ 14

*United States v. Mondragon,*
    313 F.3d 862 (4th Cir. 2002) ................................................................. 11

*United States v. Nardello,*
    393 U.S. 286 (1969) ................................................................................ 15

## TABLE OF AUTHORITIES
### (continued)

*United States v. One 1997 E35 Ford Van, VIN 1FBJS31L3VHB70844,*
  50 F. Supp. 2d 789 (N.D. Ill. 1999) ........................................................ 16-17

*\*United States v. One Partially Assembled Drag Racer,*899 F. Supp. 1334, 1342
  (D.N.J. 1995)........................................................................................... 20

*United States v. Page,*
  84 F.3d 38 (1st Cir. 1996)....................................................................... 23

*United States v. Pole No. 3172, Hopkinton,*
  852 F.2d 636 (1st Cir. 1988)................................................................... 10

*\*United States v. Real Property Known as 2291 Ferndown Lane, Keswick VA 22947-9195,*
  Civil Action No. 3:10-CV-0037, 2011 U.S. Dist. LEXIS 62776 (W.D. Va.
  June 14, 2011).......................................................................................... 13, 16

*United States v. U.S. Currency in the Sum of $185,000,*
  455 F. Supp. 2d 145 (E.D.N.Y. 2006) .................................................... 20

*W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l,*
  493 U.S. 400 (1990)................................................................................ 6

*Winter v. United States,*
  No. 03-16048, D.C. No. CV-97-01484-PRG, 2004 WL 542176 (9th Cir.
  Mar. 18, 2004)......................................................................................... 9

*Zurich Capital Mkts. Inc. v. Coglianese,*
  383 F. Supp. 2d 1041 (N.D. Ill. 2005) ................................................... 24

*Flores v. Emerich & Fike,*
  1:05-CV-0291 AWI DLB, 2008 U.S. Dist. LEXIS 49385 (E.D. Cal.
  June 18, 2008).......................................................................................... 23

*Thyssen Steel Co. v. M/V Kavo Yerakas,*
  911 F. Supp. 263 (S.D. Tex. 1966) ......................................................... 24

**Docketed Cases**

*United States v. One White Crystal Covered Bad Tour Glove & Other Michael Jackson Memorabilia,*
  No. CV-11-35-82 (C.D. Cal. Apr. 12, 2012) ........................................ 1, 11, 22

**Federal Statutes**

18 U.S.C. § 981(a)(1)(A) ............................................................................. 13, 21

18 U.S.C. § 981(a)(1)(B) ............................................................................. 13

18 U.S.C. § 981(a)(1)(B)(iii) ....................................................................... 13

## TABLE OF AUTHORITIES
### (continued)

18 U.S.C. § 981(a)(1)(C) ................................................................................... 13

18 U.S.C. § 1956 ............................................................................................ 15, 23

18 U.S.C. § 1956(a) ........................................................................................ 21

18 U.S.C. § 1956(a)(1)(B)(i) ........................................................................... 22

18 U.S.C. § 1956(c)(1) .................................................................................... 23

18 U.S.C. §1956(c)(1) ..................................................................................... 23

18 U.S.C. § 1956(c)(7)(B) ............................................................................... 16

18 U.S.C. §1956(c)(7)(B)(ii) ........................................................................... 16

18 U.S.C. § 1956(c)(7)(B)(iv) ......................................................................... 13

18 U.S.C. § 1957(a) ........................................................................................ 21

28 U.S.C. § 1355(B)(2) ................................................................................... 3-4

## INTRODUCTION

This case is *not* about whether (1) one approves of Minister Teodoro Nguema Obiang Mangue's ("Minister Nguema") lifestyle; (2) one approves of the form of government in Equatorial Guinea; (3) one agrees with the manner in which the Equatoguinean government awards concessions and government contracts; or (4) Equatoguinean laws comport with U.S. standards. On the contrary, this case is about whether the U.S. Government has (1) standing; (2) met its burden of pleading a violation of Equatoguinean law; and (3) met its heightened burden of pleading—with the requisite specificity—that the Aircraft[1] derived from *criminal* activity. The Government's case fails on all counts.

Indeed, the U.S. District Court for the Central District of California just dismissed a nearly identical complaint seeking the forfeiture of other assets owned by Minister Nguema. Opinion at 6, *United States v. One White Crystal Covered Bad Tour Glove & Other Michael Jackson Memorabilia*, No. CV-11-35-82 (C.D. Cal. Apr. 12, 2012) (granting motion to dismiss with leave to amend). In fact, the Government itself recognizes that where a forfeiture order cannot be enforced because the property is outside the Court's jurisdiction and foreign authorities are unwilling to enforce the order, as is the case here, pursuit of the forfeiture action would "*clearly be a waste of prosecutorial and judicial resources*."[2]

This action is a waste of prosecutorial and judicial resources. The Government does not dispute that the Aircraft (1) is located in Equatorial Guinea beyond the constitutional reach of this Court; (2) belongs to Minister Nguema, who is a sitting cabinet member of Equatorial Guinea in good standing; and (3) was purchased after the U.S. Department of Justice confirmed

---

[1]     Capitalized terms not defined herein have the same meaning as in Claimants' Motion to Dismiss.

[2]     Department of Justice, United States Attorneys' Criminal Resource Manual, Title 9, 280, available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/crm00280.htm (emphasis added).

to Minister Nguema that it did not consider the funds used to purchase the Aircraft subject to forfeiture.  The Government also concedes that this case turns on Equatoguinean law and that Minister Nguema has not been investigated much less prosecuted or convicted of violating any Equatoguinean law or indeed any U.S. law.  In addition, the Government concedes that Minister Nguema owns timber concessions granted in accordance with Equatoguinean law and owns timber and construction companies that operate legally in Equatorial Guinea.

Given these fatal flaws, it is no surprise that the Complaint is insufficiently pled.  The allegations are "framed in a vague, generalized manner [and are] incompatible with the pleading standard that applies to forfeiture in rem actions."  Opinion at 3, *United States v. One White Crystal Covered Bad Tour Glove.*  Indeed, the Government fails to sufficiently allege with particularity that Minister Nguema obtained the funds used to purchase the Aircraft in violation of Equatoguinean law.  It merely relies on allegations "devoted to describing Nguema's lavish lifestyle and profligate spending, which the Government then attempts to convert into illegal activity by stating conclusorily that Nguema's only legitimate income" is his government salary notwithstanding its own allegations that confirm that Minister Nguema has perfectly lawful sources of income.  *Id.* at 4 (citation omitted).  Moreover, the Government's efforts to allege that Minister Nguema's use of companies to hold his assets is indicative of his efforts to conceal the source of the funds used to purchase the Aircraft are similarly unavailing.  As Judge Wu concluded, the "use of shell companies and corporations to purchase luxury items, are commonplace financial arrangements and do not readily, without further allegations, support the reasonable belief that the Government will be able to meet its burden[.]"  *Id.* at 6 (citation omitted).

As the Claimants set forth in their Motion to Dismiss and the Government's Opposition fails to refute, the Court should dismiss the Complaint on constitutional, comity, and equitable estoppel grounds. In the alternative, the Court should dismiss the Complaint because it fails to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Supplemental Rule G(2)(f).

## ARGUMENT

### I.  28 U.S.C. § 1355(b)(2) DOES NOT ELIMINATE ARTICLE III'S CASE OR CONTROVERSY REQUIREMENT, WHICH THE GOVERNMENT DOES NOT MEET

Claimants argue that the Government lacks standing. Mot. at 15-18. In response, the Government instead argues that the Court has subject matter jurisdiction. Opp'n at 8-11. But 28 U.S.C. § 1355(b)(2), which provides that a forfeiture action against an asset "located in a foreign country" may be brought in this Court, does not eliminate the case or controversy requirement mandated by Article III of the U.S. Constitution. In *United States v. All Funds In Account Nos. 747.034/278, 747.009/278, & 747.714/278 Banco Espanol De Credito, Spain*, 295 F.3d 23, 27 (D.C. Cir. 2002) [hereinafter *Banco Espanol*], the case on which the Government principally relies (Opp'n at 8-11), the D.C. Circuit held that 28 U.S.C. § 1355(b)(2) confers jurisdiction over property located abroad *"[u]nless the Constitution commands otherwise."* *Id.* (emphasis added). Here, the Constitution so commands.

Unlike previous cases where it was likely that a foreign state would comply with a U.S. forfeiture order because the state could "be expected to live up to its treaty obligations," *id.*, here, Equatorial Guinea is *not* party to any mutual legal assistance or similar treaty mandating cooperation in the execution of a U.S. forfeiture order.[3] Moreover, and unlike any previous case,

---

[3]    The Government claims that the U.N. Convention against Transnational Organized Crime, *opened for signature* Dec. 12-15, 2000, 2225 U.N.T.S. 209 ("UNTOC"), to which Equatorial Guinea is a party, would mandate such assistance. This is wrong. The U.N. drafted

Equatorial Guinea has affirmatively and emphatically stated its certain intent not to execute any such order.[4] *See* Mot. at Ex. A ¶ 8.[5]

According to the Government, 28 U.S.C. § 1355(b)(2) should be applied to confer jurisdiction here, even though the Court has neither actual nor constructive control over the property at issue.[6] This is wrong because the resulting forfeiture order, having no effect, would

_____

the UNTOC as part of an initiative to create "international instruments addressing trafficking in women and children, combating the illicit manufacturing of and trafficking in firearms, their parts and components and ammunition, and illegal trafficking in and transporting of migrants, including by sea." UNTOC at 1. No such conduct is at issue here. Moreover, even if the treaty were to apply to the conduct at issue, the UNTOC's mutual legal assistance provision, Article 18, provides that "States Parties may decline to render mutual legal assistance pursuant to this article on the ground of absence of dual criminality." UNTOC, art. 18(9). Such an absence of dual criminality is present here, as discussed in Claimants' Motion to Dismiss and further below.

[4]     The Government's interpretation of the declarations of Equatorial Guinea's Minister of Justice and its Chief Public Prosecutor are strained at best. *See* Opp'n at 11-12. Justice Minister Mbengono clearly states that Equatorial Guinea will not enforce any forfeiture order issued by this Court in the present action because Minister Nguema has never been the subject of a civil or criminal investigation much less a prosecution or conviction by Equatoguinean authorities. Mot. at Ex. A. Moreover, the fact that the declaration of Equatorial Guinea's Chief Public Prosecutor, Juan Abaga Oyono, does not discuss providing assistance in executing a forfeiture order is irrelevant as such assistance falls under Justice Minister Mbengono's—not Mr. Oyono's—purview.

[5]     In spite of the Government's contention to the contrary (Opp'n at 13, n.12), the declarations submitted as part of the Motion to Dismiss comport with the requirements of LCvR 5.1(h) and thus may be properly considered by the Court. *Cobell v. Norton*, 391 F.3d 251, 260 (D.C. Cir. 2004) ("Local Rule 5.1(h) and 28 U.S.C. § 1746 contemplate as adequate certifications that are 'substantially' in the form of the language of their provisions. A declaration or certification that includes the disclaimer 'to the best of [the declarant's] knowledge, information or belief' is sufficient under the local rule, the statute."). If, however, the Court would prefer that Claimants revise the declarations to state that the declarants, all high ranking government officials of Equatorial Guinea, are signing under penalty of perjury, Claimants will submit the declarations revised accordingly.

[6]     Although the Government argues that *United States v. All Funds Deposited in Any Accounts Maintained in the Names of Meza or Castro*, 63 F.3d 148, 151 (2d Cir. 1995) has been "questioned," it concedes that it has not been overruled. Opp'n at 9, n.7. A circuit split thus exists on the issue of whether courts must possess actual or constructive control even after the enactment of 28 U.S.C. § 1355(b)(2).

be an advisory opinion prohibited by the Constitution.[7]  Even the Government's own Attorneys'

Criminal Resource Manual recognizes the futility of the action at issue here, stating:  "[W]hen it

is known or can be ascertained in advance that a particular foreign government either cannot or

will not recognize, enforce or otherwise make beneficial use of a forfeiture order obtained in [the

United States], it *would clearly be a waste of U.S. prosecutorial and judicial resources* to

pursue the forfeiture action."[8]    The Court should therefore dismiss the Complaint on

constitutional grounds.

## II.    THE COURT SHOULD DISMISS THE COMPLAINT BASED ON PRINCIPLES OF COMITY AND THE RELATED ACT OF STATE DOCTRINE

The Government's view of comity is deceptively narrow.  *See* Opp'n at 12-15.  The

exercise of comity is not limited to final foreign judgments.  As the U.S. Supreme Court made

clear in *Hilton v. Guyot*, 159 U.S. 113, 164 (1895), comity recognizes the "legislative, executive

*or* judicial acts of another nation."  (emphasis added).  Moreover, this case does not merely

---

[7]    The Government's assertion that Equatorial Guinea's cooperation is not needed to enforce any forfeiture order issued in these proceedings (Opp'n at 11) is wrong.  Unlike criminal forfeiture actions which proceed against persons, civil forfeiture actions proceed against property.  Thus, the defendant in this civil forfeiture action is the Aircraft, not the Claimants, and any forfeiture order must logically be executed against the Aircraft.  *See Eurasia Int'l. v. Holman Shipping*, 411 F.3d 578, 584 (5th Cir. 2005) ("A judgment *in rem* determines the status or condition of property and operates directly on the property itself").  To get around this, the Government argues that Supp. R. C(5) would allow the Court to order Claimants to bring the plane within the control of the Court.  But Rule C(5) is inapplicable here.  The ancillary process Rule C(5) refers to is used for appurtenances where the majority of the *res* is already within the control of the court.  *Florida, Dep't of State v. Treasure Salvors, Inc.*, 621 F.2d 1340, 1347 (5th Cir. 1980) (noting that ancillary process is meant to reach property appurtenant to the arrested *res*).  That is not the case here.  Further, Rule C(5) applies to an "action in rem in which process has been served as provided by this rule."  Supp. R. C(5).  That is also not the case here, as process has not been served on the Aircraft under either Rule C or Rule G.  *See* Supp. R. C(3)(b); Supp. R. G(c)(3)(iv).

[8]    *See supra* note 2 (emphasis added).  The Government's suggestion that the Aircraft could *possibly* land in a state that *might* be inclined to provide assistance in executing the forfeiture order (Opp'n at 10-11) is pure speculation and insufficient to save this misguided case.

involve "interpreting foreign law," as the Government claims. Opp'n at 16 n.17. Here, comity

counsels judicial deference because the Government's case "[p]urport[s] to place the court in the

position of supervising the law enforcement activities of a foreign sovereign nation against its

own citizens on its own soil." *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d

65, 78-79 (3d Cir. 1994) (vacating order that enjoined the Philippines from prosecuting witnesses

against it due to the Philippines' possible retaliatory motives for prosecution). Like the Third

Circuit, "[w]e are unaware of any court in the United States—or elsewhere—that has ever

attempted to inject itself in this manner into the internal law enforcement activities of a foreign

sovereign." *Id.* at 79.[9]

Furthermore, unlike any previous case, here the Government asks the Court not only to

supervise the law enforcement authorities of another nation but also to *pass judgment on the*

*validity of their actions or omissions.* Such an action is not only discouraged under the doctrine

of comity, but is also prohibited under the act of state doctrine. *W.S. Kirkpatrick & Co., Inc. v.*

*Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990) ("The act of state doctrine . . . requires

that, in the process of deciding, the acts of foreign sovereigns taken within their own

---

[9]    The Government argues that comity is a two-way street. Opp'n at 14. But it is also
"[e]ssentially a version of the golden rule:  a 'concept of doing to others as you would have them
do to you . . . .'" *Republic of the Philippines*, 43 F.3d at 75. Here, one can only imagine the
Government's reaction if Equatorial Guinea were to seek the forfeiture of an asset in
Equatoguinean courts on the basis that such asset were derived from U.S. law violations
committed by senior U.S. officials who had not been investigated or prosecuted by U.S.
authorities for such violations. *See id.* at 78 n.15.
        The Government argues that the Court should not decline to exercise jurisdiction based
on principles of comity because doing so would thwart "United States Congress' authority and
prerogative to oversee financial institutions in the United States." Opp'n at 14. This is baseless.
The Government has not alleged that Minister Nguema used any particular U.S. financial
institution to launder funds to purchase the Aircraft. And the Government has not alleged that it
initiated an investigation of any U.S. financial institution for possible money laundering offenses
committed in connection with the purchase of the Aircraft.

jurisdictions shall be deemed valid.").[10]

## III.  THE GOVERNMENT'S CASE IS BARRED BY EQUITABLE ESTOPPEL[11]

The Government is not immune from equitable estoppel.  Courts in the District of Columbia

Circuit have in fact previously applied principles of equitable estoppel against the Government.[12]

The test for equitable estoppel is whether (1) the Government made a definite representation;

---

[10]    See *Baldwin v. Hashemite Kingdom of Jordan*, No. 1:12-cv-39, 2012 U.S. Dist. LEXIS 20755, at *9 (S.D. Ohio Feb. 17, 2012) (finding plaintiff's claim that Jordanian officials ignored plaintiff's requests for access to official records barred under the act of state doctrine, which precludes U.S. courts from questioning the validity of "public acts or *omissions* of the government committed or *omitted* within its own territory") (internal quotations and citations omitted) (emphasis added).

[11]    The Government incorrectly claims that "Claimants' estoppel argument relies wholly on documents extrinsic to the Complaint."  Opp'n at 17.  The two letters from the U.S. Attorney's Office for the District of Columbia assuring Minister Nguema that the use of funds to purchase an aircraft would not violate U.S. money laundering laws (Mot. at Exs. G and J) are clearly referenced in paragraph 75 of the Government's Complaint.  Compl. at ¶ 75.  Claimants are therefore entitled to rely on them in their Motion to Dismiss.  *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (stating that in a motion to dismiss a claim, the court may consider documents incorporated by reference in the complaint); *see also Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) *aff'd*, 103 F.3d 351 (4th Cir. 1996) (noting that courts can consider facts plaintiffs "quoted, relied upon, or incorporated by reference in the complaint").

Claimants are similarly entitled to rely on the other exhibits to their Motion to Dismiss because they are either (1) in the public record; (2) documents whose accuracy cannot reasonably be questioned; or (3) materials on foreign law.  The Court may consider "matters of which . . . judicial notice" may be taken, such as public records.  *George v. Bank of Am., N.A.*, Civ. Action No. 10-1359, 2011 WL 5304054, at *2 (D.D.C. Oct. 31, 2011) (citation omitted) (internal quotation marks omitted); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  The Court can also take judicial notice of documents "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Hamilton v. Paulson,* 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008) (internal quotation marks omitted).  In addition, Federal Rule of Civil Procedure 44.1 provides that "in determining foreign law, the court, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1.  *See also HTC Corp. v. IPCom GMBH & Co. KG*, Civil Action No. 08-1897 (RMC), 2009 WL 5908010, at * 2 (D.D.C. Dec. 18, 2009).  Claimants respectfully ask the Court to take judicial notice and consider all the Exhibits to Claimants' Motion to Dismiss.

[12]    *See, e.g.*, *Cinciarelli v. Reagan*, 729 F.2d 801, 807-808 (D.C. Cir. 1984) (reversing district court and applying estoppel against the Government to prevent it from voiding agreement on basis of a regulation it previously agreed to waive); *Ramallo v. Reno*, 934 F. Supp. 1, 2 (D.D.C. 1996) (invoking estoppel against the Government to prevent it from denying the existence of an agreement not to deport the plaintiff).

(2) the party seeking to invoke estoppel relied on that representation to his detriment; (3) the party's reliance was reasonable; and (4) the Government engaged in affirmative misconduct. *See* Mot. at 22; Opp'n at 16-17 (both citing *Morris Commc'ns v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009)). This test is clearly met here.

    First, the Government made a definite representation that it had "no basis for either restraining or seizing proceeds used to finance this proposed sale as potentially forfeitable property." Mot. at Ex. G. The Government cites *Graham v. SEC*, 222 F.3d 994, 1008 (D.C. Cir. 2000) and *Investors Research Corp. v. SEC*, 628 F.2d 168, 174 n.36 (D.C. Cir. 1980) for the proposition that a failure to prosecute at an earlier time does not estop the Government from doing so later. Opp'n at 18. But the representations made in *Graham* and *Investors Research Corp.* were not definite. Rather, in *Graham*, the SEC stated that it could not form a conclusion regarding whether the conduct at issue complied with applicable securities regulations, and in *Investors Research Corp.*, the SEC simply provided "no indication that [the] arrangement [at issue] might violate section 17(e)." *Graham*, 222 F.3d at 1007; *Investors Research Corp.*, 628 F.2d at 174 n.35.

    Second, the Government does not dispute that Minister Nguema relied on the Government's representations when proceeding with the purchase of the Aircraft. *See* Opp'n at 19. Instead it argues that his reliance was unreasonable. Opp'n at 19. This is wrong.[13] As the cases cited by

---

[13]     The Government argues that Minister Nguema "provides no explanation as to how he relied detrimentally on the USAO's letters." Opp'n at 19. This ignores the obvious. "To analyze the nature of a private party's detrimental change in position, we must identify the manner in which reliance on the Government's misconduct has caused the private citizen to change his position for the worse." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 (1984). Here, Minister Nguema relied on the Government's representations to purchase a $38 million Aircraft that the Government now seeks to forfeit. This is the textbook definition of detrimental reliance. "Detrimental reliance is often denoted as a change of position or status of the promisor, that is, his acting or refraining from acting in such a manner and to

the Government illustrate, "[t]o show reasonable reliance, a party seeking estoppel must show

that it 'did not know nor should it have known that its adversary's conduct was misleading.'"

*Genesis Health Ventures, Inc. v. Sebelius*, 798 F. Supp. 2d 170, 184 (D.D.C. 2011) (citations

omitted). Here, Minister Nguema was ignorant of the specific facts—which the Government has

still failed to disclose—that indicate that the funds used to purchase the Aircraft would make the

Aircraft forfeitable.[14]  And, Minister Nguema had no reason to believe that the Government was

not fully forthcoming about the information it possessed regarding the potential forfeitability of

the Aircraft.  His reliance was therefore reasonable.[15]

    <u>Finally</u>, the Government's actions—inducing Minister Nguema to purchase the Aircraft

by relying on the same facts that the Government now claims warrant forfeiture—amount to

"affirmative misconduct."[16]  Allowing the Government to forfeit an aircraft the purchase of

which it sanctioned would be unjust.  Moreover, estopping the Government with regard to this

discrete matter—a private purchase—would not harm the public interest.  The Court should

---

such an extent as to change his position or status from that which he would otherwise have
occupied." 4 Am. Jur. Proof of Facts 2d 641 § 1. *See also Id.* § 4.

[14]    For the first time in its Opposition, the Government claims that "an investigation was
initiated into Nguema's conduct" (Opp'n at 18) at some time during the five years between the
Government's letters and the Government's filing of the present Complaint.  But the
Government's allegations mirror the facts contained in the 2004 U.S. Senate Permanent
Subcommittee on Investigations Report (*see* Mot. at Ex. F).  Thus even if this claim were
properly alleged in the Complaint—which it was not—it is utterly unsubstantiated.

[15]    Moreover, the Government's contention that "[i]f Nguema deliberately withheld material
facts . . . any reliance he placed on these letters is wholly unreasonable" fails. Opp'n at 19.  If
the Government has evidence that Minister Nguema "deliberately withheld" information that
would have been material to its conclusions in April 2005 and January 2006, surely it would
share this information with the Court.  Instead, the Government argues that Minister Nguema
*might* have withheld some such information, and *if* he did, his reliance would not have been
reasonable. Opp'n at 19.  This argument is pure speculation and insufficient to defeat Minister
Nguema's reasonable reliance.

[16]    *See, e.g., Winter v. United States*, 93 F. App'x 145, at 146 (9th Cir. 2004) (finding the
Government acted with affirmative misconduct when it mislead the plaintiff in settlement
negotiations.

therefore find the Government's claim barred by equitable estoppel.

## IV.  THE GOVERNMENT'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  There Is No Exception To The Heightened Pleading Standard Applicable Here

The Government concedes that under Supplemental Rule G(2)(f), it must "'state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.'" Opp'n at 6 (quoting Supp. R. G).  Yet, recognizing that it cannot meet the applicable heightened pleading standard, the Government now claims that the pleading standard in this case should be "relaxed" because the relevant facts are peculiarly within the Claimant's knowledge.  Opp'n at 7.[17]  However, Supplemental Rule G "contains *no exceptions* to [the particularity-in-pleading] requirement."[18]  The Government must allege sufficiently detailed facts to meet Supplemental Rule G's heightened pleading standard regardless of the Claimant's purported knowledge of relevant facts.  Here, the Government has not, and cannot, and the Complaint should therefore be dismissed.

---

[17]  The cases the Government relies upon to support its proposed "relaxed" standard are irrelevant as they discuss pleading standards under rules other than the Supplemental Rules at issue here.  The Government cites *City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 3-4 (D.D.C. 2008) and *In re. Vitamin Antitrust Litig.*, Misc. Mo. 99-197, 2000 U.S. Dist. LEXIS 7397, at *21 (D.D.C. May 9, 2000), both antitrust cases, deciding 12(b)(6) motions by applying the less stringent Rule 8(a) and 9(b) pleading standards; and *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993), a civil fraud case, applying the Rule 9(b) standard.  *See* Opp'n at 7.

[18]  *United States v. $38,000.00*, 816 F.2d 1538, 1548 (11th Cir. 1987) (emphasis added) (reversing district court and remanding with instruction to dismiss the Government's complaint for failure to comply with the Supplemental Rule's pleading requirements).  In fact, courts have squarely rejected the same theory that the Government seeks to advance here.  *See, e.g., United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 640-41 (1st Cir. 1988) ("[W]e reject a rule that would require district courts generally to look at the knowledge of the claimants in determining the sufficiency of a forfeiture complaint. . . . Rule E(2) leaves little room to doubt that a higher than normal standard of particularity is in order, and several courts have emphasized the need for particularity in the complaint itself.") (Rule E(2) is the predecessor of Rule G.  The Advisory Committee Note to Rule G states that the Rule should be read consistent with the case law developed around Rule E(2).  Advisory Comm. Note Supp. Rule G.).

**B.**    <u>The Government Fails to Meet The Heightened Pleading Standard</u>

A complaint in a civil forfeiture action must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supplemental Rule E(2)(a) Action *in rem* and Quasi *in rem*; *United States v. Mondragon*, 313 F.3d 862, 866 (4th Cir. 2002). The Government has failed to identify with any specificity details that might allow Claimants to begin an investigation and frame a response to the Government's allegations. The Complaint should therefore be dismissed.

The Government loosely alleges that Minister Nguema and the "Inner Circle" [19] perpetrated extortion. Compl. at ¶¶ 49, 50, 51, 52, 53, 54. But the Government fails to identify a single member of the faceless "Inner Circle." Nor has the Government identified even one of the victims of the purported extortion. Compl. at ¶¶ 49, 50, 51, 52, 53, 54 (alleging, as targets, "timber companies," "foreign companies," a "civil engineering firm," "companies operating in E.G.," and "a businessman in E.G."). Hundreds of companies, firms, and businessmen operate in Equatorial Guinea and hundreds of government contracts are awarded. Without additional specificity, Claimants cannot possibly determine which of these hundreds of companies or contracts the Government is alleging were targets of the supposed extortion schemes. The Government has also failed to allege the specific amounts of payments or gifts allegedly made. As in the California case, based on a nearly identical complaint, the allegations here lack sufficiently detailed facts about particular instances of extortion, including when the extortion occurred, and thus the complaint "clearly fails to meet the heightened pleading requirements of

---

[19]    The Complaint merely defines the Inner Circle as "A small number of individuals who hold critical positions of political and economic power in E.G." Compl. at 14.

Fed. R. Civ. P. Supp. R. G(2)(f)."  Opinion at 5, *One White Crystal Covered Bad Tour Glove & Other Michael Jackson Memorabilia.*

Similarly, the Government fails to allege facts supporting its misappropriation, theft, and embezzlement allegations with the particularity required to meet the pleading standard and also fails to identify the specific source or amount of the funds allegedly misappropriated.  For example, the Government does not identify the companies that submitted supposedly "inflated bids," the contracts for which these bids were submitted, or the companies involved in the alleged misappropriation of land.  Compl. at ¶ 66 (referring only to "companies owned by or associated with" the still unidentified members of the "Inner Circle"), ¶ 70 (referring only to "Company A, a foreign company operating in E.G." and "Company B").  Again, with hundreds of companies and government contracts, Claimants cannot possibly identify which ones the Government is referring to on the basis of such vague allegations.

### C.   The Government Fails To Plead Any Violation of Equatoguinean Law, Which Is Required Under Each Theory Of Forfeiture

The Government concedes that an "offense against a foreign nation," in this case a violation of Equatoguinean law, is a requisite element of all three theories of forfeiture in the Complaint.  Opp'n at 20, 28.  Implicitly conceding that one such offense alleged—extortion—does not exist under Equatoguinean law, the Government contends that (1) extortion should be defined under U.S.—rather than Equatoguinean—law; and (2) it is only required to allege an offense "related to or connected with" extortion—a new standard for which it cites no support.  Opp'n at 20, 23-24.  The Government contends that the remaining offenses it alleges—misappropriation, theft and embezzlement—(1) should also be defined under U.S. law; and (2) apply to appointed government officials like Minister Nguema because a *Spanish* dictionary and *Spanish* law professors state that the term "funcionario público" (in English, civil servant)

means any person employed in any capacity by the Government.  Opp'n at 29-32.  These arguments fail and the Complaint should be dismissed.

### 1. Extortion Is Not A Criminal Offense Under The Equatoguinean Penal Code

Contrary to the Government's assertions, the definition and elements of a crime under U.S. law have no bearing on the determination *of whether the offense is a crime under foreign law* for the purposes of the money laundering statutes at issue here.[20]  *See United States v. Real Prop. Known as 2291 Ferndown Lane, Keswick VA 22947-9195*, Civil Action No. 3:10-CV-0037, 2011 U.S. Dist. LEXIS 62776, at *12 (W.D. Va. June 14, 2011) (holding that in a forfeiture action under §§ 981(a)(1)(A) and (C), based on allegations of bribery in violation of Taiwanese law, "the federal bribery statute has no bearing on the determination of 'specified unlawful activity'[under 18 U.S.C. § 1956(c)(7)(B)(iv)].").[21]  Accordingly, the Court must

---

[20]     Even if the U.S. definition of "extortion" were relevant, which it is not, the Government cannot seem to decide which definition of extortion should apply.  The Government relies upon four different constructions of extortion under U.S. law:  one is set forth in the Complaint; two different definitions are included in the Opposition; and yet another interpretation is used by Professor Francisco Muñoz-Conde in his Declaration regarding Spanish law.  *See* Compl. at ¶ 56 (defining extortion as "obtaining extortionate payments from businesses operating in [Equatorial Guinea], through the wrongful use of actual or threatened force, violence, or fear, or under color of official right"); Opp'n at 20 (using the common law definition provided by *Evans v. United States*, 504 U.S. 255, 260 (1992) – "At common law, extortion was an offense committed by a public official who took 'by colour of his office' money that was not due to him for the performance of his official duties"); Opp'n at 20 (using the common law definition, but also including "acts by private individuals pursuant to which property is obtained by means of force, fear, or threats") (internal quotation marks omitted); Opp'n at Ex. A (defining extortion as "(i) public officials [] tak[ing] or request[ing], by color of official right, money or other payments that were not due to them for the performance of their official duties, or (ii) anyone, including public officials, [] obtain[ing] money or other payments by means of force, fear or threats, including fear of economic harm.").

[21]     The Government misleadingly attempts to downplay the clear holding in *Ferndown* that U.S. law "has no bearing" on the determination of specified unlawful activity in a forfeiture action under 18 U.S.C. §§ 981(a)(1)(A) and (C).  The Opposition quotes language from the court's analysis of whether the alleged offense against a foreign nation (in that case, bribery of a public official), would be punishable under U.S. law by a term of imprisonment of more than one year as required by 18 U.S.C. § 981(a)(1)(B).  *Id.* at *12-13.  18 U.S.C. § 981(a)(1)(B), however,

-13-

examine Equatoguinean law to determine whether an offense against a foreign nation has been committed. And, extortion is not a cognizable crime in Equatorial Guinea as the highest legal authority of Equatorial Guinea, the President of the Supreme Court,[22] clearly explained in his declaration.[23] *See* Mot. at 28; Decl. of the President of the Supreme Court, Mot. at Ex. H; and the certified English translation, Mot. at Ex. I; *see also*, Decl. of Dr. Abogo, Ex. A.

Recognizing that extortion is not codified as a criminal offense in Equatorial Guinea, the Government argues that it can nonetheless serve as the predicate offense here because other Penal Code articles prohibit the "conduct" of extortion as the "United States Congress—not Nguema—intended that term to mean." Opp'n at 23. But even this strained argument fails. Even if extortion were properly defined under one of the U.S. definitions of extortion as the Government contends, the Penal Code articles that the Government seeks to rely on, Articles

---

is not at issue in this case. Moreover, the Court in *Ferndown* looked to U.S. law only to determine whether the foreign offense "would be *punishable within the United States* by imprisonment for more than one year." 18 U.S.C. § 981(a)(1)(B)(iii).

[22] President Nsue holds Equatorial Guinea's highest judicial position. *See* Mot. at Ex. H. The Government's contention that his declaration is "deficient" because it is "[d]evoid of any details regarding his background or qualifications to opine on questions of criminal law" (Opp'n at 26) is merely another example of the Government's attempt to completely disregard Equatorial Guinea as a sovereign nation and should not be countenanced. The President of the Supreme Court is clearly qualified to opine on issues of Equatoguinean law. And the Government cannot seriously contend that it wishes to singlehandedly contest President Nsue's interpretation of Equatoguinean law, or that it wishes to do so through its purported experts on Spanish—not Equatoguinean—law.

[23] It is not unusual for extortion not to be codified as a crime. Indeed, Spain did not codify the crime of extortion until 1995. Mot. at 28, n.32. If extortion was already prohibited under the 1968 Spanish Penal Code as the Government argues, this amendment would have been unnecessary. Moreover, Articles 196, 198, 385, 386, and 390 continue to exist in the 1995 Spanish Penal Code along with the new crime of extortion, confirming that the provisions alleged by the Government do not criminalize extortion. *See* 1995 Spanish Penal Code Articles 541, 441, 419, 420, and 426; *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotations and citations omitted); *United States v. Campos-Serrano*, 404 U.S. 293, 301 (1971) (noting same and declining to interpret a criminal statute to find overlap with another statute such that it would render the second statute surplusage).

-14-

196, 198, 385, 386, and 390,[24] clearly do not criminalize the conduct of extortion.[25]  Rather, they

criminalize the distinct conduct of bribery, expropriation, and conflict of interest.  *See* Mot. at 27

(discussing elements of these offenses).

Recognizing the futility of these arguments, the Government contends that it is sufficient

to allege an offense against a foreign nation "related to or connected with" the conduct of

extortion.[26]  *See* Opp'n at 24 (internal quotation marks omitted).  This is wrong.  The plain

---

[24]    For complete text of these articles, *see* Equatoguinean Penal Code, Mot. at Exs. N and O.

[25]    In its Opposition, the Government impermissibly seeks to amend its legal theories of forfeiture by alleging the violation of four new Equatoguinean Penal Code articles (Articles 202, 493, 496, and 503) to support its theory that extortion is criminalized under Equatoguinean law. Opp'n at 22, n.22. The Opposition is the first time the Government mentions these four articles. The Government's improper attempt to amend its woefully deficient Complaint should not be permitted.  *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("'[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)).  Moreover, contrary to the Government's contention (Opp'n at 22, n.22) the use of the phrase "among others" does not give the Government license to assert an ever-expanding list of legal theories.  *See U.S. ex rel. El-Amin v. George Washington Univ.*, Civil Action No. 95-2000 (JGP), 2005 U.S. Dist. LEXIS 3563, *21 (D.D.C. Feb. 25, 2005) (finding, where "among others" was used to refer to unnamed and unspecified individuals, that a complaint's "inclusion of the phrase 'among others' destroys its particularity" and provides contradictory and inadequate notice to defendants under Fed. R. Civ. P. 9(b)).  Even if the Court were to consider these new articles—which it should not—they clearly do not criminalize extortion.

[26]    The Government attempts to rely on extradition cases for the proposition that the Court should look to the criminalized "conduct" and not to whether extortion is codified in Equatorial Guinea.  However, the argument that the analysis in extradition cases, that use the definition of the crime under U.S. law, can be applied in civil forfeiture cases is misleading.  Extradition cases, dealing with dual criminality, are inapplicable to civil forfeiture cases as extradition is based on a treaty in which the U.S. and a foreign country have already agreed as to how crimes will be defined.  *See, e.g., In re Extradition of Ye Gon*, 768 F. Supp. 2d 69, 72 (D.D.C. 2011) (noting that the extradition proceedings are governed by "the terms of the extradition treaty between the country requesting extradition and the country in which the individual is found"). No such treaty or agreement is involved in civil forfeiture cases.

Similarly, the Government tries to rely on the analysis and application of other federal criminal statutes prohibiting extortion to argue that the Court should look to the criminalized "conduct" rather than the label of an offense. Opp'n at 24. This reliance is also misplaced. The very purpose of the Travel Act the Government cites was to assist local law enforcement officials by allowing federal authorities to prosecute interstate "criminal conduct beyond the

language of 18 U.S.C. § 1956(c)(7)(B)(ii) applies only to offenses "involving…extortion," not also those "'related to or connected with' such conduct" as the Government contends.[27] *See* Opp'n at 24.  An offense "involving" extortion simply means that the offense is included in the foreign nation's definition of extortion.  *Real Prop. Known as 2291 Ferndown Lane*, 2011 U.S. Dist. LEXIS 62776 at *24 (finding that "the word 'involving' – as in 'involving bribery of a public official' . . . implicates the offense conduct included *in the foreign nation's definition of bribery*.") (emphasis added).  In sum, the Government can point to no crime of "extortion" prohibited by the Equatoguinean Penal Code, and thus the Aircraft cannot be subject to forfeiture on that basis.[28]

### 1.    The Penal Code Articles Criminalizing Misappropriation, Theft, and Embezzlement Do Not Apply To Minister Nguema Because He Is A Member Of The Government, Not A Civil Servant

The Government relies on Equatoguinean Penal Code Articles 394, 396, 401, and 514 to

---

reach of local officials" (meaning the officials where the crime was committed).  *United States v. Nardello*, 393 U.S. 286, 290 (1969).  But 18 U.S.C. § 1956, the federal criminal statute at issue here, is not designed to reach conduct beyond the reach of local officials – indeed its text shows that it is intended to address conduct that is "an offense against a foreign nation," in other words, conduct that is already criminalized under foreign law in the foreign jurisdiction where the offense occurs. 18 U.S.C. § 1956(c)(7)(B).

[27]    Nowhere in §1956(c)(7)(B) do the words "related to or connected with" appear.  Nor does the word "conduct" appear.  *See* 18 U.S.C. §1956(c)(7)(B).

[28]    *See, e.g., United States v. $125,938.62*, 537 F.3d 1287, 1290-92 (11th Cir. 2008) (the Government sought to seize property derived from the foreign offense of "embezzlement of public funds" where the claimant had been convicted of "embezzlement of public monies" under Nicaraguan law) (internal quotations and citations omitted).  *See also United States v. One 1997 E35 Ford Van, VIN 1FBJS31L3VHB70844*, 50 F. Supp. 2d 789, 802 (N.D. Ill. 1999) (finding that the government had adequately plead kidnapping and extortion as offenses against a foreign nation where the Israeli law expert's affidavit stated that kidnapping and extortion were crimes under Israeli law); *United States v. Awan*, No. CR-06-0154 (CPS), 2007 WL 749739, at *2 (E.D.N.Y. Mar. 7, 2007) (confirming that the defendant committed an offense against a foreign nation, namely murder as defined by Indian Penal Code Section 300 and destruction of property by means of explosives or fire as defined by Indian Penal Code Section 435).

allege misappropriation, theft, and embezzlement.[29]  However, the Government concedes that Articles 394, 396, and 401 apply only to "funcionarios públicos."[30]  It then argues that Minister Nguema is properly considered a "funcionario público" under Equatoguinean law because two Spanish law professors opined—without any reference to Equatoguinean law whatsoever—that the dictionary definition of the term includes anyone performing a public function.  Opp'n at 29-32.  This argument fails.

Professors Muñoz-Conde and Gomez, by their own accounts, have experience and knowledge in Spanish—not Equatoguinean—law.  Opp'n at Ex. A; Ex. D.  Their analysis regarding the meaning of "funcionario público" is made in a vacuum, without even cursory consideration of the Equatoguinean Constitution, other relevant Equatoguinean laws or jurisprudence.[31]  Their analysis is therefore wholly irrelevant and should not be considered.  *See, e.g., United States v. One 1997 E35 Ford Van, VIN 1FBJS31L3VHB70844*, 50 F. Supp. 2d 789, 802 (N.D. Ill. 1999) (using Israeli law sources to determine the content of Israeli law).

Cabinet ministers like Minister Nguema are not "funcionario públicos" under Equatoguinean law because (1) the Equatoguinean Constitution defines ministers as members of

---

[29]  The Government similarly tries to save its allegations of misappropriation, theft and embezzlement committed in violation of Equatoguinean law by arguing that these offenses should be defined under U.S. law.  Opp'n at 28-29.  This is wrong for the reasons discussed above.  *See supra* Part IV.B.1.

[30]  Members of the government are not immune if they engage in wrongful conduct, but they are not prosecuted under the Penal Code for offenses involving the conduct of civil servants.  Allegations of wrongdoing are investigated by the Parliament and if substantiated, the Parliament can remove a Minister from his or her cabinet post.  *See* Decl. Dr. Abogo, Ex. A.

[31]  In fact, Dr. Gomez relies primarily on Spanish language dictionaries to opine that any person engaged in public functions is a "*funcionario público*."  Opp'n Ex. D.  These are irrelevant.  But even if they were relevant, the Spanish Legal Dictionary Espasa defines "*funcionarios públicos*" as "[t]he officials of the Administration [who] are persons that have been incorporated into it by a relationship of professional and paid services, regulated under Administrative Law."  *See* Legal Dictionary Espasa at Ex. K.  This definition demonstrates that the term does not have the sweeping scope the Government suggests.

-17-

the government; (2) the Equatoguinean Penal Code itself differentiates between ministers and civil servants; and (3) other Equatoguinean laws confirm the distinction between members of the government and civil servants.

First, Article 49 of the Constitution clearly states that the members of the government include Ministers. *See La Constitución de la República de Guinea Ecuatorial*, art. 49 (1995), Ex. C; *see also* Decl. of Dr. Abogo, Ex. A.

Second, the Government misconstrues Article 119 of the Equatoguinean Penal Code to assert that the term, "funcionario público" refers to all persons engaged in public functions, including ministers. Opp'n at 31. Under Article 119, however, a "funcionario público" is anyone who by immediate provision of the Law, or by election or appointment by a competent Authority (defined in the Equatoguinean Penal Code as someone who "on his own or as a member of any Corporation or Court, has command of or exercises jurisdiction"), participates in the exercise of public administration. *See* Equatoguinean Penal Code, Ex. G. Minister Nguema is not an elected official, nor was he appointed by an Authority as defined by the Penal Code. *See* Decl. of Dr. Abogo. Ex. A. In addition, Minister Nguema joined the public administration pursuant to the Constitution, which itself makes clear that a minister is a member of the government not a civil servant for purposes of the Penal Code.[32]

---

[32]    Where articles of the Equatoguinean Penal Code contemplate conduct committed by members of the government, they clearly state so. For instance, Article 200 states that "[t]he *Minister* who orders payment of a tax not authorized by law shall be punished with total disqualification and a fine of 10,000 to 500,000 pesetas." *See* Equatoguinean Penal Code, Ex. G. (emphasis added). *See also* Decl. Dr. Abogo. Ex. A. Thus, the Penal Code itself clearly distinguishes between ministers who are members of the government and civil servants. If the provisions in Articles 394, 396, and 401 were to apply to cabinet ministers, the text of the Penal Code would have so specified. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (interpreting a criminal statute and holding that where "[the legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally

        <u>Third</u>, several other Equatoguinean laws also make a clear distinction between members of the government and "funcionarios públicos."  For example, Decree Law 1/2004 on Ethics and Dignity in the Performance of Public Service, in Article 6 specifically differentiates between the members of the executive branch, that is, the members of the government under the Constitution, and the "funcionarios" engaged in public administration.  *See* Mot. at Exs. L and M; *see also* Decl. Dr. Abogo, Ex. A.  Similarly, the law for the State's Civil Servants, Law Number 2/2005, which applies to the "funcionarios" of the central administration, states in Article 2 that "[e]xcluded from its scope are:  a) Members of the Government, General Secretaries, . . .".  *See* State's Civil Servants Law, Ex. E; *see also* Decl. Dr. Abogo Ex. A.

        Accordingly, the Government cannot plead misappropriation, theft and embezzlement as a matter of law because under Equatoguinean law, Minister Nguema is not a civil servant.

> **D.      The Government Fails To Plead A Substantial Connection Between The Aircraft And The Criminal Acts It Alleges As Required**

        The Government concedes that it must plead a substantial connection between the property subject to forfeiture and the criminal acts it alleges.[33]  The Government also implicitly concedes that Minister Nguema has legitimate sources of income in addition to his government salary because the Complaint itself alleges that Minister Nguema has timber concessions and owns multiple logging and construction companies.  Compl. ¶ 31, 36.  Importantly, the Government does not allege that these concessions are illegal or that the activities of Minister Nguema's companies are illegal.  *Id.*  Having so conceded, the Government's contention that

---

presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion") (internal citations and quotations omitted).

[33]      Opp'n at 37, n.34 ("For purposes of Section 981(a)(1)(A), the Government need only show a 'substantial connection' between the Defendant Aircraft and criminal activity.").

Minister Nguema has no legitimate source of income other than his government salary is untenable.

Further, even if the Government had not itself alleged additional sources of income—which it did—an allegation that Minister Nguema's wealth is unexplained, even when paired with an allegation that he engaged in criminal acts, is insufficient to plead a substantial connection as Rule G(2)(f) requires.[34]  *United States v. $22,474 in U.S. Currency*, 246 F.3d 1212, 1217 (9th Cir. 2001) (finding that Claimant's lack of ability to provide information about a current job, along with multiple other facts, "suggest that [he] was involved in some illegal activity," but that these facts alone did not provide the required "nexus specifically linking the incriminating circumstances to illegal drugs").[35]

The Government relies on cases discussing the nexus required for forfeiture of proceeds derived through illegal drug transactions for the proposition that it need not plead any connection between the illegal activity and the asset to be forfeited.  Such reliance is misplaced.  These cases state that the Government need not connect property or money to a *specific, individual drug transaction*.  However, courts are clear that the Government still must establish a connection between the property and illegal drug transactions as a whole.  *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (the Government "does not need to show a relationship between the property and a particular drug transaction – only that *the property was related to*

---

[34]     ***None*** of the other civil forfeiture cases the Government cites for the proposition that an alleged lack of legitimate income is sufficient to connect the property to a crime hold that a lack of legitimate income is in *itself* sufficient to establish a connection.  *See* Opp'n at 38 (collecting cases).

[35]     *See also United States v. One Partially Assembled Drag Racer*, 899 F. Supp. 1334, 1342 (D.N.J. 1995) (stating that an allegation that the claimant "engaged in illegal activities which generated proceeds" does not support a presumption that the property at issue must have been purchased with these proceeds).

*some illegal drug transaction*") (emphasis added).[36]

Here, the Government has pled *no* specific facts that provide a similar connection between the Aircraft and the alleged crimes.   Rather, it relies exclusively on conclusory statements that simply quote the elements required under the relevant forfeiture statute.   Opp'n at 34, n.28 (claiming that the Government alleges a connection between the Aircraft and the alleged illegal conduct in paragraphs 12, 86, 93, and 100 of the Complaint).[37]   Without allegations connecting the Aircraft to any alleged criminal activity, the Government has not met the pleading standard under Rule G(2)(f).  The Complaint should therefore be dismissed.

### E.    The Government Fails to Plead the Requisite Knowledge Element of Counts II and III

In Counts II and III, the Government alleges that, under 18 U.S.C. § 981(a)(1)(A), the Aircraft is forfeitable to the United States because it was "involved in a transaction or attempted transaction in violation of section 1956 [or] 1957 of [Title 18]."  Compl. ¶¶ 4, 5.  Both sections require knowledge that the property was derived from known illegal activity.   18 U.S.C. §§ 1956(a), 1957(a).  The Government argues that it need not allege this knowledge because a "relaxed" pleading standard applies here because the information is "peculiarly within [Minister Nguema's] knowledge."  Opp'n at 40.[38]  However, the cases that the Government cites for this proposition are inapposite because they all concern fraud claims, where the court considered the pleading standard under rules other than the Supplemental Rules.  *See* discussion *supra* p. 10 and

---

[36]    *See also United States v. U.S. Currency in the Sum of $185,000*, 455 F. Supp. 2d 145, 149 (E.D.N.Y. 2006) (same); *United States v. $1,700,000 in U.S. Currency*, 545 F. Supp. 2d 645, 649 (E.D. Mich. 2008) (same); *United States v. $22,173 in U.S. Currency*, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010) (same).

[37]    These conclusory allegations should not be taken as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[38]    The Government also argues that Claimants simply rehash their equitable estoppel argument here.  Opp'n at 39.  This is wrong.  As the Motion to Dismiss shows, the Government cannot establish, as a matter of law, the requisite element of knowledge where the Government specifically sanctioned the conduct at issue.  *See* Mot. at 32-33.

note 18.

Further, the Government argues that the facts are peculiarly within Minister Nguema's knowledge because the proceeds used to purchase the Aircraft were derived from illegal activity which he allegedly "orchestrated." Opp'n at 40. But the Government does not specify which illegal schemes Minister Nguema "orchestrated." *See* Opp'n at 40-41; *see also* Compl. Most of the alleged criminal acts were purportedly committed by unidentified members of the "Inner Circle." *See, e.g.,* Compl. ¶ 49 (alleging extortion schemes "involv[ing] members of the Inner Circle"). Minister Nguema thus cannot determine which acts are purportedly within his knowledge. This argument therefore fails and Counts II and III should be dismissed.

### F.    The Complaint Fails To Plead Specific Intent To Conceal Required Under Count III

The Government has failed to plead that the Aircraft was involved in a financial transaction that was "designed . . . to conceal or disguise . . . the source, the ownership, or the control of the proceeds of the specified unlawful activity[.]" 18 U.S.C. § 1956(a)(1)(B)(i). The Complaint does not allege that the purpose of the purchase of the Aircraft was to conceal the source of Minister Nguema's funds or his identity. On the contrary, the Government's own Complaint clearly shows that in attempts to purchase the Aircraft, Claimants made *no* effort to conceal their identities. According to the Complaint, Minister Nguema wired money from his personal account to the escrow account used to purchase the Aircraft. Compl. ¶ 82. Moreover, Minister Nguema used Ebony Shine, a company easily traceable to him, to title the Aircraft.[39] Compl. ¶ 7. *See* Opinion at 6, *United States v. One White Crystal Covered Bad Tour Glove &*

---

[39]    The Government claims that the Complaint alleged that Minister Nguema deregistered the Aircraft in the United States and re-registered it in the Cayman Islands. Opp'n at 42. Nowhere in the Complaint does the Government allege that Minister Nguema de-registered or re-registered the Aircraft, let alone that these actions were done for the purpose of concealing the source, ownership, or control of the proceeds of the alleged illegal activity. *See* Compl. ¶ 78 (alleging only that at the time of purchase, the Aircraft was registered in the United States).

*Other Michael Jackson Memorabilia*, No. CV-11-35-82 (C.D. Cal. Apr. 12, 2012) (The "use of shell companies and corporations to purchase luxury items are commonplace financial arrangements and do not readily, without further allegations, support the reasonable belief that the Government will be able to meet its burden of proof at trial with regards to the money laundering allegations.") (citation omitted).   Because the Government has failed to plead the requisite intent to conceal, Count III should be dismissed.

### G.   The Complaint Fails To Plead That The Aircraft Derived From A Felony Required Under Count III

The Government concedes that a felony offense must be punishable with imprisonment of more than one year.  Opp'n at 41, n. 39.  Equatoguinean Penal Code Articles 396 and 401 therefore cannot be predicate offenses for forfeiture under Count III because they do not contemplate prison sentences of *any length*, and thus cannot be considered felonies under 18 U.S.C. § 1956(c)(1).[40]  Moreover, it is the *Government's* burden to plead that the alleged offenses are felonies—a burden it has not met.  *Flores v. Emerich & Fike*, 1:05-CV-0291 AWI DLB, 2008 U.S. Dist. LEXIS 49385, *85-86 (E.D. Cal. June 18, 2008) (dismissing allegations of a violation of 18 U.S.C. § 1956 alleging conversion as the predicate act in part because the complaint failed to allege that conversion was a felony).  The Government has failed to meet its burden of pleading a violation of a felony and Count III should therefore be dismissed for this additional reason.

---

[40]   Articles 196, 198, and 390, which the Government alleges criminalize extortion, similarly do not contemplate a prison sentence of any length and thus are not felonies under 18 U.S.C. § 1956(c)(1). *See* Decl. Dr. Abogo, Ex. A. Where Congress has left the term "felony" in the statute undefined, it is presumed to have its common meaning of an offense punishable by imprisonment for more than one year and is not dependent on the classifications of individual states or countries. *See, e.g., United States v. Page*, 84 F.3d 38, 41 (1st Cir. 1996) ("felony" has its long standing meaning of "any offense punishable by death or imprisonment for a term exceeding one year") (internal quotations and citations omitted).

## V.    A DECISION ON FOREIGN LAW AT THIS STAGE OF THE PROCEEDINGS IS BOTH APPROPRIATE AND NECESSARY

It is both necessary and proper for the Court to make a determination of Equatoguinean law at this stage.[41] "In a typical litigation involving foreign law, a motion to dismiss may be an appropriate time to decide the substance of another country's law that bears on the case at hand." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, IBI, L.L.C., 02 Civ. 1363 (PKL), 2003 U.S. Dist. LEXIS 8594, at *19 (S.D.N.Y. May 22, 2003).[42]

Moreover, the Government's contention that Claimants have not provided notice of their intention to raise foreign law issues in this case is groundless.[43]  The purpose of notice is to avoid unfair surprise to the opposing party and unfair surprise is avoided where notice "gives the opposing party time to research the foreign rules."[44]  *Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F. Supp. 263, 266 (S.D. Tex. 1966).  Having brought a claim premised entirely on violations of Equatoguinean law, and spent no less than fourteen pages of its Opposition discussing that foreign law (Opp'n at 20-34), the Government cannot now credibly claim to be surprised that foreign law might be at issue.  Equatoguinean law issues are therefore ripe for the Court's resolution.

---

[41]    Claimants have proposed a hearing on foreign law merely for the convenience of the Court, recognizing the relative paucity of information on Equatoguinean law.

[42]    *See also, e.g., Future Indus. of Am., Inc. v. Advanced UV Light Gmbh*, Civil Case No. 3:09-cv-00966 (JCH) 2010 U.S. Dist. LEXIS 90310, at *21 (D. Conn. Sept. 1, 2010) (determining and applying German law under Rule 44.1 to grant a motion to dismiss); *Zurich Capital Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1055 (N.D. Ill. 2005) (determining and applying Bahamian law under Rule 44.1 on a motion to dismiss); *Haywin Textile Prods., Inc. v. Int'l Fin. Inv. & Commerce Bank Ltd.*, 152 F. Supp. 2d 409, 414 (S.D.N.Y. 2001) (deciding Bangladeshi law on a motion to dismiss under Rule 44.1).

[43]    Raising the issue of foreign law in a motion to dismiss satisfies the notice requirement. *See, e.g.*, Fed. R. Civ. P. 44.1 (notice "included in a pleading" is sufficient); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1071 (10th Cir. 2007) (same).

[44]    In fact, time to research foreign rules is only required to make notice sufficient where "the applicability of foreign law is not obvious at the outset." *Thyssen Steel Co.*, 911 F. Supp. at 266.

## CONCLUSION

For all of the foregoing reasons, Claimants respectfully submit that the Government's Complaint must be dismissed.

Respectfully submitted,

/s/ Juan P. Morillo
Juan P. Morillo (D.C. Bar No. 475196)
L. Lindsay Pinto (D.C. Bar No. 984713)
M. Veronica Yepez (D.C. Bar No. 983950)
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1801
Telephone: (202) 974-1500
Facsimile:  (202) 974-1999
Email: jmorillo@cgsh.com

Mike DeGeurin (D.C. Bar No. TX0092)
Foreman, DeGeurin & DeGeurin
300 Main Street
Houston, T.X.  77002
Telephone: (713) 655-9000
Facsimile:  (713) 655-1812
Email: mdegeurin@foremandegeurin.com

*Attorneys for Claimants*

DATED: April 18, 2012