# EXHIBIT A

## DECLARACIÓN DE VICTORIANO OBIANG ABOGO

Yo, Dr. VICTORIANO OBIANG ABOGO, declaro lo siguiente:

1. Subscribo esta declaración basada en mi experiencia y conocimientos adquiridos en más de veinte años en la práctica del derecho de Guinea Ecuatorial como abogado, magistrado, fiscal y asesor del Parlamento de Guinea Ecuatorial.

## EXPERIENCIA PROFESIONAL Y CALIFICACIONES

2. En este momento ejerzo como Magistrado del Tribunal Común de Justicia y Arbitraje de la OHADA (Organización para la Armonización en África sobre la Legislación Mercantil).

3. Soy de nacionalidad ecuatoguineana. Realicé mis estudios en la Facultad de Derecho y Relaciones Internacionales de la Universidad Estatal "TARAS SEVCHENKO" de Kiev, en la antigua URSS, actualmente Ucrania, de 1984 a 1990, donde obtuve una licenciatura en Derecho.

4. Ingresé en el Colegio Nacional de Abogados de Guinea Ecuatorial con el número de registro 33/90 cuando el Decano Excmo. Señor D. Luis MAHO SICACHA, una ilustre y respetada personalidad en Guinea Ecuatorial, era Presidente del Colegio. En aquel tiempo habían pocos profesionales del derecho en Guinea Ecuatorial por lo que yo fui el trigésimo tercero en ingresar al Colegio.

5. Comencé como pasante en el Gabinete del Excmo. Sr. D. Fermín NGUEMA ESONO, entonces Magistrado de la Corte Suprema de Justicia y actual Juez de Distrito en Valencia, España.

6. Por disposición constitucional del Artículo 39 (g) de la Ley Fundamental, el cual otorga al Jefe del Estado la facultad de nombrar y separar a los miembros del poder judicial mientras no hayan Jueces y Magistrados de carrera, fui nombrado Magistrado en la Audiencia Provincial de Bata en el año 1993. En 1996 fui promovido a Fiscal de la misma Audiencia hasta que fui cesado en 1997.

7. Tras una formación pedagógica en la materia de derecho, postulé en el año 1995 a una tutoría en la Universidad Española de Educación a Distancia en Guinea Ecuatorial, en la que enseñé las materias de Derecho Romano y las Nociones Jurídicas Básicas. Entre mis alumnos se encuentran muchos abogados que han ejercido la carrera de la abogacía y otros que han seguido la carrera judicial como jueces e, inclusive, ministros.

8. Desde 1997 a 2003, ejercí como abogado y asesor en el sector privado.

9. En el año 2003, fui contratado por el Parlamento como asesor jurídico, puesto en el cual permanecí hasta la fecha en la que fui nombrado Magistrado del Tribunal en que actualmente me desempeño. Como asesor traté con asuntos de corrupción, violación de los derechos humanos, incumplimiento de pactos internacionales, comisión de fronteras entre los países vecinos, entre otros. En esta posición elaboré textos legales y emití informes y dictámenes jurídicos.

10. En el año 2009, serví como asesor jurídico de una comisión investigadora del Parlamento en el caso de Enrique Mercader Costa, el ex Ministro de Transporte, Tecnología, Correos y Telecomunicaciones. La comisión investigó alegaciones de corrupción contra el Ministro que culminaron en la destitución de sus funciones.

11. Una vez aprobado mi nombramiento al puesto de Magistrado del Tribunal Común de Justicia y Arbitraje de la OHADA, tomé posesión del cargo el 5 de junio de 2011. Los vínculos de esa organización no guardan relación alguna con respecto a la subordinación de un Estado miembro por lo cual en mi posición no represento a Guinea Ecuatorial.

12. Como experiencia profesional, he recibido capacitación en el Centro Atlántico de Estudios Judiciales de Barcelona en España, en el cual recibí una formación puntual e intensiva para jueces, magistrados y fiscales de Guinea Ecuatorial en el año 2009. Además, en 2004, en la Escuela Regional Superior de la Magistratura de Porto Novo, Benín, recibí instrucción especializada para jueces y magistrados de los tribunales y juzgados de comercio, tribunales arbitrales sobre los conflictos de las sociedades mercantiles y los tribunales de casación. También he participado en varios cursos, como por ejemplo, (1) curso de formación para asesores jurídicos parlamentarios en España en 2008 y 2010, (2) curso de formación sobre derechos humanos organizado por la FED Española en el año 2005 y (3) curso de formación sobre derechos humanos organizado por la Oficina de Derechos Humanos de las Naciones Unidas en el año 1996.

**FONDO HISTÓRICO Y CULTURAL DE GUINEA ECUATORIAL**

13. La República de Guinea Ecuatorial, como se conceptúa en el Artículo 1° de la Constitución, es un Estado soberano, independiente, republicano, unitario, social y democrático, en los que los valores supremos son la unidad, la paz, la justicia, la libertad e igualdad.

14. La República de Guinea Ecuatorial fue una colonia española hasta el 12 de octubre de 1968 cuando ganó su independencia de España. El primer presidente fue D. Francisco MACÍAS, quien llevó la jefatura durante 11 años hasta que fue depuesto en el año 1979.

15. Después de la independencia, la Constitución de 1968 autorizaba la vigencia en Guinea Ecuatorial de las leyes españolas anteriores a 1968 que no estuvieran en contradicción con ella.

16. En 1973 se adopta una nueva constitución que derogó íntegramente la Constitución de 1968 e intentó poner fin a los lineamientos del sistema jurídico español que cubrían el vacío jurídico de la legislación ordinaria. Este nuevo régimen creó una falta formal de organización legislativa donde no había estructuras básicas fundamentales y sobre todo jurídicas, produciendo un vacío formal de derecho aplicable.

17. Luego de que el presidente D. Francisco MACÍAS fuera depuesto, el nuevo régimen promulgó la Ley Numero 4/1980 que restauró el estado de derecho previo permitiendo la aplicación subsidiaria en Guinea Ecuatorial de las leyes penales, civiles, mercantiles, administrativas y militares existente en Guinea Ecuatorial antes del 12 de octubre de 1968, hasta cuando la propia Guinea Ecuatorial pudiera disponer de sus propias leyes, reglamentos y demás normas de aplicación. De ello se entiende que, una vez promulgada una nueva norma, las leyes españolas anteriores serán derogada automáticamente, si así se ordena en su disposición derogatoria o final. El Decreto Ley Numero 4/1980 continúa vigente.

18. La jerarquía de fuentes de derecho vigentes en Guinea Ecuatorial es la siguiente: (1) la Constitución del Estado, (2) los decretos supremos y (3) las leyes. Debido a la corta historia del país como una nación independiente, el gobierno también reconoce la tradición oral y las costumbres en la implementación y aplicación de la ley.

19. Actualmente el Parlamento está considerando un borrador de un nuevo código penal que reemplazará el Código Penal vigente (que es el Código Penal Español de 1968). Dicho borrador está en la etapa de debate.

## FONDO SOCIOECONÓMICO DE GUINEA ECUATORIAL

20. Al momento de su independencia, Guinea Ecuatorial era un país poco desarrollado. Las tierras fueron nacionalizados por el presidente D. Francisco MACÍAS. Los ecuatoguineanos tenían derecho a comprar tierra, sin embargo, y podían hacerlo a crédito a cambio de cultivar la tierra.

21. Aproximadamente en 1980, después de asumir el poder el Presidente Teodoro OBIANG NGUEMA MBASOGO y con fin de incentivar la inversión extranjera, concedió a todos, inclusive los españoles que habían sido dueños de las tierras antes de que MACÍAS asumiera el poder, el derecho de comprar las tierras. Los españoles que habían sido previamente terratenientes tenían un periodo de aproximadamente dos años para reclamar las tierras.

22. Además de permitir que los ciudadanos compren tierras, el gobierno ecuatoguineano siempre ha permitido que los miembros del gobierno y los funcionarios públicos mantengan negocios privados mientras que desempeñan sus funciones oficiales. Esto es debido principalmente a dos razones: (1) en sus primeros años, el gobierno tenía muy pocos fondos para compensar a los oficiales y (2) debido al pasado colonial en el

cual existía un régimen donde los españoles eran los propietarios exclusivos de los latifundios, el gobierno quería evitar la situación en la cual el sector privado fuera dominado exclusivamente por extranjeros. El Decreto-Ley 1/2004 relativo a la Ética y Dignidad en el Ejercicio de la Función Pública en el Artículo 12 codifica la costumbre de permitir que los oficiales públicos mantengan negocios privados mientras ejercen sus funciones oficiales siempre que su rol en el negocio es pasivo.

23. Cualquier empresa nacional o extranjera tiene derecho a hacer ofertas para contratos públicos y recibir concesiones de obras. Los contratos públicos son administrados, no por el Ministerio de Infraestructura, sino, por la Oficina de Proyectos Nacionales de la República de Guinea Ecuatorial ("GE Proyectos"). GE Proyectos es un ente independiente y sirve como un intermediario entre el Ministerio de Infraestructura y el poder ejecutivo. Así los contratos públicos son concedidos, administrados y supervisados por GE Proyectos. Ningún ministerio, inclusive el Ministerio de Infraestructura, tiene su propia cuenta bancaria, sino que todos los fondos gubernamentales son manejados por el Tesoro Público. El proceso de otorgar contratos públicos es público y competitivo.

24. Cualquier individuo o empresa nacional o extranjera también tiene derecho a solicitar concesiones forestales. Las concesiones son otorgadas por el Presidente de la República a través de decretos supremos emitidos bajo el Artículo 39, inciso (c), de la Constitución.

### MATERIALES Y LEYES REVISADAS

25. Las leyes que se revisaron en la preparación de esta declaración son las siguientes:

   a. Constitución de la Republica de Guinea Ecuatorial

b. Código Penal de Guinea Ecuatorial (Artículos 196, 198, 385, 386, 390, 394, 396, 401, 514, 113 y 200)

c. Decreto-Ley Número 1/2004 sobre la Ética y Dignidad en el Ejercicio de la Función Pública

d. Ley Número 2/2005 sobre Funcionarios Civiles del Estado

e. Decreto-Ley Número 4/1980 que declara la aplicación subsidiaria en Guinea Ecuatorial de las leyes que regían hasta el 12 de octubre de 1968

f. Código Penal Español de 1995

## DEFINICIÓN DE MIEMBRO DEL GOBIERNO Y FUNCIONARIO PÚBLICO BAJO LA LEY DE GUINEA ECUATORIAL

26. De acuerdo con el Artículo 49 de la Constitución, que enumera los miembros de gobierno, los "miembros del gobierno" incluyen al Primer Ministro, los vice-Primeros Ministros, los Ministros de Estado, los Ministros, los Ministros Delegados, los vice-Ministros y los Secretarios de Estado. La Constitución hace, por lo tanto, evidente que los ministros son miembros del gobierno.

27. Los miembros del gobierno son nombrados por el Presidente de la República y sirven en sus funciones para determinar la política pública de la nación según sus deberes. Por ello, bajo el Artículo 50 de la Constitución, "[a]ntes de entrar en función, el primer Ministro y los demás Miembros del Gobierno prestan juramento de fidelidad ante el Presidente de la República, a su persona y a la ley Fundamental."

28. Asimismo, se entiende que para ingresar a la administración pública los funcionarios públicos deben cumplir con los requisitos necesarios para el cargo en cuestión lo que

incluye la "superación de las pruebas selectivas que se determinen," según lo señala el Artículo 50 de la Ley de Funcionarios Civiles del Estado.

29. Las leyes, inclusive el Código Penal, que son de menor jerarquía que la Constitución, también hacen la diferenciación entre lo que es un miembro del gobierno y un funcionario público.

30. Primeramente, la Ley de Funcionarios Civiles del Estado, Ley Número 2/2005, que aplica a los funcionarios de la administración central especifica claramente en el Artículo 2 que "[q]uedan excluidos en su ámbito de aplicación: a) Los Miembros del Gobierno, los Secretarios Generales… b) Los funcionarios al servicio de la Administración de Justicia, los cuales se regirán por sus disposiciones especiales. c) Los funcionarios de los Organismos Autónomos quienes se regirán por sus Estatuto…" Así, la Ley de Funcionarios Civiles del Estado, Ley Número 2/2005, confirma que los miembros del gobierno no son funcionarios públicos.

31. Por otro lado, otro ejemplo se puede encontrar en el Decreto-Ley Número 1/2004, sobre la Ética y Dignidad en el Ejercicio de la Función Pública, el cual establece en el Artículo 5 que ciertas personas "deberán presentar una declaración jurada patrimonial integral." A su vez, el Artículo 6 enumera las personas a quienes tal obligación se aplica. Estos son (1) los Miembros del Poder Ejecutivo, (2) los Representantes del Pueblo en la Cámara y (3) "[l]os Funcionarios o empleados que prestan servicios en las administraciones públicas, centralizada o descentralizada… y en otros entes del sector público." De esta manera, el Decreto-Ley Número 1/2004, sobre la Ética y Dignidad en el Ejercicio de la Función Pública, diferencia entre miembros del poder

ejecutivo, es decir los miembros del gobierno bajo la Constitución, y los funcionarios que prestan servicio en la administración pública.

32. En tercera instancia, el mismo Código Penal contiene artículos que se aplican a funcionarios públicos mientras otros sólo se aplican a ministros. Por ejemplo, el Artículo 200 establece que "[e]l Ministro que mandare pagar un impuesto no autorizado por las leyes, será castigado con la pena de inhabilitación absoluta y multa de 10.000 a 500.000 pesetas." Por ello, ya que el Código se refiere específicamente a "ministros" cuando un crimen es aplicable a estos, cuando se utiliza el término funcionario público, el delito no se puede aplicar a ministros. Es decir, estos términos no son intercambiables.

33. Además, el Artículo 119 de Código Penal define como funcionario público a "todo el que por disposición inmediata de la Ley, o por elección, o por nombramiento de Autoridad competente, participe del ejercicio de funciones públicas." Un ministro de gobierno ejerce su función por designación y nombramiento del Presidente de la República quien es considerado como "Jefe del Estado" y no como Autoridad bajo el Código Penal.

34. Así, basado en el análisis anterior, es claro que los Artículos 196, 198, 385, 386, 390, 394, 396 y 401 del Código Penal prohíben y penalizan acciones cometidas por los funcionarios públicos, mas no se aplican a los miembros del gobierno. Por ello no podrían ser utilizados por un fiscal para abrir un proceso criminal contra un miembro del gobierno.

## **EXTORSIÓN**

35. Se me ha solicitado que analice si la extorsión es criminalizada por las leyes de Guinea Ecuatorial.

36. El Código Penal de Guinea Ecuatorial no reconoce la extorsión como un delito. Por consiguiente, ninguna persona puede ser procesada criminalmente por un delito que no existe o no está codificado. El artículo 13 de la Constitución, inciso(s) establece que ("nadie debe ser castigado por un acto u omisión que en el momento de cometerse no estuviese tipificado ni castigado como infracción penal, ni puede aplicarse a una pena no prevista en la Ley. En caso de duda, la Ley penal se aplica en el sentido más favorable al reo").

37. No existe ninguna otra ley en el derecho de Guinea Ecuatorial que reconozca la extorsión como crimen.

38. Como punto de comparación y bajo el entendimiento de que no es aplicable en Guinea Ecuatorial, he revisado el Código Penal Español de 1995 que en efecto contiene el delito de "extorsión" en el Artículo 243 de ese código. Este delito es introducido en el Código Penal Español bajo un nuevo capítulo del mismo nombre "extorsión," Capítulo III del Titulo XIII el cual trata de los delitos contra el patrimonio y el orden socioeconómico y el cual en el Código Penal de 1968 se denominaba delitos contra la propiedad. El Artículo 243 y la conducta que este criminaliza no existen en el Código Penal de Guinea Ecuatorial. A diferencia del Código Penal Español, el Código Penal de Guinea Ecuatorial no ha sido revisado o actualizado para incorporar este delito. El hecho de que en el Código Penal Español se creó un nuevo capítulo para introducir el delito de extorsión, Articulo 243, sugiere

que tal cambio no fue una simple revisión de un delito ya existente en el código anterior y más bien la creación de un nuevo delito.

39. Los Artículos 196, 198, 385, 386 y 390 no son reconocidos como extorsión.

40. El Artículo 196 criminaliza la expropiación. Para que un acusado sea condenado por violación del Artículo 196, se tiene que probar que (1) siendo un funcionario público, (2) expropió bienes pertenecientes a otras personas, (3) un nacional o extranjero (4) que la expropiación se hizo fuera de los casos permitidos en la ley y (5) que la expropiación se hizo sin cumplir los requisitos legales.

41. El Artículo 198 se refiere a conflictos de intereses en casos en que (1) una autoridad o funcionario público, (2) se prevaleció de su cargo para ejercer ya sea (a) una profesión la cual está directamente relacionada con la esfera de sus atribuciones oficiales o (b) intervenir directa o indirectamente en empresas o asociaciones privadas con móvil de lucro.

42. Los Artículos 385, 386 y 390 son partes del Capítulo IX que trata de delitos del cohecho. Para que un persona sea condenada por violación del Artículo 385, se tiene que probar que (1) siendo un funcionario público, (2) (a) solicitó o recibió ya sea por él o por persona intermedia dadiva o presente, o (b) aceptó un ofrecimiento o promesa, (3) para ejecutar un acto que era relativo al ejercicio de su cargo y (4) el acto ejecutado constituye un delito.

43. El Artículo 386 requiere que se pruebe que el acusado (1) siendo un funcionario público (2) (a) solicitó o recibió ya sea por él o por persona intermedia dadiva o presente, o (b) aceptó un ofrecimiento o promesa (3) para ejecutar un acto que era

relativo al ejercicio de su cargo y (4) tal acto es un acto injusto que no constituye delito.

44. Por su parte, los elementos que se requieren para condenar a un acusado por el delito tipificado en el Artículo 390 incluyen que (1) siendo un funcionario público (2) aceptó regalos que le fueron presentados; (3) tales regalos fueron presentados (a) en consideración de su oficio o (b) para la consecución de un acto justo que no deba ser retribuido.

45. El Artículo 385 contempla una sentencia de prisión menor, es decir de seis meses y un día hasta de seis años además de multa. El Artículo 386 contempla la pena de prisión de un mes y un día hasta seis años dependiendo de si el acto injusto llegó a ejecutarse además de multa. Los Artículos 196, 198 y 390 no contemplan prisión como posible pena, solamente suspensión o inhabilitación especial o multa.

**APROPIACIÓN INDEBIDA, ROBO Y MALVERSACIÓN DE FONDOS**

46. Los Artículos 394, 396 y 401 del Código Penal de Guinea Ecuatorial están incluidos en la sección del Código Penal que trata de delitos cometidos por funcionarios públicos en el cumplimiento de sus cargos.

47. El Artículo 394 sanciona el robo de fondos públicos. Para que un acusado sea condenado por violación del Artículo 394, se tiene que probar que el acusado (1) siendo un funcionario público (2) robó o permitió que otros robaran ingresos públicos o bienes públicos (3) que estaban bajo su supervisión o disposición y (4) que los bienes estaban a su disposición debido a sus deberes como funcionario público.

48. El Artículo 396 se refiere al crimen de desvío de fondos públicos. Para condenar a una persona por una violación del Artículo 396, se requieren los siguientes elementos: (1) que siendo un funcionario público (2) desvió ingresos o bienes (3) que estaban bajo su cargo (4) para uso propio o de terceros.

49. El Artículo 401 se refiere a los conflictos de intereses. Para que un acusado sea condenado por violación del Artículo 401, es necesario probar que el acusado (1) siendo un funcionario público (2) directa o indirectamente adquirió (a) una participación financiera en un contrato o (b) una operación en que (3) debe participar por motivo de su cargo.

50. En el Título XIII, que trata de los delitos contra la propiedad, bajo el Capítulo de los Hurtos, se encuentra el Artículo 514 que criminaliza delito del hurto. Para que una persona sea condenada por violación del Artículo 514 se debe demostrar que el acusado (1) con fines de lucro y (2) sin violencia ni intimidación (3) tomó la propiedad que le pertenecía a otros (4) sin permiso del dueño.

51. El Artículo 394 contempla sentencia de prisión que depende del monto de la sustracción pero que puede abarcar un periodo desde un mes y un día hasta veinte años e inhabilitación absoluta. El Artículo 514 también contempla sentencia de prisión que depende del valor de la cosa hurtada que abarca un periodo de un mes y un día hasta seis años. Los Artículos 396 y 401 no contemplan prisión como posible pena. Las penas que contemplan es suspensión o inhabilitación especial y multa.

## PROCESO PENAL E INTERPELACIÓN DE CASOS DE CORRUPCIÓN EN GUINEA ECUATORIAL

52. Como fue expuesto anteriormente, los artículos del Código Penal que se refieren a funcionarios públicos, entre los cuales se encuentran los Artículos 196, 198, 385, 386, 390, 394, 396 y 401, no se aplican a los miembros del gobierno. Esto no significa, sin embargo, que si los miembros del gobierno cometen delitos, tales acciones son inmunes de repercusiones, sino que el proceso mediante el cual deben responder por sus acciones es distinto.

53. Según el Artículo 64 de la Constitución de Guinea Ecuatorial, inciso (j), las funciones del Parlamento incluyen "[i]nterpelar a los Miembros del Gobierno sobre asuntos de su competencia, y hacerlos comparecer ante la Cámara para que rindan explicaciones sobre su política general o sobre un asunto específico puesto bajo su responsabilidad." Por lo tanto, el Parlamento puede investigar cualquier acto ilegal supuestamente cometido por un miembro del gobierno, y puede, si lo determina necesario, exigirle que renuncie a su cargo.

54. Un ejemplo de la interpelación de un miembro del gobierno se puede encontrar en el caso de Enrique Mercader Costa, el ex Ministro de Transportes, Tecnología, Correos y Telecomunicaciones. En 2009, el Parlamento creó una comisión para investigar al Ministro por alegaciones de desfalco de fondos del Tesoro Público. Yo serví como asesor jurídico a la comisión que condujo la investigación. Una vez concluida la investigación, la comisión concluyó que el Ministro Mercader Costa intentó desfalcar fondos. El Parlamento pidió al Consejo de Ministros que el Ministro fuese cesado y éste fue depuesto de sus funciones.

55. Este proceso de interpelación es, por tanto, distinto al proceso penal que sería aplicable a un funcionario público bajo el Código Penal de Guinea Ecuatorial.

56. Las opiniones expresadas son basadas en mis conocimientos, experiencia profesional y el análisis de las leyes y materiales revisados.

-16-

## VERIFICACIÓN

Declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de América, que lo anterior es cierto y verdadero.

Suscrito el 13 de abril de 2012

_____
Victoriano Obiang Abogo