UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CASE NO. 11-cv-01874-RC |
| v. | |
| ONE GULFSTREAM G-V JET AIRCRAFT DISPLAYING TAIL NUMBER VPCES, ITS TOOLS AND APPURTENANCES, | **CLAIMANTS' MOTION TO DISMISS VERIFIED FIRST AMENDED COMPLAINT FOR FORFEITURE *IN REM*** |
| Defendant. | |

## CLAIMANTS' MOTION TO DISMISS VERIFIED FIRST AMENDED COMPLAINT FOR FORFEITURE *IN REM*

Claimants Vice President Teodoro Nguema Obiang Mangue and Ebony Shine International Ltd. (collectively, "Claimants"), by and through the undersigned counsel, will and hereby respectfully do move the Court for an Order, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. Supp. R. G(8)(b), dismissing the Verified First Amended Complaint for Forfeiture *In Rem* ("FAC") filed by Plaintiff United States of America ("the government") on the grounds that the FAC fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Brian M. Wheeler and Motion to Take Judicial Notice in support thereof, the records and files of this Court, any other matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

Pursuant to Local Rule 78.1, Claimants request an oral hearing in consideration of this Motion to Dismiss.

DATED:  October 4, 2013          QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP

                                 By */s/ Heather H. Martin*
                                     Heather H. Martin (D.C. Bar No. 489,114)
                                     heathermartin@quinnemanuel.com
                                 Quinn Emanuel Urquhart & Sullivan, LLP
                                 1299 Pennsylvania Ave. NW, Suite 825
                                 Washington, D.C. 20004
                                 Telephone:  (202) 538-8000
                                 Facsimile:   (202) 538-8100


                                     Duane R. Lyons (*admitted pro hac vice*)
                                     duanelyons@quinnemanuel.com
                                     Brian M. Wheeler (*admitted pro hac vice*)
                                     brianwheeler@quinnemanuel.com
                                 Quinn Emanuel Urquhart & Sullivan, LLP
                                 865 South Figueroa Street, 10th Floor
                                 Los Angeles, California 90017-2543
                                 Telephone:  (213) 443-3000
                                 Facsimile:    (213) 443-3100


                                     Juan P. Morillo (D.C. Bar No. 475196)
                                     jmorillo@cgsh.com
                                 Cleary Gottlieb Steen & Hamilton LLP
                                 2000 Pennsylvania Avenue, N.W.
                                 Washington, D.C. 20006-1801
                                 Telephone:  (202) 974-1500
                                 Facsimile:    (202) 974-1999


                                     Mike DeGeurin (D.C. Bar No. TX0092)
                                     mdegeurin@foremandegeurin.com
                                 Foreman, DeGeurin & DeGeurin
                                 300 Main Street
                                 Houston, Texas 77002
                                 Telephone: (713) 655-9000
                                 Facsimile:  (713) 655-1812

                                     Attorneys for Claimants

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CASE NO. 11-cv-01874-RC |
| v. | |
| ONE GULFSTREAM G-V JET AIRCRAFT DISPLAYING TAIL NUMBER VPCES, ITS TOOLS AND APPURTENANCES, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS VERIFIED FIRST AMENDED COMPLAINT FOR FORFEITURE *IN REM*** |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS VERIFIED FIRST AMENDED COMPLAINT FOR FORFEITURE *IN REM***

# TABLE OF CONTENTS

**Page**

Preliminary Statement .................................................................................................... 1

Summary of Parallel Forfeiture Action .......................................................................... 1

Argument ......................................................................................................................... 3

I.      SUMMARY OF THE LAW ...................................................................................... 3

      A.     The FAC Must Meet The Particularity-In-Pleading Requirement ...................... 3

      B.     The FAC Does Not Support A Reasonable Belief The Government Will Be Able To Prove The Aircraft Constitutes Proceeds of Violations of E.G. Law ................................................................................................................ 5

II.     THE FAC DOES NOT CURE THE DEFICIENCIES IDENTIFIED BY THE COURT AND FAILS TO MEET THE REQUISITE PLEADING STANDARD .......... 8

      A.     Allegations Regarding the So-Called "Schemes" Are Not Plead With Sufficient Particularity and Specificity .................................................................. 8

             1.     Extortion and Bribery Schemes ................................................................ 9

             2.     Schemes to Obtain government Funds Through Misappropriation, Embezzlement and Theft ........................................... 14

III.    THE FAC FAILS TO SUPPORT A REASONABLE BELIEF THAT THE GOVERNMENT WILL PREVAIL ON ITS NET WORTH THEORY ....................... 21

      A.     The Government Bears The Burden Of Proof On The Illegality Of The Funds Used To Purchase The Defendant Aircraft ................................................ 22

      B.     A Net Worth Theory Still Requires A Nexus Between The Defendant Aircraft And The Specified Unlawful Activity; The FAC Pleads None ........... 23

IV.    THE FAC DOES NOT ALLEGE FACTS TO SUPPORT A REASONABLE BELIEF THAT CLAIMANTS PURCHASED THE DEFENDANT FOR THE PURPOSE OF CONCEALING THE PROCEEDS OF SPECIFIED UNLAWFUL ACTIVITY ....................................................................................... 25

Conclusion ..................................................................................................................... 28

## TABLE OF AUTHORITIES

**Page**

### Cases

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009)........................................................................................................3, 4

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ...........................................................................................................3, 4

Conley v. Gibson,
355 U.S. 41 (1957) .................................................................................................................4

E.E.O.C. v. St. Francis Xavier Parochial Sch.,
117 F.3d 621 (D.C. Cir. 1997)............................................................................................15

Henok v. Chase Home Fin., LLC,
915 F. Supp. 2d 109 (D.D.C. 2013).....................................................................................14

Kowal v. MCI Commc'ns Corp.,
16 F.3d 1271 (D.C. Cir. 1994)...................................................................................4, 14, 20

Lipton v. MCI Worldcom, Inc.,
135 F. Supp. 2d 182 (D.D.C. 2001).........................................................................4, 15, 20

Regalado Cuellar v. United States,
553 U.S. 550 (2008)(i)....................................................................................................26, 27

United States v. $39,000 In Canadian Currency,
801 F.2d 1210 (10th Cir. 1986) .............................................................................................8

United States v. $80,010 in U.S. Currency,
303 F.3d 1182 (9th Cir. 2002) ...............................................................................................3

*United States v. $125,938.62,
537 F.3d 1287 (11th Cir. 2008) ...................................................................................6, 7, 21

United States v. $191,910.00 in U.S. Currency,
16 F.3d 1051 (9th Cir. 1994) .................................................................................................3

United States v. $421,090.00 in U.S. Currency,
11-CV-00341 JG, 2011 WL 3235632 (E.D.N.Y. July 27, 2011)...............................5, 21, 23

United States v. $1,399,313.74 in U.S. Currency,
591 F. Supp. 2d 365 (S.D.N.Y. 2008) ...................................................................................5

United States v. All Assets Held at Bank Julius Baer & Co.,
571 F. Supp. 2d 1 (D.D.C. 2008)...........................................................................................3

United States v. All Assets of Statewide Auto Parts, Inc.,
   971 F.2d 896 (2d Cir. 1992) ..................................................................................3

United States v. Borromeo,
   995 F.2d 23 (4th Cir. 1993) ...............................................................................21

United States v. Daccarett,
   6 F.3d 37 (2d Cir. 1993) ....................................................................................3

*United States v. One Partially Assembled Drag Racer,
   899 F. Supp. 1334 (D.N.J. 1995) ....................................................................4, 5

*United States v. One White Crystal Covered Bad Tour Glove,
   cv-11-3582-GW, ECF Doc. No. 47 (C.D. Cal. Apr. 12, 2012) ......................2, 4, 16, 26, 28

*United States v. One White Crystal Covered Bad Tour Glove,
   cv-11-3582-GW, ECF Doc. No. 98 (C.D. Cal. June 20, 2013) ..........................2, 17, 23, 24

*United States v. One White Crystal Covered Bad Tour Glove,
   cv-11-3582-GW, ECF Doc. No. 104 (C.D. Cal. Aug. 19, 2013) ..................................2, 25

*United States v. One White Crystal Covered Bad Tour Glove,
   cv-11-3582-GW, ECF Doc. No. 105 (C.D. Cal. Aug. 20, 2013) ....................................2

United States v. Real  Prop. & Premises Known as 90-23 201st St., Hollis, New York,
   775 F. Supp. 2d 545 (E.D.N.Y. 2011) ...........................................................5, 23

United States v. Real Prop. known as 2291 Ferndown Lane, Keswick VA 22947-9195,
   3:10-CV-0037, 2011 WL 2441254 (W.D. Va. June 14, 2011) ....................................26, 27

United States v. Rodriguez,
   278 F.3d 486, 493 (5th Cir. 2002) ......................................................................24

United States v. Sanders,
   929 F.2d 1466 (10th Cir. 1991) .........................................................................26

United States v. Wynn,
   61 F.3d 921 (D.C. Cir. 1995) ............................................................................26

## Statutes

18 U.S.C. § 983(c)(1) ............................................................................3, 22

18 U.S.C. § 1956(a)(1)(B) ......................................................................25, 26

18 U.S.C. § 1956(a)(1)(B)(i) ..................................................................27, 28

Fed. R. Civ. P. Supp. R. E(2)(a) ...............................................................3, 15

Fed. R. Civ. P. Supp. R. G(2)(f) ............................................................................3, 15

Rule 12(b)(6) ...........................................................................................................4

## Other Authorities

12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,
    Federal Practice and Procedure § 3242 (2d ed. 1997) ...........................................3

Congressional Record—House, 146 Cong. Rec. (GPO April 11, 2000)...................................22

## **Preliminary Statement**

In granting Claimant's Motion to Dismiss the verified complaint, this Court found that "the complaint does not link the jet to any specific illicit acts," and held that "[a]bsent some specific indication that the Jet is derived from or traceable to illicit activity, the complaint must be dismissed." <u>See</u> Memorandum Opinion Granting the Claimants' Motion to Dismiss Without Prejudice; Granting Leave to Amend, ECF No. 22, ("Order Memo") at 1, 23. The Court also found that "the government does not provide enough detail for the court to infer the contours of the illicit scheme" alleged in the complaint. Accordingly, the Court granted the government leave to file an amended complaint to "cure these deficiencies" with "additional facts." <u>Id.</u> at 21, 23.

The government's First Amended Complaint ("FAC") fails to cure these pleading defects. Instead of setting forth particularized allegations that Vice President Nguema violated E.G. law, the FAC continues to rely heavily on the type of generalized allegations of corruption that this Court previously found to be insufficient. The few attempts at greater particularization are woefully inadequate or demonstrably non-actionable. More importantly, however, the FAC still fails to "link the jet to any specific illicit acts." As the Court previously held in granting Claimants' first motion to dismiss, "Although the government describes a disconcerting pattern of corruption in Equatorial Guinea, the complaint does not link the jet to any specific illicit acts." Order Memo at 1. Because the government has not corrected that fatal error, the Court should dismiss this action with prejudice.

## **Summary of Parallel Forfeiture Action**

As the Court is aware, the action against the Defendant Aircraft was originally filed under seal in the United States District Court for the Central District of California in April 2011. On October 13, 2011, the government dismissed the Defendant Aircraft in the California action and on October 25, 2011, filed a complaint for forfeiture *in rem* in this Court. The

1

government's forfeiture action in California against the remaining Defendant Assets has
continued before Judge Wu.  On April 12, 2012, Judge Wu granted Claimant's motion to
dismiss the government's FAC.  See Order Granting Claimants' Motion to Dismiss First
Amended Complaint, United States v. One White Crystal Covered Bad Tour Glove, cv-11-
3582-GW, ECF Doc. No. 47 (C.D. Cal. April 12, 2012) ("C.D. Cal. Order Dismissing FAC"),
attached as Exhibit 5 to the Declaration of Brian M. Wheeler ("Wheeler Decl.").  The
government then filed a second amended complaint that added domestic bank fraud basis as a
basis for forfeiture

On August 20, 2013, Judge Wu granted partial summary judgment for Claimants on the
government's claim that violations of E.G. law could serve as a basis for forfeiture:  "[T]he
Court finds that the assets are not subject to forfeiture as proceeds of foreign offenses
involving: (1) 'extortion,' (ii) 'the misappropriation, theft, or embezzlement of public funds by
or for the benefit of a public official,' or (iii) bribery of a public official. These specified
unlawful activities are not sufficiently supported by probable cause and cannot serve as the
basis for forfeiture of the Defendant Assets."[1]  Final Ruling Granting Claimants' Motion for
Partial Summary Judgment On The Issue of Probable Cause, United States v. One White
Crystal Covered Bad Tour Glove, cv-11-3582-GW, ECF Doc. No. 105 at 1 (C.D. Cal. Aug. 20,
2013) (citations omitted) ("C.D. Cal. Final Ruling Re Grant of Partial Summary Judgment"),
Wheeler Decl. Ex. 6.[2]  Accordingly, the recently-formulated domestic bank fraud basis for

---

[1]    In the event the Court denies Claimants' instant motion to dismiss, Claimants
respectfully request the Court permit Claimants expedited discovery from the government on
the limited issue of probable cause for the forfeiture of the Defendant Aircraft at the time the
government instituted its forfeiture action.

[2]    See also Order Granting Claimants' Motion for Partial Summary Judgment On The
Issue of Probable Cause, United States v. One White Crystal Covered Bad Tour Glove, cv-11-
3582-GW, ECF Doc. No. 98, dated June 20, 2013 ("C.D. Cal. Order Granting Partial Summary
Judgment No. 1"), Wheeler Decl. Ex. 7; Order Granting Claimants' Motion for Partial
Summary Judgment On The Issue of Probable Cause in United States v. One White Crystal

forfeiture – a basis not alleged in this action – remains as the only surviving basis for forfeiture in the California action.

<u>**Argument**</u>

I.    <u>**SUMMARY OF THE LAW**</u>

    A.    <u>**The FAC Must Meet The Particularity-In-Pleading Requirement**</u>

    This Court has already recognized that forfeiture complaints are governed by a heightened and more exacting particularity-in-pleading requirement.  <u>See</u> Order Memo at 18 (citing <u>United States v. All Assets Held at Bank Julius Baer & Co.</u>, 571 F. Supp. 2d 1, 16-17 (D.D.C. 2008) ("Rule G (and its predecessor Rule E(2)) creates a heightened burden for pleading on the plaintiff.")); <u>see also</u> C.D. Cal. Order Dismissing FAC at 2 ("A complaint for forfeiture in rem is subject to a heightened pleading standard. . . .").  These particularized and detailed factual allegations must "support a reasonable belief that the government will be able to meet its burden of proof at trial."  <u>All Assets Held at Bank Julius Baer & Co.</u>, 571 F. Supp. 2d at 16-17 (citing <u>Fed. R. Civ. P. Supp. R.</u> G(2)(f)).  That is, the complaint must plead "*sufficiently detailed facts*" with "*particularity*" to support a reasonable belief that the government will be able "to establish, by a preponderance of the evidence, that the property is subject to forfeiture."  <u>Fed. R. Civ. P. Supp. R.</u> E(2)(a) and G(2)(f) (emphasis added); 18 U.S.C. § 983(c)(1).  Or as aptly described by the Court, "these rules require the government to allege enough facts such that the court may infer that the property is subject to forfeiture."  Order Memo at 18.

    "This heightened particularity requirement is designed to guard against the improper use of seizure proceedings and to protect property owners against the threat of seizure upon conclusory allegations."  Order Memo at 18.  Indeed, the heightened pleading standard is "an

---

<u>Covered Bad Tour Glove</u>, cv-11-3582-GW, ECF Doc. No. 104, dated August 19, 2013 ("C.D. Cal. Order Granting Partial Summary Judgment No. 2"), Wheeler Decl. Ex. 8.

implicit accommodation to the drastic nature of the civil forfeiture remedy"[3]—a remedy that is "disfavored in our constitutional system."[4]  As shown below, the FAC is riddled with only conclusory, non-specific allegations that  fail to meet this heightened requirement.[5]

　　　To determine whether a complaint is sufficient, the court first identifies mere legal conclusions within the complaint and disregards them because they are "not entitled to be assumed true." Iqbal, 129 S. Ct. at 1949-51.[6]  Second, the court is to take the remaining well-

---

[3]  United States v. Daccarett, 6 F.3d 37, 47 (2d Cir. 1993); All Assets Held at Bank Julius Baer & Co., 571 F. Supp. 2d at 16 ("The additional burden of pleading requiring 'added specifics is thought appropriate because of the drastic nature of those remedies.'") (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3242 (2d ed. 1997)).

[4]  United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1068 (9th Cir. 1994) ("Government confiscation of private property is disfavored in our constitutional system."), superseded on other grounds as stated in United States v. $80,010 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002); see also United States v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896, 905 (2d Cir. 1992) ("We continue to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statues and the disregard for due process that is buried in those statutes.").

[5]  Indeed, the complaint would fail even under the less stringent notice pleading standard. "In addition, forfeiture in rem complaints must also meet the familiar Iqbal/Twombly plausibility standard. . . ." C.D. Cal. Order Dismissing FAC at 2; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions. . . .'").

　　　Under the Supreme Court's plausibility standard, it is no longer the case that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

[6]  See also Twombly, at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."); Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 185-86 (D.D.C. 2001) ("The court need not, however, accept the plaintiff's legal conclusions as true.").

pleaded and non-conclusory factual allegations (the "nub" of the complaint) and determine whether those allegations, standing alone, suffice to state a plausible claim for relief.  Id.

Here, the government continues to allege that the Gulfstream Jet is subject to forfeiture because it is either derived from or traceable to violations of Equatoguinean law involving extortion, misappropriation, theft, or embezzlement of public funds by a public official. Therefore, "the government must put on a two-step proof: first, of the predicate criminal acts, and second, of the direct or indirect connection between the property and the acts.  At the forfeiture proceeding, showing this connection can be a substantial task."  United States v. One Partially Assembled Drag Racer, 899 F. Supp. 1334, 1340-41 (D.N.J. 1995) (granting motion to dismiss forfeiture complaint as inadequate:  "Although it alleges the predicate violations of the customs laws and the Controlled Substances Act with sufficient particularity, the Government gives no indication that it will be able to trace the proceeds of claimant's alleged criminal activity to his purchase of the Property."); see also United States v. $1,399,313.74 in U.S. Currency, 591 F. Supp. 2d 365, 373 (S.D.N.Y. 2008) (dismissing forfeiture complaint for failure to plead facts to support that defendant rem represented "the proceeds of some form of unlawful activity that can be traced to identified narcotics or other criminal activity").

**B.**    **The FAC Does Not Support A Reasonable Belief The Government Will Be Able To Prove The Aircraft Constitutes Proceeds of Violations of E.G. Law**

To survive a motion to dismiss, the government must indicate "that [at trial] it will be able to trace the proceeds of claimant's alleged criminal activity to his purchase of the Property."  Drag Racer, 899 F. Supp. at 1340-41.  While the government may not need to do direct tracing at the pleading stage, because the government will have to make this showing at trial, it must now allege sufficiently detailed facts to support a reasonable belief that it will be able to meet this burden at trial.  See Fed. R. Civ. P. Supp. R. G(2)(f); 18 U.S.C. § 983(c)(1).

5

The FAC does not support such a reasonable belief.  Instead, "[t]he thesis of the complaint seems to be that, because claimant allegedly engaged in illegal activities which generated proceeds, the Property *ipso facto* must have been purchased with these proceeds and/or purchased to conceal or disguise them.  No such presumption attaches, without more, to the property of persons who have [allegedly] committed crimes."  Id. at 1342.

The government must show a *substantial connection* between the Defendant Res and the specified unlawful activity subject to the forfeiture statute invoked.  See United States v. $421,090.00 in U.S. Currency, 11-CV-00341 JG, 2011 WL 3235632, at *5 (E.D.N.Y. July 27, 2011) (where the government seeks forfeiture under a proceeds theory, "it must demonstrate that those proceeds have a substantial connection to drug trafficking."); United States v. Real Prop. & Premises Known as 90-23 201st St., Hollis, New York, 775 F. Supp. 2d 545, 564-65 (E.D.N.Y. 2011) (same).  As set forth below, the government's revised allegations fail to meet this standard.  The FAC does not allege a direct connection between the Defendant Aircraft and any specific illegal act.  Moreover, the government's alleged circumstantial allegations do not rise above the speculative level.

United States v. $125,938.62, 537 F.3d 1287, 1294 (11th Cir. 2008) is instructive.  There, the government sought forfeiture of several certificates of deposit it alleged were purchased with funds derived from or traceable to foreign offenses—namely embezzlement of public funds in Nicaragua.  The government alleged that the former president and his close family and associates embezzled funds from the treasury while the president was in office.  Following a forfeiture order in the district court based on the government's alleged circumstantial evidence, the Eleventh Circuit reversed regarding five certificates of deposit because "the Government failed to meet its burden to present evidence of a connection between those funds and funds stolen from the Nicaraguan treasury."  Id.

The court required the government to submit for the court's review "a chart showing the evidentiary connection between money stolen from the Nicaraguan treasury and the money used to fund the certificates of deposit at issue in this case," and noted that such a chart should have been required at the district court level as well.  Id. at 1293.  Like here, "there [was] no direct evidence connecting [the Defendant res] to money embezzled from the Nicaraguan treasury," so the government purported to rely on "circumstantial evidence" to link the Defendant res to the foreign offenses of embezzlement of public funds.  Id. at 1294.  Yet, the court concluded that the government's circumstantial "evidence was insufficient as a matter of law to meet the Government's burden with respect to [the Defendant Res]."  Id.  The same is true here.

The government's circumstantial evidence in United States v. $125,938.62 was far greater than what the government alleges to support forfeiture of the Defendant Aircraft.  Among other things, the government's evidence included the conviction and 20-year sentencing of the president for embezzlement and money laundering, an audit conducted by the Nicaraguan government revealing millions of dollars stolen during the president's term, the financial statements of the president showing only modest personal holdings at the time of the purchase, evidence that the certificates were purchased by the president's subordinate shortly after he assumed the presidency and millions of dollars were removed from the Presidency accounts (including by the same subordinate), a lack of evidence by claimants proving the source of the funds in the Defendant res were lawful, and the fact that the government was able to show a connection with other Defendant certificates of deposit, as well as evidence of a previous successful unrelated forfeiture action.  Id. at 1293-94.

Despite this evidence, the court held that "the Government failed as a matter of law to meet its burden of proving by a preponderance of the evidence that [the certificates] were

derived from funds embezzled from the Nicaraguan treasury." Id. at 1289.  Here, the

government alleges far less than even this circumstantial evidence.

## II.      THE FAC DOES NOT CURE THE DEFICIENCIES IDENTIFIED BY THE COURT AND FAILS TO MEET THE REQUISITE PLEADING STANDARD

The FAC alleges two general schemes:  (a) extortion and bribery schemes and (b)

schemes to obtain government funds through misappropriation, embezzlement, and theft.

However, the FAC is riddled with the same type of non-particularized allegations that the

Court previously found insufficient.  The government provided some greater detail for certain

allegations, but even as to these, they still fail to "give a claimant a reasonable starting point

from which to initiate a meaningful investigation nor permit a responsive pleading that can

address identities, quantities, locations, or dates of an alleged offense.  These unsupported and

conclusory allegations do not meet any definition of the word 'particularity.'"  United States v.

$39,000 In Canadian Currency, 801 F.2d 1210, 1220 (10th Cir. 1986) (affirming dismissal of

forfeiture complaint for lack of particularity where the complaint did not specify dates,

locations, dollar amounts, and did not identify specific participants in purported criminal

conduct).   Nor does the government allege any connection between the allegedly illegal

conduct and the Defendant Aircraft.

### A.      Allegations Regarding the So-Called "Schemes" Are Not Plead With Sufficient Particularity and Specificity

An examination of each individual amended allegation demonstrates that the

government has once again failed to provide particularized allegations sufficient to support the

draconian remedy of forfeiture.

1.    <u>Extortion and Bribery Schemes</u>

The FAC alleges that Vice President Nguema *demanded* personal fees from "businesses in E.G." (FAC at ¶ 45.)  The FAC still fails to (1) identify unnamed businesses, (2) allege that each business actually paid the alleged demand, (3) specify the amount of funds, if any, actually received by Vice President Nguema, (4) provide essential details regarding such alleged payment, including, among other things, the date of the alleged demand and payment; and (5) demonstrate any connection whatsoever between such payments (i.e., the proceeds) and the purchase of the Defendant Aircraft.

**Fees allegedly demanded for timber exports.**  The FAC alleges that "[Vice President] Nguema demanded that timber companies . . . pay him personally in or around ten percent of the value of the wood harvested for export." (FAC at ¶ 48.)  The FAC fails to allege how many businesses allegedly made payments, the identities of those businesses, how much the payments amounted to, or make any attempt to demonstrate that those payments resulted in proceeds that were in fact used to purchase the Defendant Aircraft.[7]  Instead, the FAC identifies a single individual, German Pedro Tomo, who the government alleges made payments to Claimant on behalf of Tromad Forestal between 1998 and 2003.  (FAC at ¶¶ 48-49.)

The government's reliance on Mr. Tomo is disingenuous at best.  The government is well aware that Mr. Tomo is an E.G. opposition party politician who tried to overthrow the government of E.G. in a thwarted coup d'état.  In fact, as the government is aware, Tomo was

---

[7]    Similarly, no particularity is found in the allegation that "Nguema required other timber companies in E.G. to pay him personally in or around 15,000 CFAs (approximately $27) per log a company wished to export from E.G." (FAC at ¶ 54.)  The government fails to identify the "other timber companies" or allege that such companies even paid Vice President Nguema the fee.  Even had the FAC done so, however, it still fails to allege the amount of any fees, but rather uses a meaningless numeration absent additional particularized allegations.

convicted and sentenced to a 20-year prison term for his prominent role in the coup plot.[8]  A single claim of improper payments by a convicted coup participant cannot properly support the inference that other unnamed businesses must have also made improper payments.  This is particularly true where, as here, the government freely admits that other companies refused to pay the alleged demands.[9]  (FAC at ¶ 51.)

In sum, all the government has pleaded with regards to the alleged fees demanded for timber exports is a single allegation that a convicted coup leader made payments, which stopped three years before the Defendant Aircraft was purchased.  That is insufficient to support forfeiture.

**Fees allegedly demanded to import goods and equipment.**  The government's allegations that "Nguema levied a personal fee on imports arriving through the Port of Bata" on "certain companies" is the type of generalized allegation that is clearly insufficient to support forfeiture.  (FAC at ¶¶ 52-53.)  The government does not identify a single company and the only specific payment alleged is $3,000 from an importer to pay monthly wages of "Nguema's agents."  (FAC at ¶ 54.)  Given the government's concession that the $3,000 was not used to purchase the jet, and the government's complete failure to identify any other payment, there is no basis to contend that the Defendant Aircraft constitutes the proceeds of this conduct.

**Fees allegedly demanded for access to the Equatoguinean forests.**  The FAC alleges that Claimant "required timber companies to pay him a personal fee in order to gain access to E.G.'s forests." (FAC at ¶ 55.)

---

[8]  See Wheeler Decl. Ex. 3.

[9]  Further, the FAC alleges that companies who refused payments under the various alleged schemes incurred delays, increased operational expenses, and suffered retaliation. (See, e.g., FAC at ¶ 51.)  Significantly, however, the FAC does not allege that any of these alleged operational expenses, delays, or retaliatory actions resulted in proceeds that flowed to Claimant; let alone any link with the Defendant Aircraft.

While the FAC identifies Isoroy, ABM, and Agroforestal as companies from which Claimant allegedly demanded and collected fees, the government only provides allegations of dates and amounts demanded from Isoroy.  (FAC at ¶¶ 56-57.)  But even as to Isoroy, the FAC fails to allege what fees, if any, were actually *paid*.  The government alleges that Vice President Nguema *demanded* the equivalent of $21,000 in the fees from Isoroy in 1993, but the government does not allege that Isoroy ever paid that demand.  Instead, the government alleges that Isoroy obtained a timber concession in 1995—two years later.  (FAC at ¶¶ 56-57.)  While the government seeks to infer the existence of a quid pro quo, no such inference is warranted given the repeated instances in which other companies refused to pay an alleged demand, including Isoroy.  See, e.g., FAC at ¶¶ 64-65 (Isoroy and ABM "refused to pay" and "refused to submit to [Claimant's] demands for payment"), ¶ 72 ("Nguema demanded that Tromad . . . pay him personally;" "Tromad refused to pay Nguema"), ¶ 73 (allegation that Claimant's staff demanded "gifts and money" for Claimant, but GSF manager "refused to make payments").

Similarly, the FAC also alleges that another company, Shimmer, was given "unfettered access" to harvest timber in E.G. between 1998 and 2003.  (FAC at ¶ 58.)   The FAC alleges only that Shimmer's manager *agreed* to a demand to pay approximately $50 per cubic meter of timber harvested, but it fails to allege with particularity any actual payments, let alone when such payments, if any, were made and for what amount.[10]

The government's failure to allege the existence of both an improper demand **and** payment highlights the futility of relying on these alleged acts to establish forfeiture of the Defendant Aircraft.  Given (i) the limited funds allegedly received by Claimant (at best $21,000 from Isoroy and $50 per cubic meter (for an unknown volume of timber) from

---

[10]   Using the vague Shimmer allegations as a springboard, the FAC launches into an attack on E.G.'s enforcement of its laws and regulations.  (FAC at ¶¶ 58-59.)  There are no particularized allegations that Vice President Nguema engaged in any illegal conduct under the laws of E.G. in carrying out the administration of the timber regulations.

Shimmer), (ii) the passage of time between the alleged acts of extortion and the acquisition of the jet (as many as 13 years later ); and (iii) the other assets purchased by Claimant between the date of these acts and the purchase of the jet (allegedly worth as much as $100 million), there is no basis to logically infer that the aircraft was purchased with the proceeds of this alleged conduct.

**Alleged demands for personal payments to operate in E.G.**  The government alleges that Isoroy paid "in or around the equivalent of $104,000 every one or two months . . . from 1993 to 1996." (FAC at ¶ 61.)  Both Claimants and the Court are left to guess as to the amount that was actually paid.  Moreover, the FAC makes no effort to suggest that Claimant saved these same funds (whatever the amount) and used them nearly ten years later to purchase the Defendant Aircraft.

A related allegation is that Claimant demanded a retroactive fee, which the government, without any support whatsoever, concludes was an "illegal tax." (FAC at ¶ 62.)  With regards to this alleged illegal tax, the FAC refers to four companies that Claimant allegedly demanded payment from.  Of those, only two are actually identified by name, ABM and Isoroy, and only the amount allegedly demanded of ABM is plead.  (FAC at ¶¶ 63-64.)  Nevertheless, the FAC goes on to admit that both ABM and Isoroy ***refused*** to pay the "tax."[11]  (FAC at ¶¶ 64-65.)

---

[11]  The FAC also alleges that when Isoroy refused payment, Claimant seized its assets until Isoroy paid "a monetary ransom." (FAC at ¶¶ 65-66.)  The FAC does not allege, however, how much this alleged ransom was, what the value of the assets were, or when the alleged payment occurred.  Indeed, it does not even allege the payment was for Claimant's personal benefit or that this ransom was used to purchase the Defendant Aircraft.

With regard to ABM's refusal and Vice President Nguema's alleged retaliation, the government admits that the ABM matter was the subject of litigation in E.G. and that an Equatoguinean court found ABM liable for damages to Vice President Nguema.  (FAC at ¶ 70.)  These damages were the result of a judgment in Claimant's favor on his action for breach of contract and fraud against ABM.  See Wheeler Decl. Ex. 2.  The government cannot prove Claimant's damages award was the proceeds of specified unlawful activity premised on a violation of E.G. law where an E.G. court awarded the fees following an adjudication under E.G. law in Vice President Nguema's favor.

As to the two companies the government alleges paid the alleged personal tax, neither is identified.  Instead, the FAC merely avers, "Other timber companies, including one based in the Philippines and another in Morocco, were permitted to continue to operate in E.G. after they paid Vice President Nguema his so-called retroactive 'taxes.'"  (FAC at ¶ 64.)  However, there are no allegations regarding the  the identification of these companies,  how much they allegedly paid, when they paid it, and that any such funds were used to purchase the Defendant Aircraft.[12]

**Fees and gifts allegedly demanded from companies in non-timber industries.**  The FAC also alleges that Claimant demanded that "companies" outside of the forestry sector pay him fees and provide gifts.  (FAC at ¶ 72.)  The FAC alleges Claimant demanded that a construction company, Tromad, pay him fifteen percent of the value of a government contract.  The government freely admits, however, that Tromad *refused*.  (Id.)  Similarly, the government admits that a U.S.-based oil company also *refused* the alleged demand.  (FAC at ¶ 73.)  In fact, the only allegation the government pleads to support alleged demands for "gifts and free money" from non-timber companies is the allegation that Vice President Nguema's staff showed a U.S.-based oil company a list referencing gifts and payments by foreign companies.  Notably, the FAC does not allege that these payments and gifts were actually paid, only that an unidentified individual showed an unidentified manager of a company operating in E.G. a document that purportedly listed payments and gifts from other unnamed companies.  (Id.)

---

The tacked-on allegation that Claimant required Shimmer to purchase ABM's equipment at inflated prices is also insufficient.  Not only does it lack particularity and specificity in terms of amount and time, but the FAC also fails to allege that such a transaction, if true, violated E.G. law.  Because a violation of E.G. law is the predicate for the forfeiture, this deficiency alone defeats any basis to support the claim.  And of course, no link is made to the Defendant Aircraft.

[12]  Inasmuch as the FAC generally alleges this tax demand occurred in 1996 (FAC at ¶ 62.), the government faces the same challenge in demonstrating a connection between this demand and the purchase of the jet.

**2.    Schemes to Obtain government Funds Through Misappropriation, Embezzlement and Theft**

The alleged misappropriation, embezzlement and theft schemes include (1) so-called inflated bids for government contracts; (2) supposed use of "shell companies" to indirectly divert public funds from non-performed government infrastructure contracts; and (3) alleged direct diversion of public money. Each of the schemes fail, as a matter of law, to support forfeiture.

**Inflated bids and General Work**. The government rehashes its allegations against the so-called "Inner Circle" by claiming that government contracts are awarded to "companies owned by or associated with members of the Inner Circle without true competition" to allow the "Inner Circle" to personally benefit. (FAC at ¶ 77.) Despite the government's reference to multiple "companies," the only company which the government attempts to link to Vice President Nguema is General Work.[13]

The government alleges that "General Work fraudulently inflated certain line items in several different construction bids tendered by the company," a portion of which was then allegedly funneled to Vice President Nguema in the form of a "kickback." (FAC ¶ 81.) Despite its preface, however, the government's allegation is anything but "specific." The FAC does not identify a specific government contract that was fraudulently inflated as part of this alleged scheme. Nor does the FAC identify a specific kickback payment. Instead, the FAC makes the conclusory allegation that "[h]undreds of these payments were made by General Work to Nguema for his direct benefit in or around the time period that Nguema acquired the

---

[13]    As to these so-called other companies, sufficient particularity at least requires that the government identify the specific E.G. law being violated, the specific company involved in the bidding, the government contract that is subject of the bid, and the amount of alleged proceeds criminally derived from the alleged scheme. For example, here the FAC alleges the inflation in terms of percentages without alleging the gross amount. Of course, this renders the percentages meaningless.

Defendant Aircraft." (FAC at ¶ 81.) Courts have regularly held that these types of conclusory allegations are insufficient to satisfy the particularity in pleading requirement. Henok v. Chase Home Fin., LLC, 915 F. Supp. 2d 109, 114 (D.D.C. 2013) ("unsupported inferences and 'legal conclusions cast in the form of factual allegations' are insufficient to survive a motion to dismiss."); Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). ("However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations.").

Indeed, such conclusory allegations are specifically prohibited by the Supplemental Rules governing forfeiture actions. "Supplemental Rule E(2)(a) requires that the government set forth its claims 'with such particularity that the defendant will be able, without moving for a more definite statement, to commence an investigation of the facts and frame a responsive pleading. Supplemental Rule G(2)(f) requires that the government 'state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.' Read in conjunction, these rules require the government to allege enough facts such that the court may infer that the property is subject to forfeiture." Order Memo at 18. Not only does the government's fail to identify the specific line items that were allegedly inflated (thus requiring Claimant to move for a more definite statement and certainly not inferring the Defendant Aircraft's forfeitability), but, by failing to identify with particularity any of the bids or contracts allegedly inflated and kicked back to Claimant, the government conveniently prevented Claimant from attaching the actual bids and contracts and demonstrating that the

15

amounts were not inflated or that there is no basis to infer that the Defendant Aircraft was acquired with such funds.[14]

The FAC also relies heavily on an excerpt from a South African affidavit to support Vice President Nguema's allegedly improper benefit from government contracts.  (FAC at ¶ 78.)  However, as Judge Wu found in the California action, "the quotation drawn from an affidavit Nguema allegedly filed with a South African court does not offer any evidence that Nguema himself participated in any specific inflated bid scenario."  C.D. Cal. Order Dismissing FAC at 5.[15]

Indeed, the affidavit clearly states that Vice President Nguema's pecuniary gain is as a result of the operation of his lawful private business in accordance with E.G. law, not an abuse of office or violation of the law as the government attempts to claim.  In fact, the government is well aware that the business conduct described by Vice President Nguema is lawful in E.G., as are his private businesses.  The government relies on a U.S. State Department Cable in Paragraph 111 of the FAC to support its allegation that "Nguema changed his explanation [of the source of his wealth] yet again, claiming to Ambassador Alberto Fernandez, the United States' then Ambassador to E.G., that his personal wealth was derived from government infrastructure contracts."  (FAC at ¶ 111.)  The cable states  that Vice President Nguema explained to Ambassador Fernandez that "he has extensive business holdings inside and outside of Equatorial Guinea that do finance a lavish lifestyle, but that is different from his

---

[14]   Under the incorporation by reference doctrine, courts may consider "any documents either attached to or incorporated in the complaint. . . ."  E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997); see also Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.").

[15]   The FAC also makes the incorrect legal conclusion without adequate, particularized support that Vice President Nguema's receipt of government contracts is illegal in E.G.  (FAC at ¶ 79.)  This legal conclusion is a misstatement of E.G. law.

government job. . . .  He noted that his companies had profited handsomely from winning

government contracts in road building and construction in the booming infrastructure business.

. . ."  Wheeler Decl. Ex. 4 at DOJ-0000590-591.[16]

But what the government attempts to hide is that the cable also confirms that what the

government paints as corruption and foreign offenses is not a violation of E.G. law:

> [M]uch of the corruption in Equatorial Guinea is indeed not outright
> theft or looting of the country's treasury but rather in murkier transactions such
> as sweetheart deals, influence peddling, construction contracts and finder's fees
> — *all of which are legal in Equatorial Guinea.*

Wheeler Decl. Ex. 4 at DOJ-0000591.  In light of this evidence, it cannot be said that the

government has plead sufficiently detailed and particularized facts to support a reasonable

belief that it will be able to prove Claimants' wealth was derived from violations of E.G. law,

let alone that the Defendant Aircraft represents the proceeds of any such violations, when the

actual evidence relied upon and incorporated in by reference by the government demonstrates

that the conduct is not against the law in the first instance.[17]  Indeed,  Judge Wu observed that

"[m]uch of the EG violations the Government accuses Claimant of would seem to fit into the

category the State Department said was legal."  C.D. Cal. Order Granting Partial Summary

Judgment No. 1 at 8 n.6.  In fact, Judge Wu specifically cited the government's allegations of

---

[16]  Claimants' documentary exhibits to the Wheeler Declaration are either incorporated by reference in the FAC or are matters about which the Court can take judicial notice and therefore may be properly considered by the Court without having to convert the motion to dismiss into a motion for summary judgment.  See United States v. Seventy-Nine Thousand Three Hundred Twenty-One Dollars in U.S. Currency, 522 F. Supp. 2d 64, 68 (D.D.C. 2007) (in deciding a Rule 12(b)(6) motion, the Court may consider documents incorporated by reference in the complaint and matters about which the court may take judicial notice); Cortec Indus., Inc. v. Sum Holding LP, 949 F.2d 42, 48 (2d Cir. 1991) (Rule 12(b)(6) motion need not be converted into a Rule 56 motion based on attachment of documents where plaintiff has actual notice of the information and relied on the documents in framing the complaint.); see also supra n.14.

[17]  The incorporation-by-reference doctrine "prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'"  Brownmark Films, LLC v. Comedy Partners, 682 F. 3d 687, 690 (7th Cir. 2012) (quoting Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002)).

kickbacks from timber companies and alleged misappropriation of funds through government contracts as examples of conduct the government accuses Claimant of, but which the government's evidence – the state department cable – indicates is legal in E.G.  See id.

Of course, even if the affidavit was somehow construed as evidence that Claimant violated E.G. law, the government makes no attempt to link the alleged scheme referenced in that affidavit to the Defendant Aircraft.  In fact, by the government's own allegations, the quoted affidavit is offered in support of an explanation of how Vice President Nguema "acquired in or around $8 million to purchase his *properties in South Africa*," not the Defendant Aircraft.  (FAC at ¶ 78.)  Thus, even if the government would have alleged sufficient facts with particularity to support a reasonable belief that this $8 million was the proceeds of alleged foreign corruption, it admits that it was not used to acquire the Defendant Aircraft.  Therefore, as a matter of law, it cannot support forfeiture.

**Payments for contracts never performed.**  The FAC alleges that through his company, Somagui, Vice President Nguema "reaped a personal profit of $186 million dollars despite his company's failure to perform under [a highway construction] contract."  (FAC at ¶ 90.)  Glaringly absent, however, is any allegation that Somagui's alleged non-performance of the contract was a violation of E.G. law.  Moreover,  the government fails to allege any facts connecting the Defendant Aircraft to any of these  funds.

The FAC alleges that in 2004, Somagui was awarded a highway-construction contract that was ultimately valued by the E.G. government at $200 million. (FAC at ¶¶ 84-85.)  The FAC further alleges that Somagui subcontracted work out to General Work, retaining the bulk of the value of the contract for itself.  (FAC at ¶ 86.)  After General Work stopped work, the

FAC alleges that the E.G. government cancelled Somagui's contract.[18]  The FAC further alleges that after the E.G. government cancelled the contract with Somagui, it re-awarded the contract to a Chinese company, which assumed the construction contract from Somagui after allegedly paying Somagui an additional $19 million.  (FAC at ¶¶ 86-88.)  The FAC complains that, "[t]he E.G. government did not recoup the $182 million that it had already paid to Nguema through his shell company Somagui."  (FAC at ¶ 87.)

However, the FAC does not allege that it was illegal under E.G. law for Somagui to subcontract out work to General Work and retain the bulk of the contract funds.  Nor is there any allegation that the separate contract between Somagui and the Chinese company for a 20-percent stake (approximated by the government at $19 million) in the Chinese company's bid to assume the Somagui contract was a violation of E.G. law.  Nor does the FAC allege that Vice President Nguema or Somagui was required by E.G. law to return any disbursements of the contract funds upon cancellation of the contract.  Indeed, the FAC does not even allege that the E.G. government requested the return of such funds.  Thus, even if the allegations regarding non-performance of this construction contract were true, there is no allegation that this conduct constitutes "extortion, misappropriation, theft, or embezzlement of public funds by a public official" in violation of foreign law as required under each of the government's bases for forfeiture.

Nevertheless, even had the government alleged with adequate particularity that this allegedly botched construction contract was a violation of E.G. law and constituted one of the identified crimes, the same fatal problem plagues these new allegations as it does the remainder of the complaint's allegations:  "the complaint does not link the jet to any specific illicit acts." Memo Order at 1.  In a fleeting attempt to draw some connection between the Defendant

---

[18]  The FAC does not identify the dates of any payments by the E.G. government to Somagui.

Aircraft and the funds received in this alleged transaction (which have not been shown to be unlawful), the FAC alleges that in 2009, the Chinese company paid the approximately $19 million from its separate assumption agreement with Somagui into Somagui's bank account at Société Général in E.G., which the government alleges is "the same bank where Nguema maintained the accounts that he used to purchase the Defendant Aircraft." (FAC at ¶ 89.)

As a preliminary matter, the FAC does not allege, that the funds from the Chinese company were deposited into the same *account* as the source of the funds used to purchase the Defendant Aircraft, nor that the funds used to acquire the Defendant Aircraft originated from any account in the name of Somagui.[19]   However, regardless of which account these funds were deposited into, the simple fact remains that the FAC alleges the Chinese company *began* paying the $19 million into the Somagui account at Société Général in 2009—three years after the purchase of the Defendant Aircraft.  Thus, those funds (even if illegal) could not have been the source of the funds used to purchase the plane.  Nor does the government allege that Vice President Nguema used the funds he received from this construction project for the purchase of the Defendant Aircraft.  Indeed, the FAC is not even able to make the inadequate allegation that these funds were deposited into Somagui's account at Société Général in E.G.

**Directly diverted funds.**  The government also conclusively alleges that Claimant "has maintained public funds and revenue collected by his Forestry Ministry in a separate account . . . at a private commercial bank in E.G." (FAC at ¶ 92.)  The government does not allege, however, how much money was allegedly misappropriated, when such payments and diversions occurred, or how the proceeds of these diversions were used to in fact purchase the Defendant Aircraft.  Without further factual enhancement, the government's allegation is not

---

[19]   In fact, the FAC implicitly concedes that the funds did not come from Somagui's account, but rather from Vice President "Nguema's account at Société Général of E.G. – the same bank at which Nguema's shell companies, including Somagui, maintained their corporate accounts."  (FAC at ¶ 117.)

sufficient to support the reasonable belief that the government will meet its burden of proof at trial of proving that the proceeds of misappropriation under Equatoguinean law were used to purchase the Defendant Aircraft.  After all, one of the designs of the "heightened particularity requirement is . . . to protect property owners against the threat of seizure upon *conclusory allegations*.  Order Memo at 18 (emphasis added).[20]

## III.   THE FAC FAILS TO SUPPORT A REASONABLE BELIEF THAT THE GOVERNMENT WILL PREVAIL ON ITS NET WORTH THEORY

In opposing Claimants' motion for summary judgment in the California action, the government suggested that its so-called net worth theory can act as a substitute for its inability to specifically trace the alleged proceeds resulting from violations of E.G. law to the Defendant Aircraft.  Under this theory, the government claims that an alleged disparity between the level of the claimant's spending and what the government contends is his only legitimate income (i.e., his government salary of approximately $100,000) is, without more, sufficient to establish that the defendant asset is, itself, the proceeds of specified unlawful activity, and thus subject to forfeiture.  This is simply not the law.  Rather, the government must show a substantial connection between the alleged criminal activity and the jet.  United States v. Borromeo, 995 F.2d 23, 26 (4th Cir. 1993) ("To fail to require the government to demonstrate a substantial connection between the criminal activity and the arrested assets could result in all assets belonging to one who stands convicted of violating our nation's drug laws being, *ipso facto,* subject to forfeiture regardless of their origin. Such is not the law.").  In attempting to establish that connection, the government (1) cannot impermissibly shift the burden of proof to claimant

---

[20]   Moreover, the government's conclusory allegations are not accepted as true on a motion to dismiss.  See Kowal, 16 F.3d at 1276 ("the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."); Lipton, 135 F. Supp. 2d at 185-86 ("The court need not, however, accept the plaintiff's legal conclusions as true.").

to establish the legitimacy of the source of his funds and (2) even under this theory, the government must still show a nexus between the alleged conduct and the defendant asset.

A.    **The Government Bears The Burden Of Proof On The Illegality Of The Funds Used To Purchase The Defendant Aircraft**

In <u>United States v. $125,938.62</u>, the Eleventh Circuit ruled that claimants "were under no obligation to come forward with evidence of their rightful ownership.  Rather, it was the Government's burden to show the money used to purchase the [Defendant res] was derived from embezzled funds—and that it did not do."  <u>United States v. $125,938.62</u>, 537 F.3d 1287, 1294 (11th Cir. 2008) (reversing district court forfeiture order based on foreign offense of embezzlement of public treasury funds in Nicaragua).  <u>Accord</u> <u>United States v. $421,090.00 in U.S. Currency</u>, 11-CV-00341 JG, 2011 WL 3235632, at *5 (E.D.N.Y. July 27, 2011) (holding government "misapprehends" its burden of proof by arguing claimant's "account of the defendant funds' source is implausible;" "Before a claimant can be called upon to establish innocent owner status, the government must first 'establish, by a preponderance of the evidence, that the property is subject to forfeiture.'") (quoting 18 U.S.C. § 983(c)(1)).

As explained by Congressman Hyde, CAFRA's primary sponsor, in summarizing the impact of CAFRA before its passage on the House floor, "'[A]n owner does not have to prove where he obtained money until the government demonstrates that it has [met its burden] to believe the money is forfeitable.'"  Congressional Record—House, 146 Cong. Rec. H2050 (GPO April 11, 2000).  Indeed, placing the onerous on the government and not the claimant was the primary objective of CAFRA.  In lamenting the old burden the government here would seek to resurrect, and expressing her disbelief in the inequities of requiring a person not convicted or even charged with wrongdoing to "prove that the property is not subject to forfeiture just to get the property back," Congresswoman Jackson-Lee celebrated that CAFRA

22

"places the burden of proof where it belongs, with the government agency that performed the seizure, and it protects individuals from the difficult task of proving a negative, in other words, proving that their property was not subject to forfeiture."  Congressional Record—House, 146 Cong. Rec. H2051-52 (GPO April 11, 2000).

As this Court recognized in dismissing the government's earlier complaint, "the court cannot leap to the conclusion that [Claimant's] largesse is evidence of criminal activity."  Order Memo at 22.  In line with this Court's reasoning, Judge Wu agreed that "[p]articularly complicating the issue [of the government's net worth theory] is that the Government's evidence indicates that Claimant earned substantial sums of money in logging.  Indeed, this evidence indicates that Claimant's logging activities were substantial, as they attracted sufficient attention that they were *later* made illegal."  C.D. Cal. Order Granting Partial Summary Judgment No. 1 at 15 (emphasis in original) (citation omitted).

Moreover, even if Claimant was required to explain the source of his funds before the government meets its burden—which he is not—the government's allegation that Claimant gave inconsistent explanations as to the source of wealth is unsupported on its face.[21]

### B.    A Net Worth Theory Still Requires A Nexus Between The Defendant Aircraft And The Specified Unlawful Activity; The FAC Pleads None

Moreover, even under a net worth theory, the government will have to demonstrate more than mere alleged disparity between Claimant's spending and what the government conclusorily contends is his only legitimate income.  See, e.g., United States v. Real Prop. & Premises Known as 90-23 201st St., Hollis, New York, 775 F. Supp. 2d 545, 564-65 (E.D.N.Y.

---

[21]    Nor would actual evidence of inconsistent or unexplained wealth support forfeiture of the Defendant Aircraft.  See, e.g., United States v. $421,090.00 in U.S. Currency, 11-CV-00341 JG, 2011 WL 3235632, at *6 (E.D.N.Y. July 27, 2011) (holding that while "incompatible and unsubstantiated explanations regarding the money's origins" can support an inference of *some* illegal activity, it does not support an inference that the money was tied to the particular alleged specified unlawful activity giving rise to forfeiture.).

2011) (refusing to "infer the requisite connection to narcotics activity from [claimant's income-spending] disparity" because despite far greater evidence of limited legal income than the government has presented here, claimant's unexplained income raised only an inference of some illegal activity, but "does not support an inference of narcotics-related activity" and is "insufficient to establish, as a matter of law, the requisite substantial connection by a preponderance of the evidence.").[22]

As Claimants already successfully demonstrated on their motion for summary judgment in the parallel California forfeiture action, all of the authority the government has relied on for its net worth theory also rely on significant other evidence of a connection between the Defendant Asset(s) and the specified unlawful activity.  See C.D. Cal. Order Granting Partial Summary Judgment No. 1 at 16, n.11.  The government still lacks that evidence of a connection here.

Unable to come forward with any particularized factual allegations connecting the Defendant Aircraft with violations of E.G. law, the government attempts to stretch the reach of the net worth theory beyond legally-acceptable bounds.  Supposedly to support a connection between the Defendant Aircraft and such foreign law violations,  the government relies on allegations of an alleged attempt "to divert millions of dollars in E.G. public funds to acquire and pay for a private aircraft" that it freely admits never came to fruition and thus did not produce any proceeds.  (FAC at ¶¶ 118-120.)  Thus this allegation fails for the same reason it failed in the California action:  "the alleged misappropriation *did not in fact occur*."[23]  Not only

---

[22]   Accord United States v. Rodriguez, 278 F.3d 486, 493 (5th Cir. 2002) (error for court to consider amount of allegedly laundered money for sentencing on money laundering conviction based on a discrepancy between the amount of the funds and the defendant's legal income "without further proof that [the money] was laundered.").

[23]   See C.D. Cal. Order Dismissing FAC at 5 (holding that "the problem remains that the alleged misappropriation *did not in fact occur*. If the Government seeks to rest on a theory

does the government admit that this alleged attempted misappropriation did not occur, but the government does not allege that a similar scheme was used in the actual acquisition of the Defendant Aircraft two years later.

As Judge Wu found, "Claimant's negotiations related to the purchase of a Gulfstream jet . . . do not demonstrate any illegal conduct."  C.D. Cal. Order Granting Partial Summary Judgment No. 2 at 4 (finding the allegations of "attempted" misappropriation of public funds "insufficient to create a genuine issue of material fact, particularly given the dearth of other evidence regarding political corruption and the fact that the Gulfstream executive ultimately concluded that 'the transfer was a legitimate transaction and nothing . . . [gave] him cause for alarm.'").

## IV.     THE FAC DOES NOT ALLEGE FACTS TO SUPPORT A REASONABLE BELIEF THAT CLAIMANTS PURCHASED THE DEFENDANT FOR THE PURPOSE OF CONCEALING THE PROCEEDS OF SPECIFIED UNLAWFUL ACTIVITY

The government's third basis for forfeiture is premised on the claim that the Defendant Aircraft "constitutes property involved in a transaction or an attempted transaction in violation of 18 U.S.C. § 1956(a)(1)(B), or is property traceable to such assets."  (FAC at ¶ 16.)  Thus, in order to obtain forfeiture under its third basis, the government must prove the purchase of the Defendant Aircraft was conducted "with property *known* to be the proceeds of unlawful activity *with the intent to conceal* the nature, location, source, ownership, or control of proceeds of a specified unlawful activity."  Id. (emphasis added).  As set forth below, the FAC fails to support a reasonable belief that the *purpose* of the jet's purchase was "to conceal or disguise the nature, the location, the source, ownership, or the control of the proceeds of

---

of *attempted* misappropriation, it must say so clearly and cite authority that could give rise to the reasonable belief that it can prevail on such a theory.") (emphasis in original).

specified unlawful activity." The government alleges that Vice President Nguema "used shell companies in E.G. to disguise his criminal conduct, conceal the source of his income." However, the mere fact that he acquired the Defendant Aircraft in the name of a corporate entity does not alone support the government's concealment theory of forfeiture.  As Judge Wu ruled, "[M]any of the facts pled to support this third basis for forfeiture, such as Nguema's use of shell companies and corporations to purchase luxury items, are commonplace financial arrangements and do not readily, without further allegations, support the reasonable belief that the government will be able to meet its burden of proof at trial with regards to the money laundering allegations."  See C.D. Cal. Order Dismissing FAC at 6.

Here, it is undisputed that Nguema personally negotiated the purchase of the Defendant Aircraft and openly used it.  This is inconsistent with the government's claim that he acquired the Defendant Aircraft in the name of Ebony for the purpose of concealing his ownership and the source of the purchase funds.  Indeed, an "undisguised purchase, registration, and use," for example, of a vehicle allegedly purchased with tainted funds, is "inconsistent with a motivation to conceal the source or ownership of the illegal proceeds."  United States v. Wynn, 61 F.3d 921, 925 (D.C. Cir. 1995) (citing United States v. Sanders, 929 F.2d 1466, 1472-73 (10th Cir. 1991) (affirming money laundering conviction where prosecution presented evidence that defendant recorded sales made to drug dealers under false names and contrasting those facts with case where a defendant made an "undisguised purchase, registration, and use of the vehicles by her and members of her family")).

Moreover, the government fails to allege that the *purpose* of the transactions was "to conceal or disguise the nature, the location, the source, ownership, or the control of the proceeds of specified unlawful activity."  See 18 U.S.C. § 1956(a)(1)(B).  "The Supreme Court has explained that the phrase, 'designed in whole or in part to conceal' as used in the

26

money laundering statute 'requires proof that the purpose—not merely the effect—of the [transaction] was to conceal or disguise a listed attribute.'" <u>United States v. Real Prop. known as 2291 Ferndown Lane, Keswick VA 22947-9195</u>, 3:10-CV-0037, 2011 WL 2441254, at *6 (W.D. Va. June 14, 2011) (quoting <u>Regalado Cuellar v. United States</u>, 553 U.S. 550, 567 (2008) (reversing conviction under Section 1956(a)(2)(B)(i))).  Accordingly, where, as here, "the government [fails to] allege that the purchase of the defendant property was consummated *in order to* conceal the source of illicit funds," and merely alleges that the claimant "'took steps to conceal the ownership and source of the funds used to purchase the property,'" dismissal is proper.  <u>See</u> <u>id.</u>

Similarly, although the government alleges Vice President Nguema "formed and used Ebony Shine International Ltd." "[f]or purposes of the transaction" (FAC at ¶ 127), it stops short of alleging that Claimant Ebony Shine was formed and used in the transaction with the specific "intent to conceal the nature, location, source, ownership, or control of proceeds of a specified unlawful activity, including foreign offenses involving 'extortion' or 'bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, or a foreign offense involving bribery of a public official," as required under its third basis for forfeiture.  (FAC at ¶ 16.)  Thus, once again, "the facts pled to support the forfeiture claim based on money laundering are insufficient to support a reasonable belief that the Government will prevail in meeting their burden of proof on this issue at trial." C.D. Cal. Order Dismissing FAC at 5-6 (holding the government's allegations that the Vice President "sought to conceal his identity and his ownership of some funds when purchasing the Defendant Assets" failed because "the FAC has not alleged with sufficient particularity that such funds were derived from an SUA.").Therefore, dismissal is proper.

/ / /

## Conclusion

For the foregoing reasons, the Court should grant Claimants' motion to dismiss.


DATED:  October 4, 2013          QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP

                                 By */s/ Heather H. Martin*
                                     Heather H. Martin (D.C. Bar No. 489,114)
                                     heathermartin@quinnemanuel.com
                                 Quinn Emanuel Urquhart & Sullivan, LLP
                                 1299 Pennsylvania Ave. NW, Suite 825
                                 Washington, D.C. 20004
                                 Telephone:   (202) 538-8000
                                 Facsimile:    (202) 538-8100

                                     Duane R. Lyons (*admitted pro hac vice*)
                                     duanelyons@quinnemanuel.com
                                     Brian M. Wheeler (*admitted pro hac vice*)
                                     brianwheeler@quinnemanuel.com
                                 Quinn Emanuel Urquhart & Sullivan, LLP
                                 865 South Figueroa Street, 10th Floor
                                 Los Angeles, California 90017-2543
                                 Telephone:   (213) 443-3000
                                 Facsimile:    (213) 443-3100

                                     Juan P. Morillo (D.C. Bar No. 475196)
                                     jmorillo@cgsh.com
                                 Cleary Gottlieb Steen & Hamilton LLP
                                 2000 Pennsylvania Avenue, N.W.
                                 Washington, D.C. 20006-1801
                                 Telephone:   (202) 974-1500
                                 Facsimile: (202) 974-1999

                                     Mike DeGeurin (D.C. Bar No. TX0092)
                                     mdegeurin@foremandegeurin.com
                                 Foreman, DeGeurin & DeGeurin
                                 300 Main Street
                                 Houston, Texas 77002
                                 Telephone: (713) 655-9000
                                 Facsimile:  (713) 655-1812

                                     Attorneys for Claimants