# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 11-3582-GW(SSx) | Date | August 19, 2013 |
| Title | *United States of America v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Wil Wilcox | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

    Woo Lee, US DOJ
    Steven R. Welk, AUSA

Attorneys Present for Defendants:

    Duane R. Lyons

**PROCEEDINGS:** CLAIMANTS' MOTION FOR SUMMARY JUDGMENT ON THE LIMITED ISSUE OF PROBABLE CAUSE; OR, IN THE ALTERNATIVE, ORDER FINDING THE GOVERNMENT LACKED PROBABLE CAUSE AT THE TIME IT INSTITUTED THE ACTION FOR FORFEITURE IN REM [78]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the Claimants' motion is TAKEN UNDER SUBMISSION. Court to issue ruling. Defendants' will provide the privilege log by August 23, 2013.

 

                                                                                          : 25

Exhibit 8
Page 75

Initials of Preparer   JG

***United States of America v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia, et al.***, Case No. CV-11-3582-GW-SS
Tentative Additional Ruling based on Supplemental Briefing on Claimant's Motion for Summary Judgment on the Limited Issue of Probable Cause or, in the Alternative, Order Finding the Government Lacked Probable Cause at the Time It Instituted the Action for Forfeiture *In Rem*

## I. Background

The facts of this case were previously delineated by to the Court (*see generally* Docket No. 98) and are repeated herein only to the extent necessary to address the parties' supplemental briefing. Plaintiff United States ("the Government") alleges that Teodoro Nguema Obiang Mangue ("Nguema" or "Claimant"), the son of the president of the West African Country of Equatorial Guinea ("EG"), and now a Vice President of that country, has purchased real property and luxury items such as the named defendants in rem herein (collectively, the "Defendant Assets"), using funds from activities that are illegal under EG law. *See generally* Second Amended Complaint ("SAC"), Docket No. 50. The Government also claims that the Defendant Assets were maintained through bank fraud committed in the United States. *See, e.g.*, SAC ¶¶ 102-167.

On June 20, 2013, the Court held a hearing on Claimant's Motion for Summary Judgment on the Limited Issue of Probable Cause or, in the Alternative, Order Finding the Government Lacked Probable Cause at the Time It Instituted the Action for Forfeiture *In Rem* ("Motion"). At the hearing, the Court distributed a Tentative Order indicating that it would likely grant in part Claimant's Motion, "except as to the bank fraud issue." *See* Tentative Order, Docket No. 98, at 20. In its ruling, the Court noted that the Government had made "broad, generalized allegation[s]" related to probable cause, which it attempted to support by simply "dumping a plethora [of] documents on the Court[.]" Tentative Order at 10. The Court indicated that it would not perform "document review" for the Government and, following oral argument, ordered the Government to file a chart identifying specific evidentiary support for Claimant's purported violations of EG law. *Id.* at 9 n. 6. The Government was instructed to "list every fact" showing that "it had probable cause to institute this action on April 28, 2011" and cite the specific provisions of the EG penal code purportedly violated by Claimant. *Id.* The Court also instructed the parties to address whether the SAC's allegations of bank fraud satisfy 19 U.S.C. § 1615's probable cause requirement. Reporter's Transcript ("RT") at 21-22. Finally, assuming that the Government lacked probable cause on April 28, 2011 – the date the Government filed its original Complaint – the Court asked the parties to address what impact summary judgment in favor of Claimant would have on the Government's ability to file a new action. RT at 22.

## II. Analysis

Before reaching the merits of the issues referenced above, the Court would briefly pause to reiterate the standard for summary judgment employed in deciding Claimant's Motion. The question is whether the evidence is sufficient for a "reasonable jury" to find that the Government had probable cause on the filing date. *See, e.g., United States v. $20,280.00 in United States Currency*, No. CV 10-9193-CAS (Ex), 2011 U.S. Dist. LEXIS 115395, at *14 (C.D. Cal. Sept. 13, 2011) (denying summary judgment where a "reasonable jury could conclude that [the Government] acted with

-1-

Exhibit 8
Page 76

probable cause."). Probable cause to institute a forfeiture action exists when the Government has reasonable grounds to believe that the property was "related to [a Specified Unlawful Activity ("SUA")], supported by less than prima facie proof but more than mere suspicion. It may be based only upon information gathered before the forfeiture action was instituted." *United States v. $186,416.00 in U.S. Currency,* 590 F.3d 942, 949 (9th Cir. 2010). "Probable cause to believe that the property is involved in some illegal activity is not enough – the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes." *United States v. $405,089.23 U.S. Currency,* 122 F.3d 1285, 1289 (9th Cir. 1997). *See also* Tentative Order at 2-4 (discussing summary judgment in the forfeiture context).

Thus, the Court must determine whether a reasonable jury could conclude that the Government had probable cause to believe the Defendant Assets were involved in the allegedly criminal activity as of the date it instituted this forfeiture proceeding: *i.e.* April 28, 2011. *See id.* at 4-7.

### A. *Probable Cause Regarding the Government's First Three Bases for Forfeiture*

As discussed in this Court's Tentative Order, the Government's first three bases for forfeiture are all premised on Claimant's alleged violations of EG law. Tentative Order at 8-10. The Government claims that Nguema committed various foreign offenses involving "extortion," the "misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official," and "bribery of a public official." *See, e.g.,* SAC ¶ 12 (citing 18 U.S.C. §§ 1956(c)(7)(B)(ii), 1956(c)(7)(B)(iv) and 1956 (c)(7)(A)).[1] While these allegations were discussed at length by the Court in its previous tentative ruling (*see generally* Docket No. 98), the Government now offers specific citations to evidence in its Probable Cause Chart (Docket No. 99-1) purporting to show that Nguema: (1) used European banks to store and launder "stolen" public infrastructure funds in 2006; (2) sought to misappropriate $40 million from the EG Government to acquire a Gulfstream jet in 2004; (3) attempted to "extort" a UK firm in 2003; (4) used EG state funds to renovate his home in Cape Town, South Africa; (5) extorted EG timber companies; (6) admitted that he engaged in commercial activities relating to his duties as a cabinet minister; (7) is the subject of two other criminal investigations in which he is directly implicated; (8) acquired more than $100 million in net worth while making less than $100,000 per year as a public official; and (9) gave conflicting and inconsistent explanations as to the sources of his extraordinary wealth.[2] *See* Pl. Supp. Br. at 6-7; *see also* Probable Cause Chart. The Government argues that, overall, this evidence creates a genuine issue of material fact as to whether it had probable cause to believe claimant violated EG law at the time this Action was initiated. Pl. Supp. Br. at 10-21.

Having reviewed the supplemental material filed by the Government, the Court would not alter its previous conclusions regarding the first three bases for forfeiture. *See* Tentative Order at

---

[1] The Court previously noted that although "the parties have explained almost nothing about [EG law]" the Court would "presume that the Government's view of EG law is correct" for the purposes of this Motion. Tentative Order at 8. In their supplemental briefs, both parties agree that a Fed. R. Civ. P. 41.1 hearing on EG law is not necessary. *See* Cl. Supp. Br., Docket No. 100, at 5; Pl. Supp. Br., Docket No. 99, at 25.

[2] The Government's evidence with respect to the domestic bank fraud basis for forfeiture is addressed in Section II-B, *infra*.

-2-

Exhibit 8
Page 77

9-18. As aptly summarized by Claimant, "all that the government has is evidence that Claimant spent money. Where the money came from is a matter of pure speculation." Cl. Supp. Br. at 5. For example, the reports from Italian law enforcement cited by the Government do not indicate that Claimant laundered "stolen" public infrastructure funds through General Work ("GW"), an infrastructure firm run by the Italian national Igor Celotti ("Celotti"). Pl. Supp. Br. at 10 (citing Manzanares ("Manz.") Decl., Ex. 26, DOJ_415; Ex. 27, DOJ_419). The Court has already addressed most of the evidence cited by the Government on this issue (Tentative Order at 10 & n.8), and the specific references offered in the Government's supplemental filings again fail to provide reliable evidence of Claimant's alleged violations of EG law.

For instance, the Government insists that Italian authorities did not rely exclusively on press reports to support their speculation that Claimant engaged in money laundering, but rather also relied on witness interviews and a review of financial records to uncover a widespread illegal kickback scheme. Pl. Supp. Br. at 11-13. None of this evidence, however, plausibly links *Claimant* to any such scheme. *See* Manz. Decl., Ex. 24, DOJ_317; Ex. 27, DOJ_419-20. In fact, the sole financial transaction in the cited evidence involving Claimant relates to medical expenses incurred in the United States, and nothing in that evidence links Claimant, in particular, to any specific acts of extortion or bribery. *Id.* Ex. 24, DOJ_319. Furthermore, as the Court previously observed, Italian law enforcement merely *speculated* "that Obiang received forty-five percent of all general contracting projects" performed by GW. Tentative Order at 10 n. 8. That 45% figure came from a newspaper article, remains uncorroborated, and refers to a separate claim that the EG President's family obtained a significant interest in GW *after* Celotti's death. *See* Manz. Decl., Ex. 25A. More importantly, the article does not identify any illegal kickback to Claimant. Likewise, Exhibit 27 of the Manzanares Declaration, also cited by the Government, fails to indicate exactly how the accounts opened by Claimant were "funded with government revenues stolen by [Claimant and his father]." *Id.* Ex. 27, DOJ _419. Rather, this evidence simply indicates that Claimant maintained a large network of overseas accounts. *Id.* Ex. 27 at DOJ_419-20. To be sure, these accounts are suspicious. But the specific evidentiary citations in the Government's supplemental material offer no basis from which a reasonable juror could conclude that Claimant's accounts contained the proceeds of foreign corruption.[3]

Moreover, even assuming the Government could show that Claimant generated revenue through the identified foreign offenses, there is no evidence that the *Defendant Assets* were purchased with those funds. The strongest evidence to support the purported nexus between GW, Claimant, and the Defendant Assets – communications relating to Sweetwater's acquisition that Claimant allegedly sent from Celotti's office in 2006 – (Manz. Decl. Ex. 57, Senate PSI-93971, 939-74, 93976, 9406-47, 97840) took place prior to the alleged fraudulent takeover in 2007. Due to the absence of evidence demonstrating that Claimant received funds through GW in 2006, there is no probable cause to suggest that the Malibu estate was purchased with those funds – even if they could be linked to Claimant's alleged crimes. *See also* Cl. Supp. Br. at 9-12.

---

[3]The Government now seems to suggest that the Defendant Assets were purchased through funds obtained as a result of an allegedly illegal takeover of GW that occurred in 2007, after Celotti died. Pl. Supp. Br. at 7 (citing Manz. Decl., Exs. 24, 27). Again, the evidence in the record fails to demonstrate how any change in control occurred, exactly how such change involved Claimant, or how any funds from the alleged takeover were used to purchase the Defendant Assets.

  Similarly – and for reasons already expressed by the Court – Claimant's negotiations related to the purchase of a Gulfstream jet and a hotel construction project in EG do not demonstrate any illegal conduct. *See* Tentative Order at 11-12. While there is some evidence to support the Government's position that Claimant considered using EG funds to acquire a jet, the record demonstrates that Claimant did not pursue the idea. Graf. Decl., Ex. 6B at DOJ_131. This conduct is undoubtedly relevant to the backdrop for probable cause as a whole, but the Court would find it insufficient to create a genuine issue of material fact, particularly given the dearth of other evidence regarding political corruption and the fact that the Gulfstream executive ultimately concluded that "the transfer was a legitimate transaction and nothing . . . [gave] him cause for alarm." *See also* Tentative Order at 11. Likewise, the Court would find the evidence does not indicate Claimant extorted a British company that wanted to build a hotel in EG. To the contrary, the portion of the record cited by the Government suggests that Claimant was negotiating on behalf of the EG Government, *see* Graf Decl. Ex. 7 at DOJ_84 ("Obiang said the British company could not build the hotel as the EG government was not getting enough of the share.").

  In addition, aside from evidence that the Court has already rejected, the Government fails to offer any specific facts from which a jury could conclude that Nguema "demanded that timber companies pay him money" while serving as Forestry Minister. As previously explained, the Government's reliance on news articles which, in turn, rely on anonymous sources, is insufficient. *See* Tentative Order at 11 n.9. Nor does the French investigation cited by the Government adequately support probable cause. As noted by Claimant, there is no direct evidence that the French police affirmatively corroborated assertions made by NGOs (in a lawsuit filed in France) that families in several African states had amassed millions of dollars of French property. Cl. Supp. Br. at 14; Manz. Ex. 2 at 124611, n. 78. Rather, the NGOs *claimed* that the French police corroborated their allegations; the record itself, however, contains insufficient evidence of said corroboration with respect to Claimant. *Id.*

  Finally, as this Court has previously observed, the Government's presentation of additional circumstantial evidence – such as ongoing criminal investigations, Claimant's substantial net worth, inability to explain the source of his wealth, possession of large sums of cash, and use of shell companies – would have been more meaningful if the Government's underlying evidence of corruption were not defective. *See* Tentative Order at 13. While this circumstantial evidence may suggest that Claimant possibly engaged in illegal activities, "it scarcely indicates that he was involved in the type of political corruption that is the basis of this forfeiture action." *Id*. Again, "[p]robable cause to believe that property is involved in some illegal activity is not enough – the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes." *405,089.23 U.S. Currency*, 122 F.3d at 1289 (citation omitted).

  In sum, the Government fails to offer a basis from which a reasonable juror could conclude that, as of the Filing Date, probable cause existed with respect to the Government's bases for forfeiture premised on violations of EG law. Accordingly, Claimant's motion for summary judgment on this ground should be GRANTED.

### B. *The Bank Fraud Basis for Forfeiture*
Claimant argues that because the Government invoked solely the alleged violations of foreign

-4-

Exhibit 8
Page 79

law as the only grounds for forfeiture in the original complaint, the Government is precluded from relying on bank fraud as a basis for forfeiture – even though bank fraud *is* pled in the Second Amended Complaint (SAC ¶¶ 102-67 ), and Claimant does not yet dispute the Government's probable cause on this basis. Claimant asserts that because the plain language of 19 U.S.C. § 1615 "requires that probable cause shall be first shown for the institution of such suit or action," evidence of an unpleaded theory is relevant only for *other* actions – not to establish probable cause for the action that was actually instituted in the original filing. *See* Cl. Supp. Br. at 18-19 (citing *United States v. $191,910.00 in United States Currency*, 16 F.3d 1051, 1068, 1071-72 (9th Cir. 1994)). Because the "government's failure to invoke the bank fraud statute was not merely a pleading-with-particularity defect or error" – but rather a "strategic decision to base this case solely on violations of foreign law when it instituted the action" – Claimant argues that the Government cannot assert bank fraud as a basis for forfeiture. *Id.* at 21.

The Court would find these arguments unpersuasive. As the Court previously concluded, Claimant's position "conflates the issue of what the Government knew at the time it filed the initial complaint with the issue of what was pled in the initial complaint." Tentative Order at 18. Claimant fails to cite any case in which a court has held that Title 19 requires the Government to plead *all* of its legal claims in an initial complaint, and the Court is aware of no such authority. Moreover, the Ninth Circuit has observed that even if "the government *pled* probable cause . . . at the time it instituted the proceedings, this fact alone would not protect the government against dismissal where the government did not actually *have* probable cause." *$191,910.00*, 16 F.3d at 1068 n.33. Analogously, if probable cause for a forfeiture claim exists as of the Filing Date but that claim goes unpled, the Government is not automatically barred from pursuing that claim in the same action – assuming leave to amend is properly granted. *See id.* at 1068 ("Whether probable cause exists to institute proceedings is solely a question of what information is in the government's possession."). Fed. R. Civ. P. 15 further supports this conclusion: a plaintiff is permitted to amend its complaint to add new causes of action, and courts regularly grant the Government leave to amend forfeiture complaints to add new claims.[4] *See, e.g. United States v. Item 1: a 1990 Jeep Cherokee*, 147 Fed. Appx. 775, 776 (10th Cir. 2005); *United States v. Wells Fargo*, No. 09-C-1016, 2010 U.S. Dist. LEXIS 126901, at *2 (E.D. Wis. Nov. 16, 2010); *United States v. U.S. Currency in the Amount of One Hundred Forty-Six Thousand, Eight Hundred Dollars*, No. 96-CV-4882, 1997 U.S. Dist. LEXIS 22917, at *17 (E.D.N.Y. Apr. 30, 1997) (same). *See also* Pl. Reply, Docket No. 103, at 4-7 (setting forth additional reasons that the Government may assert properly pled causes of action for which it had probable cause on the filing date). Of course, the Court would emphasize that a failure to comply with Rule 15 (and/or Rule 16, when applicable) could also have the effect of preventing the Government from sitting on evidence that existed as of the Filing Date but went unpled for an extended period of time.

Thus, with respect to the bank fraud issue, Claimant's motion for summary judgment would be DENIED. The Government argues that the SAC's First, Second, Third and Fourth Claims for

---

[4]Claimant's position would also seem to have the effect of forcing the Government to institute multiple forfeiture proceedings against the same defendant assets any time the Government neglected to include a given theory for forfeiture in its initial pleading – even if that theory was supported by probable cause that existed as of the Filing Date, and even if the Government was granted leave to amend. The Court would decline to encourage this kind of duplicative litigation and added strain on judicial resources.

Forfeiture are all premised in part on bank fraud. Pl. Reply at 4. Given that Claimant did not have an opportunity to respond to this assertion, the Court would further discuss which claims may proceed on this basis with the parties at the hearing.

### C. Whether Summary Judgment Precludes the Government from Filing a New Action Against the Defendant Assets

Claimant argues that once a determination has been made that the Government lacks probable cause, the proper procedure is to enter judgment on behalf of the Claimant, and the Government is barred from re-filing a case utilizing evidence it acquired after it initiated this action to establish probable cause. Cl. Supp. Br. at 21-25. Claimant asserts that "[t]he government's revolving door theory of probable cause would effectively eliminate the probable cause requirement because the government could always re-file a new claim with evidence it acquired after the original action." *Id.* at 21.

Given that the Government has not yet attempted to initiate a second forfeiture action against the Defendant Assets, this Court obviously cannot assess the extent to which the instant rulings would serve to bar some unknown future action. *See United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) ("Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties.") (citation omitted). To decide "the identity of claims," courts in the Ninth Circuit apply four criteria: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Liquidators of European Fed. Credit Bank*, 690 F.3d at 1150.

However, having considered the supplemental material submitted by the parties, it appears that the Government would not *necessarily* be prevented from initiating another action based on new evidence obtained after the Filing Date (*i.e.* evidence not in the Government's possession as of April 28, 2011). *See 191,910.00*, 16 F.3d at 1067 ("If, in fact, the government can only show probable cause as of the time of trial . . . it has not shown probable cause for the institution of such suit or action. Instead, it has only shown that it has probable cause for . . . the *institution* of *another* action.") (emphasis in original); *see also Liquidators of European Fed. Credit Bank*, 690 F.3d at 1151 ("If the harm arose at the same time, then there was no reason why the plaintiff could not have brought the claim in the first action. The plaintiff simply could have added a claim to the complaint. If the harm arose from different facts at a different time, however, then the plaintiff could not have brought the claim in the first action."). The Court would find the Government's comparisons to analogous procedural contexts of some additional persuasive value in this regard but, as stated above, would decline to rule on this issue. *See* Pl. Reply at 9-12.[5]

In the meantime, however, Claimant is correct that, to the extent this Court has determined

---

[5]For instance, under the Federal Rules of Criminal Procedure, when an application for a seizure or search warrant is denied, the Government is permitted to re-apply based upon additional evidence. Given that the probable cause requirement for forfeiture is the same as that required to obtain a warrant under Fed. R. Crim. P. 41, a dismissal for lack of probable cause in the instant suit would likely not bar the Government from instituting another action based on new evidence.

that the Government lacked probable cause at the time it instituted *this* Action, Claimant is entitled to a decision resulting in a return of his property. *See, e.g., United States v. $32,000 in United States Currency*, No. CV-06-1766, 2007 U.S. Dist. LEXIS 31991, at *19-20 (D. Ariz. Apr. 30, 2007) (granting summary judgment for claimant and ordering the immediate return of currency); *United States v. $31,999.00 in United States Currency*, No. 89-CV-911, 1992 U.S. Dist. LEXIS 12650, at *29 (N.D.N.Y. June 1, 1992) (dismissing the complaint with prejudice for lack of probable cause and ordering the Government "to return the res and any accrued interest over to the claimant no later than five (5) days after the time for filing an appeal of this decision has expired").

Before entering such an order for Claimant, the Court must ascertain which Defendant Assets are linked to the bank fraud allegations and which are linked exclusively to the purported violations of EG law (for which the Government lacked probable cause). As discussed above, the Government asserts that the SAC's First, Second, Third and Fourth Claims for Forfeiture are all premised in-part on bank fraud. Claimant would be given an opportunity to respond to this assertion. To the extent the Government's proceedings against the Defendant Assets rely solely on the aforementioned violations of EG law which are unsupported by probable cause, those Assets would be promptly returned to Claimant.

### D. Privileged Documents Provided to the Court

Finally, after the June 20, 2013 hearing, the Government provided the Court with documents consisting of purportedly privileged communications between Claimant and his attorneys which the Government obtained in its execution of a search warrant on November 17, 2011. The Court has briefly reviewed these documents in camera, but it appears based on counsel's correspondence with the Court (on which Claimant was copied) that Claimant has also been provided with copies of at least some of these documents. It is thus unclear what ruling, if any, the parties presently seek from this Court with respect to the three categories of documents identified in the Government's letter dated June 22, 2013. The parties should be prepared to address this issue at the hearing.

### III. Conclusion

For the reasons expressed herein and in the Court's prior Tentative Order, the Court would GRANT Claimant's motion for summary judgment with respect to probable cause premised on alleged violations of EG law.

The Court would DENY Claimant's motion for summary judgment with respect to probable cause premised on the alleged bank fraud.

-7-

Exhibit 8
Page 82