UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ONE GULFSTREAM G-V JET AIRCRAFT
DISPLAYING TAIL NUMBER VPCES, ITS
TOOLS AND APPURTENANCES,

Defendant.

CASE NO. 11-cv-01874-RC

**CLAIMANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT  OF CLAIMANTS' MOTION TO DISMISS VERIFIED FIRST AMENDED
COMPLAINT FOR FORFEITURE *IN REM***

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...............................................................................................................................2

I.     THE FAC STILL FAILS TO SUPPORT A REASONABLE BELIEF THAT
THE GOVERNMENT WILL BE ABLE TO MEET ITS BURDEN AT TRIAL .............2

     A.     The Government Has Not Shown An Indication That The Defendant Jet
Is Derived From the Proceeds Of Foreign Corruption .............................................2

             1.     The "Net Worth" Theory Still Requires A Nexus And The
Government Bears The Burden On All Elements Of The Theory .............3

             2.     The Government's Conclusory Allegations And Unsupported
Inferences Of Nexus Are Insufficient And Must Be Disregarded.............7

             3.     The Government Must Plead Specific Facts With Particularity
To Support A Reasonable Belief It Can Meet Its Burden At Trial ............8

             4.     The Government Cannot Be Heard To Complaint Of The Nexus
Requirement Because It Elected To Proceed *In Rem* .................................9

     B.     Allegations Of Attempted Misconduct Do Not Support Forfeiture  Of
The Jet..................................................................................................................11

     C.     The Government Is Aware And Did Not Dispute That The Predicate
SUA Conduct Alleged In The FAC Is In Fact Not A Violation Of Law
In E.G...................................................................................................................12

II.     CAFRA INCREASED THE GOVERNMENT'S BURDEN AT TRIAL; IT DID
NOT ELIMINATE PROBABLE CAUSE AS A GATE-KEEPING FUNCTION...........13

     A.     Whether Probable Cause To Institute A Forfeiture Action Survived The
Enactment Of CAFRA Is A Matter Of First Impression In This Circuit .............13

     B.     The Probable Cause Requirement Survived The Enactment of CAFRA.............15

     C.     The Government Threatens Constitutional Protections of Probable Cause
And Due Process In Civil Forfeiture Actions.......................................................20

CONCLUSION ........................................................................................................................22

## TABLE OF AUTHORITIES

**Page**

### Cases

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ...........................................................................................................7

Brownmark Films, LLC v. Comedy Partners,
682 F.3d 687 (7th Cir. 2012) ...........................................................................................12

Cortec Indus., Inc. v. Sum Holding LP,
949 F.2d 42 (2d Cir. 1991) ..............................................................................................12

E.E.O.C. v. St. Francis Xavier Parochial Sch.,
117 F.3d 621 (D.C. Cir. 1997)..........................................................................................12

Gray v. First Winthrop Corp.,
989 F.2d 1564 (9th Cir. 1993) ..........................................................................................22

Kowal v. MCI Commc'ns Corp.,
16 F.3d 1271 (D.C. Cir. 1994).............................................................................................7

Lipton v. MCI Worldcom, Inc.,
135 F. Supp. 2d 182 (D.D.C. 2001).....................................................................................7

Tierney v. Vahle,
304 F.3d 734 (7th Cir. 2002) ............................................................................................12

United States v. $1,399,313.74 in U.S. Currency,
591 F. Supp. 2d 365 (S.D.N.Y. 2008) .................................................................................3

United States v. $80,010 in U.S. Currency,
303 F.3d 1182 (9th Cir. 2002) .............................................................................................8

United States v. $87,118.00 in U.S. Currency,
95 F.3d 511 (7th Cir. 1996) .................................................................................................5

United States v. $506,231 in U.S. Currency,
125 F.3d 442 (7th Cir. 1997) ............................................................................................21

United States v. $186,416.00 in U.S. Currency,
590 F.3d 942 (9th Cir. 2010) ......................................................................................14, 16

United States v. $186,416.00 in U.S. Currency,
527 F. Supp. 2d 1103 (C.D. Cal. 2007) ..................................................................16, 17, 22

United States v. $191,910.00 in U.S. Currency,
16 F.3d 1051 (9th Cir. 1994) ....................................................................................8, 15, 21, 22

United States v. $493,850,
    518 F.3d 1159 (9th Cir. 2008) ....................................................................14, 15, 16, 19, 20

United States v. 3714 Cancun Loop,
    Case No. 1:98CV00011, 2002 U.S. Dist. LEXIS 9996 (M.D.N.C. May 17, 2002)..............5

United States v. All Assets Held at Bank Julius Baer & Co.,
    571 F. Supp. 2d 1 (D.D.C. 2008)............................................................................................1

United States v. All Assets of Statewide Auto Parts, Inc.,
    971 F.2d 896 (2d Cir. 1992) .................................................................................................21

United States v. Borromeo,
    995 F.2d 23 (4th Cir. 1993) ....................................................................................................9

United States v. Brock,
    747 F.2d 761 (D.C. Cir. 1984)................................................................................................6

United States v. Certain Real Prop. Located at 2323 Charms Rd., Milford Twp.,
    726 F. Supp. 164 (E.D. Mich. 1989) .........................................................................4, 5, 11

United States v. Edwards,
    885 F.2d 377 (7th Cir. 1989) ..................................................................................................6

United States v. Funds From Prudential Sec.,
    362 F. Supp. 2d 75 (D.D.C. 2005)......................................................................................6, 7

United States v. Jackson-Randolph,
    282 F.3d 369 (6th Cir. 2002) ..................................................................................................6

United States v. James Daniel Good Real Prop.,
    510 U.S. 43 (1993) ...........................................................................................................20, 21

United States v. Lopez-Burgos,
    435 F.3d 1 (1st Cir. 2006) ....................................................................................................14

United States v. Mondragon,
    313 F.3d 862 (4th Cir. 2002) ................................................................................................14

United States v. One Partially Assembled Drag Racer,
    899 F. Supp. 1334 (D.N.J. 1995)....................................................................................2, 3, 9

United States v. Parcels of Land,
    903 F.2d 36 (1st Cir. 1990) ....................................................................................................5

United States v. Real Prop. & Premises Known as 90-23 201st St., Hollis, New York,
    775 F. Supp. 2d 545 (E.D.N.Y. 2011).................................................................................4, 8

United States v. Seventy-Nine Thousand Three Hundred Twenty-One Dollars in U.S.
    Currency,
    522 F. Supp. 2d 64 (D.D.C. 2007) ......................................................................................12

United States v. Thomas,
    913 F.2d 1111 (4th Cir. 1990) ........................................................................5

Various Items of Personal Property v. United States,
    282 U.S. 577 (1931) .......................................................................................9

## **Statutes**

18 U.S.C. § 981(d).................................................................................16, 17, 18, 19

18 U.S.C. § 983(a)(3)(D)...............................................................................18, 19

18 U.S.C. § 983(c)(1) ......................................................................................2, 16

18 U.S.C. § 983(c)(2) ..........................................................................................17

19 U.S.C. § 1615 .........................................................................13, 16, 18, 22

Fed. R. Civ. P. 12(b)(6) ......................................................................................12

Fed. R. Civ. P. 56................................................................................................12

Fed. R. Civ. P. 56(a) ...........................................................................................17

Fed. R. Civ. P. Supp. R. G(2)(f) ..........................................................................2

Fed. R. Civ. P. Supp. R. E(2)(a) ..........................................................................2

## **Miscellaneous**

David B. Smith, Prosecution and Defense of Forfeiture Cases (Matthew Bender 2012) ..........18

## PRELIMINARY STATEMENT

In dismissing the verified complaint, this Court found that "the complaint does not link the jet to any specific illicit acts," and held that "[a]bsent some specific indication that the Jet is derived from or traceable to illicit activity, the complaint must be dismissed." Memorandum Opinion Granting the Claimants' Motion to Dismiss Without Prejudice; Granting Leave to Amend, ECF No. 22, ("Order Memo") at 1, 23. The FAC does not correct this fatal shortcoming. Although the FAC does provide some additional allegations of misconduct, the government still fails to allege a *substantial connection* between the Jet and the specified unlawful activity ("SUA") subject to the forfeiture statutes invoked. As set forth in the Motion, many of the acts of alleged corruption simply did not result in the receipt of any proceeds. (See Motion at 11-13.) Other acts allegedly occurred years before the Jet was purchased and allegedly resulted in nominal amounts that the government does not even contend were used to purchase the Jet. (Motion at 11-12.) Most importantly, the FAC does not contain a single allegation that specifically identifies the Jet as being derived from or traceable to any SUA. Instead, the government's opposition asks this Court to ignore the absence of a link between the Jet and SUA proceeds and instead to simply infer that the aircraft must have been purchased with SUA proceeds based on isolated allegations of corruption and Claimant's spending habits. No such inference is warranted.

The Supplemental Rules' heightened pleading standard[1], requires that a complaint must set forth with particularity sufficiently detailed factual allegations to "support a reasonable belief that the government will be able to meet its burden of proof at trial." United States v. All Assets Held at Bank Julius Baer & Co., 571 F. Supp. 2d 1, 16-17 (D.D.C. 2008) (citing

---

[1]   See Order Memo at 18 (citing United States v. All Assets Held at Bank Julius Baer & Co., 571 F. Supp. 2d 1, 16-17 (D.D.C. 2008) ("Rule G (and its predecessor Rule E(2)) creates a heightened burden for pleading on the plaintiff.")).

Fed. R. Civ. P. Supp. R. G(2)(f)).  That is, the complaint must plead "*sufficiently detailed*

*facts" with "particularity*" to support a reasonable belief that the government will be able "to

establish, by a preponderance of the evidence, that the property is subject to forfeiture."  Fed.

R. Civ. P. Supp. R. E(2)(a) and G(2)(f) (emphasis added); 18 U.S.C. § 983(c)(1).  Nothing in

the government's opposition alters the fact that the FAC fails to meet that standard.  Simply

stated, the government fails to demonstrate that it will be able to establish the necessary link

between the Jet and alleged specified unlawful activity.  Because the government has again

failed to meet this burden, the proper remedy is dismissal with prejudice.

## ARGUMENT

**I.    THE FAC STILL FAILS TO SUPPORT A REASONABLE BELIEF THAT THE GOVERNMENT WILL BE ABLE TO MEET ITS BURDEN AT TRIAL**

### A.    The Government Has Not Shown An Indication That The Defendant Jet Is Derived From the Proceeds Of Foreign Corruption

In order to demonstrate that the Jet constitutes SUA proceeds, "the government must

put on a two-step proof: first, of the predicate criminal acts, and second, of the direct or

indirect connection between the property and the acts."  United States v. One Partially

Assembled Drag Racer, 899 F. Supp. 1334, 1340-41 (D.N.J. 1995).  The government

mistakenly suggests that Claimants argued that the government must make this proof and

tracing at the pleading stage.  Not so.  In citing Drag Racer, Claimants simply note that in order

to survive a motion to dismiss, the government must plead *sufficiently detailed* factual

allegations to support a reasonable belief that *at trial* it will be able to meet its two-step burden

to (1) prove the underlying predicate SUA and (2) trace the proceeds of that SUA to the

purchase of the Jet.  (Mot. at 5.)  That is an accurate statement of the case and the law.

Here, the FAC fails to plead facts that support a reasonable belief that the government

will be able to meet that two-step burden.  Instead, like in Drag Racer, "[t]he thesis of the

complaint seems to be that, because claimant allegedly engaged in illegal activities which

generated proceeds, the Property *ipso facto* must have been purchased with these proceeds and/or purchased to conceal or disguise them.  No such presumption attaches, without more, to the property of persons who have [allegedly] committed crimes." Drag Racer, 899 F. Supp. at 1342.  In Drag Racer, the court did exactly what this Court should do (and for the same reason), it granted Claimant's motion to dismiss where the government gave "no indication that it will be able to trace the proceeds of claimant's alleged criminal activity to his purchase of the Property," despite adequately pleading the underlying predicate misconduct.

United States v. $1,399,313.74 in U.S. Currency, 591 F. Supp. 2d 365, 373 (S.D.N.Y. 2008), is also instructive.  There, the court granted the claimant's motion to dismiss, holding that the government's complaint failed because it did not plead facts supporting an inference that the defendant *res* represented proceeds of unlawful activity traceable to identified narcotics criminal activity.  Id.  As in $1,399,313.74, despite the government's claim to the contrary (Opp. at 20.), the FAC does not allege how Claimant purchased the Defendant Jet with proceeds of foreign corruption in violation of E.G. law.  Instead, the FAC relies on only "conclusory allegations that are insufficient to 'to raise a right to relief above the speculative level.'" Id. at 374.

### 1.    The "Net Worth" Theory Still Requires A Nexus And The Government Bears The Burden On All Elements Of The Theory

In the absence of specific facts linking the Jet to SUA proceeds, the government relies on its so-called "net worth" theory.  Under the government's characterization of this theory, it argues that the government satisfies its burden of proof at trial if it can (1) prove up the alleged SUAs by a preponderance of the evidence and (2) demonstrate that Claimant's expenditures far exceed his "legitimate income."  (Opp. at 31.)  However, contrary to the government's repeated assertions, even under the net worth theory, the government must still demonstrate some link between the defendant Jet and the alleged unlawful activity.  In addition, the

3

government must show a disparity between "legitimate income"[2] and the value of the specific

defendant asset or assets allegedly subject to forfeiture.  See, e.g., United States v. Real Prop.

& Premises Known as 90-23 201st St., Hollis, New York, 775 F. Supp. 2d 545, 564-65

(E.D.N.Y. 2011) (holding claimant's unexplained income and the disparity between his income

and his spending was, as a matter of law, insufficient to establish the necessary substantial

connection for forfeiture).  As set forth below, the FAC does neither.

 Moreover, all but one of the "net worth" cases cited by the government are pre-CAFRA

cases arising under the probable cause burden-shifting regime where the government's "net

worth" evidence and accompanying evidence of nexus between the claimant's funds and the

specified unlawful activity could satisfy probable cause and shift the burden to the claimant to

prove the negative—that his funds or property were not criminally derived.  That pre-CAFRA

burden-shifting no longer applies.  Additionally, unlike the cases cited in its opposition, the

government here has failed to even allege the additional evidence of nexus that existed in those

cited cases.  For example, the court in United States v. Certain Real Prop. Located at 2323

Charms Rd., Milford Twp., 726 F. Supp. 164, 169 (E.D. Mich. 1989), rejected the

government's overreaching attempt to forfeit every item of claimant's personalty on the theory

that he lacked legitimate income.  The court held that the government must allege with

specificity much more detailed allegations to demonstrate the assets represent proceeds of drug

trafficking:  "To allow the government to continue in court with respect to these items would

be to say that any time that the government pursues a forfeiture on a net worth theory, literally

---

 [2] The government has likewise failed to show that Claimant's income from his businesses in E.G. is not "legitimate."  Instead, the government continues to presume that the Court will accept the government's ipse dixit that Claimant's E.G. government salary is his sole "legitimate income."  Yet, as the government is aware, based on the State Department cable and South African affidavit if nothing else, Claimant's businesses in E.G. are not unlawful in E.G. and therefore the income derived therefrom is likewise legitimate.  Similarly, Claimant's timber concessions likewise generated significant legitimate income as well.

everything a claimant owns may be held in custody pending trial, even where the government acknowledges in its complaint that a claimant has a legitimate occupation, albeit a part-time one." Id.

The other pre-CAFRA cases cited by the government similarly either had additional evidence of a link, or else required it.  See United States v. Parcels of Land, 903 F.2d 36, 40 (1st Cir. 1990) (pre-CAFRA burden shifting case in which "the government introduced much more to show probable cause than simply a comparison of [claimant's] income with his expenditures," including "more direct evidence" linking the *res* to drug trafficking); United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir. 1990) (linkage evidence, including the claimant's history of drug convictions and other drug-related arrests, his implication in undercover drug transactions, unusually large cash transactions, and his unexplained travel patterns to and from Miami testified to be common to transporting illegal drugs, when combined with a large income-*res* disparity supported probable cause); United States v. $87,118.00 in U.S. Currency, 95 F.3d 511, 518-19 (7th Cir. 1996) (probable cause to believe a nexus existed included evidence of claimant's prior drug trafficking conviction, the discovery of the hidden currency *res* in small denominations, and evidence of his involvement in drug transactions amounting to nearly the same amount of money as the currency seized); United States v. 3714 Cancun Loop, Case No. 1:98CV00011, 2002 U.S. Dist. LEXIS 9996, at *10-11 (M.D.N.C. May 17, 2002) (incarcerated claimant convicted of drug conspiracy and distribution charges admitted he was a drug dealer and that he used drug proceeds to purchase some of the materials used to build the house located on the real property the government sought to forfeit); United States v. Brock, 747 F.2d 761 (D.C. Cir. 1984) (observing evidence that the *res* was involved in drug trafficking, including the simultaneous discovery of narcotics, a large quantity of cash, a loaded gun, and drug distribution paraphernalia on the same premises of the res,

created "solid links in the chain of probable cause" when combined with the net worth

evidence and thus satisfied the government's lower pre-CAFRA ultimate burden of proof);

United States v. Edwards, 885 F.2d 377, 390 (7th Cir. 1989) (finding government had probable

cause to believe drugs, drug paraphernalia, cash, and weapons seized from the defendant's

home incident to his arrest on drug trafficking charges were subject to forfeiture as traceable to

drug proceeds); United States v. Jackson-Randolph, 282 F.3d 369, 378 (6th Cir. 2002)

(requiring "other credible evidence, direct or circumstantial, of the illegal activity" in order to

offer evidence of wealth).

      The government's single post-CAFRA case cited in support of its net worth theory

explicitly recognizes the government's two-step burden to satisfy its trial burden:  "In a civil

forfeiture action, the plaintiff's burden is twofold: (1) to establish by a preponderance of the

evidence that the defendant property is subject to forfeiture and (2) that there is a substantial

connection between the defendant property and the alleged offense."  United States v. Funds

From Prudential Sec., 362 F. Supp. 2d 75, 80 (D.D.C. 2005).  Unlike here, however, the

government in Funds From Prudential Sec. had facts to link the *res* and the alleged unlawful

activity.  Following the investigation of a drug trafficking enterprise run by claimant's

boyfriend and the discovery of more than one-half million dollars in low-denomination

currency stashed in the apartment they shared, the government sought forfeiture of funds in

claimant's bank accounts.  In securing the forfeiture, the government offered evidence that the

funds came from numerous large cash deposits of small denominations multiple times per day,

in addition to evidence of income-asset disparity.  The court found this evidence sufficient to

support the government's contention "that the defendant funds are linked to illicit drug

transactions and money laundering," Id. at 80-82.

**2.      The Government's Conclusory Allegations And Unsupported Inferences Of Nexus Are Insufficient And Must Be Disregarded**

The only allegations of a link between the Jet and the alleged criminal offenses are the government's own conclusory assertions that its factual allegations regarding the circumstances surrounding the purchase of the Jet are "sufficient to establish a reasonable belief that the monies he used were proceeds of corruption."  (Opp. at 12.)   Despite the government's repeated insistence that the Court must accept the allegations in the FAC as true, the government does not dispute that "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 185-86 (D.D.C. 2001) ("The court need not, however, accept the plaintiff's legal conclusions as true.").  Indeed, as this Court aptly observed, the "heightened particularity requirement is designed to guard against the improper use of seizure proceedings and to protect property owners against the threat of seizure upon conclusory allegations." Order Memo at 18. Therefore, the Court's exercise, after disregarding merely conclusory allegations and unsupported inferences drawn by the government, is to take the remaining well-pleaded and non-conclusory factual allegations and determine whether those allegations, standing alone, are sufficient to meet the requisite pleading standard.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-680 (2009).

The government's well-pleaded, particularized allegations – particularly as they pertain to evidence of a link between SUA proceeds and the Jet – fall short of supporting a reasonable belief that the government will be able to prove by a preponderance of the evidence at trial that the Jet is in fact derived from or traceable to proceeds of specified unlawful activity.  At best, the FAC supports a reasonable belief that at trial the government will be able to prove that

Claimant spent a lot of money, that he is accused of certain acts the United States contends

violate E.G. law, and that the United States is skeptical of the economic success of Claimant's

E.G. businesses.  That is insufficient to prove by a preponderance of the evidence that the Jet is

in fact traceable to or derived from proceeds of specified unlawful activity.  Real Prop. &

Premises Known as 90-23 201st St., Hollis, New York, 775 F. Supp. 2d 545, 564-65 (E.D.N.Y.

2011) (holding claimant's unexplained income and the disparity between his income and his

spending did not support an inference that the property was related to narcotics – the specified

unlawful activity – and thus was, as a matter of law, insufficient to establish the necessary

substantial connection for forfeiture).[3]  Other than the government's conclusory averments –

which are not accepted as true – there are no particularized factual allegations evidencing a

substantial connection between the Jet and the alleged criminality.

### 3.       The Government Must Plead Specific Facts With Particularity To Support A Reasonable Belief It Can Meet Its Burden At Trial

The government misapprehends (or mischaracterizes) Claimants' position that the

government must adequately plead with particularity a link between the Defendant Assets and

the alleged specified unlawful activity.  Claimants do not contend that at the pleading stage the

government must trace the Jet to a specific SUA transaction, or even that it has to specifically

trace the funds dollar for dollar used to purchase the asset at the pleading stage.  However, the

government must allege, with particularity, specific facts to support a reasonable belief that it

will be able to specifically trace the funds used to purchase the Jet to proceeds of the specified

unlawful activity – here, offenses against a foreign nation – at trial.  Without any link between

---

[3]   See also United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1072 (9th Cir. 1994) (ruling suspicions of general criminality are insufficient; the government must show the money was specifically connected to the activity giving rise to forfeiture:  Absent such a specific connection, the "[claimant] could just as easily have been a distributor of 'street money' in a political campaign, an embezzler, a jewel smuggler, an art thief, or an S & L crook as a drug conspirator."), superseded on other grounds as stated in United States v. $80,010 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002).

the Jet and the alleged acts of specified unlawful activity, the government has failed to support a reasonable belief that at trial it will be able to perform that exercise to prove by a preponderance of the evidence that the Jet is traceable to proceeds of that specified unlawful activity.  See, e.g., Drag Racer, 899 F. Supp. at 1340-42.

> ### 4.      The Government Cannot Be Heard To Complaint Of The Nexus Requirement Because It Elected To Proceed *In Rem*

The government instituted this forfeiture action *in rem* against a single specific asset – the Jet.  Under the legal fiction of *in rem* forfeiture, the government must prove that the thing itself is guilty by proving it is traceable to or derived from proceeds of the specified unlawful activity alleged.  Various Items of Personal Property v. United States, 282 U.S. 577, 581 (1931) ("It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient.").  Yet the government's FAC pursues an *in personam* theme against Claimant, glossing over the critical requirement that it demonstrate the criminal liability of the thing it seeks to forfeit.  The government cannot merely allege that Claimant is a bad actor and that as a result any asset he owns is *ipso facto* forfeitable.  United States v. Borromeo, 995 F.2d 23, 26 (4th Cir. 1993) ("To fail to require the government to demonstrate a substantial connection between the criminal activity and the arrested assets could result in all assets belonging to one who stands convicted of violating our nation's drug laws being, *ipso facto,* subject to forfeiture regardless of their origin. Such is not the law.").

This becomes particularly significant in light of the government's allegations that Claimant spent $300 million between 2004 and 2011, but can only allege receipts of approximately $10.5 million from alleged extortion and bribery in the paragraphs of the FAC

cited in the government's opposition.[4]  No basis exists to support a reasonable belief that the

government will be able to establish *by a preponderance* millions more in criminally-derived

proceeds than it can even *allege* in the FAC.

Even if, *arguendo*, the government's allegations of corruption were true, without any

indication that the alleged proceeds were linked specifically to the Jet – as opposed to any

other assets allegedly acquired during the same time period – there is no basis to support a

reasonable belief that the government will be able to prove that the Jet is in fact traceable to the

specified unlawful activity.  For example, the government claims that the FAC "draws a strong

temporal nexus," but goes on to include in that "temporal nexus" "corrupt proceeds as far back

as 1993" (Opp. at 3.)—thirteen years before the purchase of the Jet.

Nor can the government rely on its characterization as to the gross revenues received by

Claimant's companies to support forfeiture.  Although the government contends that these

companies do not demonstrate revenues sufficient to support $300 million in spending between

2004 – 2011 (six years after the Jet was purchased), that is not the relevant inquiry.  Rather, the

relevant comparison, however, is the claimed disparity between Claimant's income and the

value of the Defendant Asset.  See Certain Real Prop. Located at 2323 Charms Rd., 726 F.

Supp. at 169.  Here, even accepting the government's allegations as true with regard to the

revenues of some of Claimant's companies, there is no disparity between Claimant's income

and the value of the Jet.

---

[4]  The government also alleges Claimant "reaped a personal profit of $186 million" from the highway-construction contract it alleges his company failed to perform under. However, the government has failed to allege that this contract and the alleged payments constitute specified unlawful activity giving rise to forfeiture.  Further, the government only alleges when $19 million of the $186 million was paid.  The government freely admits, however, that this $19 million was not paid until at least three years *after* Claimants purchased the Jet.  (FAC at ¶ 89.)  When the remaining millions were paid, if at all, is merely left to the imagination.  All the government alleges is that *by the time* the Chinese company began construction on the road – years after the acquisition of the defendant Jet – Claimant had allegedly reaped a personal profit of $186 million.  (FAC at 90.)

**B.**     **Allegations Of Attempted Misconduct Do Not Support Forfeiture**
           **Of The Jet**

The government does not dispute that its only allegation of export fees is a single allegation that a convicted coup leader made payments, which stopped three years before the Jet was purchased.  (FAC at ¶¶ 48-49.)  Nor does it dispute that the FAC concedes that several demands allegedly made by Claimant generated no proceeds from which the Jet could be derived for the simple fact that the FAC states that these demands were refused.  (FAC at ¶¶ 64-65, 72-73.)  In fact, the government's opposition again recounts refusals to pay alleged demands.  (Opp. at 3, 8, 14.)  It is undisputed, however, that such alleged criminal demands did not generate any criminal funds to which any asset could be derived.

The government's allegations of alleged *attempted* misappropriation, extortion, and other transactions that it admits *did not* in fact occur does not satisfy the government's burden. These allegations, even if accepted as true for the purposes of the motion to dismiss, do not support a reasonable belief that the government will be able to prove at trial that the Jet constitutes the proceeds of specified unlawful activity because the government freely admits that none of these acts resulted in the receipt of any illegal proceeds.  The government counters that "bribery and extortion criminalizes corrupt agreements and solicitations, even where an extortion victim refuses to pay."  (Opp. at 22 n.10.)  Even if true, however, the government misses the point:  The government has alleged a proceeds case—a refused demand, even if illegal to make the demand, does not generate proceeds from which Defendant *res* can be derived from, traceable to, or involved in.  Accordingly, despite whatever particularity the government believes it pleaded regarding these *attempted* criminal schemes, the government cannot dispute that Vice President Nguema received no proceeds of specified unlawful activity from these admittedly failed transactions.

11

**C.      The Government Is Aware And Did Not Dispute That The Predicate SUA Conduct Alleged In The FAC Is In Fact Not A Violation Of Law In E.G.**

The government does not dispute that it is well aware that Claimant's private business dealings, including Claimants' companies bidding for and being awarded government contracts, are lawful in E.G.  In fact, in its opposition, the government attempts to simply ignore the U.S. State Department Cable it relied on in the FAC, (but which it failed to attach) that demonstrates that the conduct the government alleges constitutes an offense against a foreign nation and alleged violations of E.G. law is in fact legal in E.G.[5]

> [M]uch of the corruption in Equatorial Guinea is indeed not outright theft or looting of the country's treasury but rather in murkier transactions such as sweetheart deals, influence peddling, construction contracts and finder's fees — *all of which are legal in Equatorial Guinea.*

Wheeler Decl. Ex. 4, ECF No. 31-5, at DOJ-0000591.  This undisputed evidence forecloses any claim that the FAC supports a reasonable belief that the government will be able to prove the Jet represents the proceeds of specified unlawful activity of foreign offenses when the very conduct the government alleged constituted those offenses it admitted (but tried to hide) is not actually a violation of E.G. law.[6]

---

[5]    As set forth in the Motion, the Court can properly consider the State Department cable on the instant motion to dismiss under the incorporation by reference doctrine.  See E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997); United States v. Seventy-Nine Thousand Three Hundred Twenty-One Dollars in U.S. Currency, 522 F. Supp. 2d 64, 68 (D.D.C. 2007) (in deciding a Rule 12(b)(6) motion, the Court may consider documents incorporated by reference in the complaint and matters about which the court may take judicial notice); Cortec Indus., Inc. v. Sum Holding LP, 949 F.2d 42, 48 (2d Cir. 1991) (Rule 12(b)(6) motion need not be converted into a Rule 56 motion based on attachment of documents where plaintiff has actual notice of the information and relied on the documents in framing the complaint.).  As one court explained, this doctrine "prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'"  Brownmark Films, LLC v. Comedy Partners, 682 F. 3d 687, 690 (7th Cir. 2012) (quoting Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002)).

[6]    As noted in the Motion, in the parallel action in the United States District Court for the Central District of California, Judge Wu observed based on this same evidence that "[m]uch of the EG violations the Government accuses Claimant of would seem to fit into the

II.     **CAFRA INCREASED THE GOVERNMENT'S BURDEN AT TRIAL; IT DID NOT ELIMINATE PROBABLE CAUSE AS A GATE-KEEPING FUNCTION**

    A.     **Whether Probable Cause To Institute A Forfeiture Action Survived The Enactment Of CAFRA Is A Matter Of First Impression In This Circuit**

In Claimants' Motion, Claimants requested in footnote 1 that in the event the Court denied the motion to dismiss the FAC, it should instead permit Claimants to conduct expedited discovery on the limited issue of probable cause for the institution of the forfeiture action against the Defendant Aircraft.  (Motion at 2 n.1.)[7]  The government, in its opposition brief, countered by arguing that probable cause was superseded by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") and has no bearing in forfeiture cases outside the Ninth Circuit. (Opp. at 38-40, n.15.)  The government misleadingly suggests that there is a circuit split – with the Ninth Circuit as the lone contrarian – regarding whether Section 1615 and the probable cause requirement survived the enactment of CAFRA.   However, the Ninth Circuit is in fact the only United States Court of Appeals to consider whether the requirement that the government *have* (and not merely plead) probable cause at the time it institutes its forfeiture proceeding survived the enactment of CAFRA.  And twice, the Ninth Circuit has held that it did. See United States v. $493,850, 518 F.3d 1159, 1169 (9th Cir. 2008); United States v. $186,416.00 in U.S. Currency, 590 F.3d 942, 949 (9th Cir. 2010).

The government conflates what some courts have said with regard to probable cause and the pleading standard post-CAFRA with the continuing requirement that the government actually have probable cause to institute the forfeiture action.  The cases cited by the government, as well as the Ninth Circuit, have ruled that because CAFRA increased the

---

category the State Department said was legal."  C.D. Cal. Order Granting Partial Summary Judgment No. 1 at 8 n.6 (citing the government's allegations of kickbacks from timber companies and alleged misappropriation of funds through government contracts as examples of conduct the government accuses Claimant of, but which the government's evidence – the state department cable – indicates is legal in E.G.).

    [7] This was the procedure followed by Judge Wu in the Los Angeles action.

government's ultimate burden at trial to the preponderance standard, it would now be "awkward" to say that the government has to still plead probable cause.  These cases do not hold, however, that CAFRA relieved the government of its burden at trial to prove that it had probable cause at the time it instituted the action.  See United States v. Lopez-Burgos, 435 F.3d 1, 2 (1st Cir. 2006) ("the government no longer must plead facts sufficient to establish probable cause")[8]; United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002) ("In light of CAFRA's change in the burden of proof, it is a bit awkward to say now that Rule E(2)(a) requires the complaint to allege facts sufficient to support a reasonable belief that the government can establish probable cause for forfeiture at trial.").  The government need not *plead* probable cause, but it must now plead sufficient facts to support a reasonable belief that it will be able to prove forfeitability by a preponderance of the evidence.  That is not to say that the government is relieved of its obligation to actually have probable cause to institute the action.  United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1068 (9th Cir. 1994) ("[T]he government must *have* probable cause at the time it institutes forfeiture proceedings, not merely *plead* probable cause. Whether probable cause exists to institute proceedings is solely a question of what information is in the government's possession; even if the government were to amend its pleadings to include new evidence, the amendment could not change the historical fact that the government did not have probable cause at the time it brought the case.")

---

[8]  As the Ninth Circuit explained in $493,850.00, the First Circuit in Lopez–Burgos "held that CAFRA eliminated the government's need to plead facts sufficient to establish probable cause to forfeit. At no point in its brief opinion did the First Circuit analyze whether CAFRA eliminated section 1615's requirement that the government show probable cause to institute a forfeiture action. In fact, the First Circuit was specific in noting that CAFRA increased the government's 'burden of proof at trial,' rather than replaced its initial burden in filing the complaint."  518 F.3d 1159, 1168 (9th Cir. 2008) (citations omitted).

**B.** **The Probable Cause Requirement Survived The Enactment of CAFRA**

As the Ninth Circuit has held, in enacting CAFRA, Congress did not intend to undercut the increased protections the law provided for claimants (in transferring the burden at trial to government and raising that burden) by then eliminating the probable cause standard.  See $493,850.00, 518 F.3d at 1167-69.  Indeed, the Ninth Circuit held that the retention of the probable cause requirement, together with the heightened preponderance of the evidence burden at trial, "is consistent with the legislative intent of CAFRA.  In enacting CAFRA, Congress intended to institute stronger procedural safeguards before the government could forfeit property."  $493,850.00, 518 F.3d at 1167-69.

"Post–CAFRA, establishing the forfeitability of property is distinct from having probable cause to institute the forfeiture action."  $493,850.00, 518 F.3d  at 1167.  CAFRA's establishing the forfeitability of the defendant property requirement "describes the government's burden at trial to prove entitlement to the property by presenting proof, by a preponderance of the evidence."  Id. at 1167-68.  Section 1615's probable cause requirement, on the other hand, "describes the government's burden to *get in the courthouse door* by presenting evidence that, *at the time it filed the complaint*, it had 'reasonable grounds to believe that the property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion.'"  $493,850.00, 518 F.3d at 1168 (emphasis added).

Judge Wilson's careful analysis of CAFRA is particularly persuasive.  In United States v. $186,416.00 in U.S. Currency, Judge Wilson closely examined CAFRA and held that the probable cause requirement codified in 19 U.S.C. § 1615 survived CAFRA—a conclusion that was confirmed by the Ninth Circuit, although the circuit reversed the district court's determination that the government had sufficient probable cause.  527 F. Supp. 2d 1103, 1116-19 (C.D. Cal. 2007) rev'd and remanded, 590 F.3d 942 (9th Cir. 2010) (reiterating that probable cause survived CAFRA, but reversing the district court's ruling that the government

had met its probable cause burden).  Judge Wilson first points out that 18 U.S.C. § 981(d)

"necessarily incorporates Section 1615 to the extent (if at all) that it is not inconsistent with

CAFRA's substantive provisions" by expressly stating that "the provisions of the customs laws

relating to the seizure, summary and judicial forfeiture . . . insofar as they are applicable and

not inconsistent with the provisions of this section, shall apply to seizures and forfeitures

incurred, or alleged to have been incurred, under this section."  Id. at 1116-1117.  He reasoned

that while Section 1615 and CAFRA are "partially inconsistent" insofar as the latter increases

the government's ultimate trial burden of proof to a preponderance of the evidence, Section

1615's probable cause requirement "is not wholly inconsistent with Section 983(c)(1) because

it is literally feasible for both requirements to coexist together in a sensible fashion: there is

nothing intrinsically inconsistent with requiring the Government to have probable cause to file

a lawsuit (Section 1615) and to have the ultimate burden of proving forfeitability by a

preponderance of the evidence at trial (Section 983(c)(1))."  Id.

Judge Wilson found that this same analysis rang true for Sections 983(c)(2) and

983(a)(3)(D), which are the sections the government points to as the death of Section 1615's

probable cause requirement.  That is, the sections in CAFRA that provide "the Government

may use evidence gathered after the filing of a complaint for forfeiture to establish, by a

preponderance of the evidence, that property is subject to forfeiture," and that "[n]o complaint

may be dismissed on the ground that the Government did not have adequate evidence at the

time the complaint was filed to establish the forfeitability of the property."  18 U.S.C. §§

983(c)(2), 983(a)(3)(D).  Judge Wilson reasoned that neither of these provisions contradict

Section 1615's probable cause requirement.  He explained that the former "only states that the

Government may use after-acquired evidence to prove forfeitability at trial by a preponderance.

It does not detail whether such evidence may be used to demonstrate probable cause for *filing*

the action." <u>$186,416.00 in U.S. Currency</u>, 527 F. Supp. 2d at 1117.[9]   Citing David B. Smith's

oft-cited treatise, Judge Wilson explained the Government establishes "forfeitability" with

proof by a preponderance of the evidence. The probable cause standard involves a lesser

threshold, and by itself is insufficient for the Government to achieve a successful forfeiture.

This statutory language does not indicate, as explained by Mr. Smith above, that the

Government can proceed with a forfeiture action if it lacks probable cause to initiate it.  Rather,

this provision simply allows the Government the opportunity to conduct discovery to meet its

preponderance burden, assuming it at least has the minimal untainted probable cause necessary

to commence the lawsuit.

> <u>Id.</u> at 1117-1118 (citing David B. Smith, <u>Prosecution and Defense of Forfeiture Cases</u> ¶

11.03[6] (Matthew Bender 2012)).  Accordingly, because it was not contradicted by the

enactment of CAFRA, the court held that Section 1615's probable cause requirement has been

incorporated into CAFRA pursuant to Section 981(d).  <u>Id.</u> at 1118.

> Mr. Smith observes in his treatise, contrary to the government's argument here, that

Congress "implicitly approved" the  line of cases holding the government must first *have*

probable cause to institute a forfeiture proceeding.  He notes that by using the phrase "by a

preponderance of the evidence" in Section 983(c)'s post-filing evidence provision and "to

establish the forfeitability of the property" in Section 983(a)(3)(D)'s dismissal protection

provision, "Congress clearly meant to relieve the government of the need to establish the

forfeitability of the property by the new burden of a preponderance of the evidence" at the time

it initially files the forfeiture complaint.  "Congress thought it was enough that the government

have probable cause at the time it commenced the forfeiture action, as under the old law. . . .

---

[9]   Indeed, with regards to the post-filing evidence provision of CAFRA, the legislative record explains that CAFRA "is not intended to limit the right of either party to bring a motion for summary judgment after the filing of the complaint pursuant to Fed. R. Civ. P. 56(a) or 56(b)."  146 Cong. Rec. H 2050 (Apr. 11, 2000).

Had Congress wished to enact DoJ's proposal, it would have substituted the words 'probable cause' for 'adequate evidence . . . to establish the forfeitability of the property.'"  David B. Smith, Prosecution and Defense of Forfeiture Cases ¶ 11.03[6] (Matthew Bender 2012).

Judge Wilson found that this view was further supported by the earlier version of CAFRA that was killed in 1997.  While the earlier bill would have also shifted the burden to the government and increased its trial burden to establish the forfeitability of the property, unlike the version of CAFRA eventually enacted, the earlier bill would have expressly *repealed* Section 1615's probable cause requirement and amended Section 981(d).  CAFRA as enacted, however, did not include the earlier repeal of Section 1615, nor did it amend Section 981(d).  Judge Wilson reasoned, "This omission buttresses the conclusion that the Government must still have untainted probable cause to file a forfeiture complaint."  Id. at 1118 (citing 1997 H.R.1965; 105 H.R.1965).  Judge Wilson also pointed to CAFRA's legislative history that confirms the survival of the probable cause requirement.  Specifically, Judge Wilson quoted what he characterized as a "crucial statement regarding CAFRA" by CAFRA's co-sponsor, the late Rep. Henry J. Hyde:  "'while the government may use evidence obtained after the forfeiture complaint is filed to establish the forfeitability of the property by a preponderance of the evidence, the government must still have had enough evidence to establish probable cause at the time of filing (or seizure, if earlier).'"  Id. (quoting 146 Cong. Rec. H 2050 (Apr. 11, 2000)).[10]

The Ninth Circuit became the first (and only) court of appeal to consider whether Section 1615's substantive probable cause requirement survived the enactment of CAFRA; holding that it did in that in United States v. $493,850.00 in U.S. Currency, 518 F.3d 1159 (9th

---

[10]   Similarly, Rep. Hyde also recognized that probable cause lives on in noting that "while hearsay may be used to establish probable cause for seizure, it is not admissible to establish the forfeitability of property by a preponderance of the evidence."  146 Cong. Rec. H 2050 (Apr. 11, 2000) (internal citation omitted).

Cir. 2008).  Like Judge Wilson, the Ninth Circuit found that Section 983(a)(3)(D)'s specific reference to the "forfeitability of the property" burden – a burden increased by CAFRA to a preponderance of the evidence – signaled merely the distinction of the government's burden to establish forfeitability of property at trial with the government's burden "to get into the courthouse door" by establishing that the government had probable to institute the forfeiture action in the first instance in order.  Id. at 1167-1168.

After finding that nothing in the plain reading of CAFRA "indicates that Congress intended to eliminate section 1615's probable cause requirement," the court also looked to Congress's legislative intent in enacting CAFRA and held that "the coexistence of section 1615's probable cause requirement and CAFRA is consistent with the legislative intent of CAFRA."  Id. at 1169.[11]  In enacting CAFRA, the court found that "Congress intended to institute stronger procedural safeguards before the government could forfeit property. Requiring the government to show probable cause before instituting a forfeiture action is consistent with this intent because it provides an additional procedural protection."  Id. (citing 146 Cong. Rec. H2040–01, 2051-2052; $191,910, 16 F.3d at 1069).  Having concluded that "there is no irreconcilable conflict between section 1615 and CAFRA;" and observing that "repeals by implication are disfavored" and that "'forfeiture statutes are strictly construed against the government,'" the court held "that section 1615 continues to require that the government show probable cause to institute a forfeiture action."  Id. (quoting $191,910, 16 F.3d at 1068).

---

[11]    Indeed, the Ninth Circuit observed that in the legislative record dominated by the statement of CAFRA's primary sponsor, "U.S. Representative Henry Hyde stated that 'current law would be retained allowing the government to forfeit property on a showing of probable cause if the property owner elects not to challenge the forfeiture by filing a claim.'"  United States v. $493,850, 518 F.3d at 1168-69 (quoting H.R.Rep. No. 105–358, pt. 1. at 28).

C.      **The Government Threatens Constitutional Protections of Probable Cause And Due Process In Civil Forfeiture Actions**

Were the government's view to prevail, the law would be that the government must have probable cause to search someone's home, but not to seize it. This leads to both absurd and dangerous results. As the Ninth Circuit has held on at least two occasions, the probable cause requirement in forfeiture cases survives. Were this not the case, the government would be permitted to seize "houses, papers, and effects" without constitutionally-required probable cause. That is contrary to constitutional law. Indeed, such an interpretation of CAFRA would constitutionally invalidate CAFRA. See United States v. James Daniel Good Real Prop., 510 U.S. 43, 51 (1993) (recognizing that "the Fourth Amendment applies to searches and seizures in the civil context"). As the United States Supreme Court has ruled, "the Fourth Amendment places limits on the Government's power to seize property for purposes of forfeiture. . . ." Id. at 52.

The Court also ruled, however, that the Fourth Amendment "does not provide the sole measure of constitutional protection that must be afforded property owners in forfeiture proceedings." Id. Denial of Claimants' right to challenge the sufficiency of the government's probable cause for the seizure would be a deprivation of the seized property without due process. See id. at 49-52 (1993) (holding Fourth, Fifth, and Fourteenth Amendments all place restrictions on seizures conducted for purposes of civil forfeiture: "[T]he purpose and effect of the Government's action in the present case go beyond the traditional meaning of search or seizure. Here the Government seized property not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself. Our cases establish that government action of this consequence must comply with the Due Process Clauses of the Fifth and Fourteenth Amendments."). "The proper question is not which Amendment controls but whether either Amendment is violated." Id. at 50.

20

Yet, the government would trample on the Constitution in pursuit of its zealous prosecution of the civil forfeiture remedy—A remedy that is already "disfavored in our constitutional system." $191,910.00 in U.S. Currency, 16 F.3d at 1068.  Indeed, as a result of these grave concerns with "the government's increasing and virtually unchecked use of the civil forfeiture statues and the disregard for due process that is buried in those statutes," United States v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896, 905 (2d Cir. 1992)[12], forfeiture statutes are strictly construed *against the government* and courts are "reluctant to find that a statute allows forfeiture where a plausible interpretation of the statute would not allow it." $191,910.00 in U.S. Currency, 16 F.3d at 1068 (citing United States v. One 1936 Model Ford V-8 Deluxe Coach, 307 U.S. 219, 226 (1939)).

Recognizing the seriousness of the constitutional concerns if CAFRA were interpreted to eliminate the probable cause requirement, Judge Wilson further reasoned that the court's interpretation of CAFRA to incorporate the probable cause to institute requirement of Section 1615 "is necessary to avoid substantial constitutional concerns that would emerge if Section 1615's probable cause requirement is eviscerated." $186,416.00 in U.S. Currency, 527 F. Supp. 2d at 1119.  The court observed that if the government's contention were correct, "it would have the power to do the following on a systematic scale: (1) engage in searches and seizures without probable cause, (2) institute forfeiture actions, and (3) use the discovery processes of federal court to identify evidence of forfeitability that it utterly lacked in the first place." Id.  (citing $191,910.00 in U.S. Currency, 16 F.3d at 1067 ("Without such a rule, government agents might be tempted to bring proceedings (and thereby seize property) on the

---

[12]   See also United States v. $506,231 in U.S. Currency, 125 F.3d 442, 454 (7th Cir. 1997) ("[W]e believe the government's conduct in forfeiture cases leaves much to be desired. We are certainly not the first court to be 'enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for the due process that is buried in those statutes.'").

21

basis of mere suspicion or even enmity and then engage in a fishing expedition to discover whether probable cause exists.")).  As Judge Wilson explained, "CAFRA should be interpreted, as reasonably permitted, in order to avoid any threat of constitutional invalidation. Therefore, Section 1615's probable cause requirement has survived CAFRA's enactment." Id. (citing Gray v. First Winthrop Corp., 989 F.2d 1564, 1568 (9th Cir. 1993) ("[C]ourts are obliged to impose a saving interpretation of an otherwise unconstitutional statute so long as it is 'fairly possible to interpret the statute in a manner that renders it constitutionally valid.'") (quoting Communications Workers of Am. v. Beck, 487 U.S. 735, 762 (1988))).[13]

## CONCLUSION

For the foregoing reasons, the Court should grant Claimants' motion to dismiss.  In the event the Court is inclined to deny Claimants' motion to dismiss the FAC, Claimants renew their request for limited discovery into the issue of probable cause to allow Claimants to bring a motion for summary judgment on the grounds that the government did not have probable cause to support its forfeiture claims when it instituted this action.


DATED:  January 6, 2014                  QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP

                                         By /s/ Heather H. Martin
                                             Heather H. Martin (D.C. Bar No. 489,114)
                                             heathermartin@quinnemanuel.com
                                         Quinn Emanuel Urquhart & Sullivan, LLP
                                         777 6th St. NW, Suite 1100
                                         Washington, D.C. 20001
                                         Telephone:   (202) 538-8000
                                         Facsimile:   (202) 538-8100

---

[13]   Of course, as discussed above, the legislative record demonstrates that CAFRA was intended to bolster rights, not eliminate them, including probable cause.  Indeed, CAFRA was heralded as "return[ing] asset forfeiture to the ranks of respected law enforcement tools that can be used without risk to the civil liberties and property rights of American citizens."  146 Cong. Rec. H 2047 (Apr. 11, 2000).

Duane R. Lyons (*admitted pro hac vice*)
duanelyons@quinnemanuel.com
Brian M. Wheeler (*admitted pro hac vice*)
brianwheeler@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Mike DeGeurin (D.C. Bar No. TX0092)
mdegeurin@foremandegeurin.com
Foreman, DeGeurin & DeGeurin
300 Main Street
Houston, Texas 77002
Telephone: (713) 655-9000
Facsimile:  (713) 655-1812

Attorneys for Claimants