**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 11-01874 (RC) |
| | : | | |
| v. | : | Re Document No.: | 42 |
| | : | | |
| ONE GULFSTREAM G-V JET AIRCRAFT DISPLAYING TAIL NUMBER VPCES, ITS TOOLS AND APPURTENANCES, | : : : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING CLAIMANT'S MOTION FOR A PROTECTIVE ORDER

**I.  INTRODUCTION AND FACTUAL BACKGROUND**

The United States (the "Government") has brought a civil action *in rem* seeking the forfeiture of one Gulfstream G-V Aircraft Displaying Tail Number VPCES, its tools and appurtenances (the "Aircraft").  According to the Government, the Aircraft was purchased by Teodoro Nguema Obiang Mangue ("Nguema," or "Claimant") — the Republic of Equatorial Guinea's Second Vice President and the son of President Teodoro Nguema Obiang Mbasogo — with funds derived from extortion, public corruption, embezzlement, and theft.  First Am. Compl., June 17, 2013, ECF No. 24, at ¶¶1-3, 19.  Nguema submitted a Verified Claim for the Aircraft, and on March 4, 2014, the Court granted the Government's request for limited expedited discovery to ascertain Nguema's purported interest in the Aircraft, which would determine whether he has standing to contest the Government's forfeiture action.  Verified Claim of Nguema, Dec. 1, 2011, ECF No. 5; Order, ECF No. 41.

As part of its expedited discovery, the Government noticed the deposition of Nguema on March 7, 2014, with the deposition scheduled to occur on April 23, 2014, in Washington, DC. Claimant's Mem. in Supp., Apr. 21, 2014, ECF No. 42, at 11-12.  On April 21, 2014, Nguema filed a Motion for a Protective Order (the "Motion") seeking to prevent the deposition in Washington, DC and require the Government to notice the deposition through either written interrogatories, remotely by telephone or videoconference, or in person in Equatorial Guinea.  *Id.* at 1.  Nguema did not attend the deposition as scheduled on April 23, 2014.

Upon consideration of Nguema's arguments and the Government's opposition, the Court grants the Motion, and Nguema is not required to appear in Washington, DC for a deposition regarding the limited discovery topics at issue.  The Court further concludes that the Government may notice the deposition of Nguema in Equatorial Guinea through written interrogatories, telephone, videoconference, or in person, with videoconference likely being the most efficient method for all parties.

## II. ANALYSIS

### A. Legal Standard

The Court has authority, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in responding to a discovery request.  Fed. R. Civ. P. 26(c)(1).  Among other things, Rule 26 permits the Court to "forbid[] the disclosure or discovery"; "specify[] terms, including time and place, for the disclosure or discovery"; and "prescrib[e] a discovery method other than the one selected by the party seeking discovery."  Fed. R. Civ. P. 26(c)(1)(A-C).  "[T]he party seeking a protective order [] bears the burden of proving its necessity" and "must articulate specific facts showing clearly

defined and serious injury resulting from the discovery sought." *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987) (internal citation and quotation omitted).

The general rule for the situs of a deposition is that the "party noticing the deposition usually has the right to choose the location." *Buzzeo v. Bd. of Educ., Hempstead*, 178 F.R.D. 390, 392 (E.D.N.Y. 1998) (citations omitted). There exists, however, a conflicting presumption that "in the absence of special circumstances, a party seeking discovery must go where the desired witnesses are normally located." *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987) (citation omitted); *see also Estate of Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385, 390 (S.D.N.Y. 2011) ("The usual rule … in federal litigation, is that in the absence of special circumstances, a party seeking discovery must go where the desired witnesses are normally located." (citation and quotation omitted; alteration in original)). At least one federal court also has suggested that "insofar as a foreign defendant may be more inconvenienced by having to travel to the United States than a defendant who merely resides in another state or in another judicial district, the presumption that the deposition should occur at a foreign defendant's place of residence may be even stronger." *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010).

Ultimately, when a dispute arises about the location of a deposition, the final determination is within the discretion of the Court. *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 292 F.R.D. 19, 22 (D.D.C. 2013) (citing *Fin. Gen. Bankshares, Inc. v. Lance*, 80 F.R.D. 22, 23 (D.D.C. 1978)). In addition, if a disagreement arises about the method by which a deposition is taken, Rule 30 states that a "court may on motion order [] that a deposition be taken by telephone or other remote means," Fed R. Civ. P. 30(b)(4), or through written questions. Fed R. Civ. P. 30(c)(3). Rule 30 also includes the power to order a

3

deposition by videoconference. *See Shockey v. Huhtamaki, Inc.*, 280 F.R.D. 598, 601 (D. Kan. 2012) (construing Rule 30(b)(4) to include the power to order depositions by videoconference).

### B. Whether Claimant Should Be Deposed In Washington, DC

The Government noticed Nguema's deposition in Washington, DC, rather than in his home country of Equatorial Guinea. Claimant's Mem. in Supp., ECF No. 42, at 11-12. Nguema refused to attend the deposition on the scheduled date of April 23, 2014, and he now seeks through the Motion protection against being required to attend a deposition in Washington, DC at a later date. *Id.* at 2 n.1. Nguema raises several arguments in favor of granting the Motion, including foreign sovereignty concerns, the limited scope of discovery involved, and the availability of alternative methods for deposing him in Equatorial Guinea. The Government rejects these arguments and raises its own reasons for why the Court should order Nguema to appear in Washington, DC for the deposition. After considering both parties' arguments and for the reasons discussed below, the Court finds that Nguema has met his burden of demonstrating good cause for the protective order. *See* Fed. R. Civ. P. 26(c)(1); *Avirgan*, 118 F.R.D. at 254.

1. Presumption Of Holding The Deposition At The Witness's Location

Nguema argues that there are no "special circumstances" to overcome the presumption of holding the deposition at his home location of Equatorial Guinea, rather than Washington, DC. *Farquhar*, 116 F.R.D. at 72. In particular, Nguema asserts that "the District holds no special or compelling factual significance justifying departure from the strong presumption that the deposition take place in E.G. [Equatorial Guinea]," and "[t]o the extent Claimant chose to file a claim, that choice was only out of necessity to prevent default judgment of forfeiture against his valuable property because of the government's choice to file an *in rem* forfeiture action in this District." Claimant's Mem. in Supp., ECF No. 42, at 19. In response, the Government argues

4

that because Nguema purchased the Aircraft in the United States, filed his Verified Claim to participate in this forum, and has the burden of proof for establishing standing, he cannot now complain about attending a deposition in Washington, DC to adjudicate the claim. Pl.'s Mem. in Opp'n, ECF No. 43, at 14. The Government also asserts that Washington, DC is a proper location for the deposition because Nguema's counsel is in the district, as are the Government's attorneys and other persons necessary for the deposition, such as a stenographer, videographer, and translator. *Id.* at 17-18.

In addition, the Government cites *United States v. Kokko* to support the proposition that "[a]bsent a showing of good cause under Rule 26(c), a foreign claimant in a federal forfeiture proceeding … can be required to be deposed in the district where the action is pending." No. 06-20065, 2007 U.S. Dist. LEXIS 54885, at *18 (S.D. Fla. July 30, 2007); Pl.'s Mem. in Opp'n, ECF No. 43, at 15. The operative word in *Kokko*, however, is "can"; although it is of course within this Court's discretion to order the deposition in the forum district, doing so is far from obligatory — even when the claimant availed himself to the forum by filing a claim. Forfeiture proceedings do not compel departure from the rule that "[t]he matter of the location of depositions of defendants ultimately is within the discretion of the Court."[1] *Paleteria La Michoacana, Inc.*, 292 F.R.D. at 22 (citation and quotation omitted). As such, "each application must be considered on its own facts and equities." *Farquhar*, 116 F.R.D. at 72 (citation omitted).

Furthermore, the Government's argument that Nguema should appear in this forum because he filed a claim here directly conflicts with the presumption "that depositions of

---

[1] Although this is an *in rem* proceeding brought against the Aircraft, Nguema is, for all intents and purposes, the defendant-party here because "[c]ourts have departed from the fiction that the property itself is the party in an *in rem* action." *United States v. Banco Intrenacional/Bital S.A.*, 110 F. Supp. 2d 1272, 1279 (C.D. Cal. 2000).

defendants and corporate officers will take place in the district where the deponent resides or has a principal place of business." *Trs. of the Local 813 Ins. Trust Fund v. Indus. Recycling Sys.*, No. 12-CV-1522, 2013 U.S. Dist. LEXIS 167566, at *5 (E.D.N.Y. Nov. 25, 2013) (citation and quotation omitted).  Indeed, because "defendants … are not before the court by choice[,] courts have held that plaintiffs normally cannot complain if they are required to take discovery at great distances from the forum." *Farquhar*, 116 F.R.D. at 72 (citing *Work v. Bier*, 107 F.R.D. 789, 792 (D.D.C. 1985)).

The Court recognizes that both parties face significant inconvenience and expense for conducting this deposition in person, no matter the location.  The Court, however, is not persuaded that Nguema should be deposed in Washington, DC simply because he filed a claim for the Aircraft in the forum the Government selected, or because he hired Washington, DC counsel.  Nonetheless, given the conflicting presumptions at issue, the Court must consider Nguema's additional arguments to determine whether he has demonstrated good cause for granting the Motion.

2.  Principles Of Foreign Sovereignty

Nguema argues that foreign sovereignty principles caution a federal court against ordering another nation's sitting vice president to attend a deposition in the United States. Claimant's Mem. in Supp., ECF No. 42, at 16-17.  In response, the Government asserts that the opposite is true: deposing Nguema in Washington, DC avoids the foreign sovereignty concern that may arise were the deposition to occur in Equatorial Guinea.  Pl.'s Mem. in Opp'n, ECF No. 43, at 12.  The basis for the Government's argument is the worry that when "a federal court compels discovery on foreign soil, foreign judicial sovereignty may be infringed." *In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 538 (D. Md. 1996).  The

companion to this argument is that "when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated." *Id*.; *see also Work v. Bier*, 106 F.R.D. 45, 52 (D.D.C. 1985) ("[V]iolation of the other country's judicial sovereignty is avoided by ordering that the deposition take place outside the country." (quoting *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503, 521 (N.D. Ill. 1984))).

First, the Government's foreign sovereignty justification is weakened considerably by the fact that Nguema, himself a high-ranking representative within the Equatorial Guinean government, has proposed holding the deposition on his own soil. Claimant's Mem. in Supp., ECF No. 42, at 12. Second, given Nguema's government position, the Court must be especially vigilant about protecting him from the risk of "annoyance, embarrassment, oppression, [] undue burden [and] expense" if he was ordered to attend a deposition in the United States. Fed. R. Civ. P. 26(c)(1); *see also Alliance for Global Justice v. Dist. of Columbia*, No. CIV.A.01-00811, 2005 WL 1799553, at *1 (D.D.C. July 29, 2005) ("[C]ourts have offered special protections to high-ranking government officials."); *Marisol A. v. Giuliani*, No. 95 CIV. 10533, 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998) ("While granting a protective order and quashing a deposition is the exception rather than the rule, the burden a deposition would place on a high ranking government official must be given special scrutiny.").

The uniqueness of Nguema's top-level government position distinguishes this matter from most other discovery disputes involving foreign litigants, and "special protections" must be afforded to him. *Alliance for Global Justice*, 2005 WL 1799553, at *1. Accordingly, the Court is not persuaded that foreign sovereignty principles necessitate holding the deposition in Washington, DC; rather, any such concern is significantly outweighed by the imposition on Equatorial Guinea's sovereignty that might occur if a federal court were to order one of its high-

ranking government officials to attend a deposition in the United States — particularly when acceptable alternatives for conducting the deposition exist, as is discussed in more detail below. As such, foreign sovereignty principles compel in favor of granting the Motion.

### 3. Need For Court Supervision

In further support of the Motion, Nguema argues that the Court's ability to supervise his deposition is the same in Equatorial Guinea as in Washington, DC, but even if that was not the case, the mere possibility of discovery disputes is insufficient to require a deposition in the forum district. Claimant's Mem. in Supp., ECF No. 42, at 20. The Government counters that holding the deposition in Washington, DC better allows the Court to supervise the proceeding, as compared to a deposition conducted remotely or in person in Equatorial Guinea. Pl.'s Mem. in Opp'n, ECF No. 43, at 9. The Government also argues that the need for Court supervision is particularly acute in this matter because Nguema allegedly has not complied fully with the Government's prior discovery requests, as well as the fact that Nguema, as the Second Vice President of Equatorial Guinea, may be unwilling to answer questions from the Government attorneys. *Id.* at 9-10.

The Court finds that the possibility of disputes arising during the deposition is inadequate to require Nguema to travel to Washington, DC for this proceeding. As the Southern District of New York has explained, "[T]hat discovery disputes may arise does not justify … requiring depositions to be taken in the forum; such a conclusion would collapse the presumption in favor of deposing corporate defendants in their place of business and amounts to overprotection of a court's interest." *Snow Becker Krauss P.C. v. Proyectos E Instalaciones De Desalacion, S.A.*, No. 92 CIV. 2644, 1992 WL 395598, at *3 (S.D.N.Y. Dec. 11, 1992). This Court is capable of handling discovery disputes — if they should arise at all — during or after the deposition,

regardless of the deposition's location or method.  Accordingly, "the Court will not anticipate disputes by requiring the parties to appear in the forum for [a] deposition."  *Id.*

### 4.  Limited Scope Of Expedited Discovery: Claimant's Standing

Nguema next argues that he should not be put through the "enormous burden and inconvenience of traveling to the United States for the limited deposition on the narrow issue of standing," particularly given the low burden of demonstrating standing at this stage.  Claimant's Mem. in Supp., ECF No. 42, at 27-29.  The Government counters that determining Nguema's standing is not so straightforward following evidence that Nguema, through his company Ebony Shine International LTD, transferred ownership of the Aircraft to the government or presidency of Equatorial Guinea.  Pl.'s Mem. in Opp'n, ECF No. 43, at 22.  As such, the Government argues that the deposition will require multiple exhibits and follow-up questions, which make the standing issue more complicated than Nguema suggests.  *Id.* at 22-23.

The Court granted the Government's request for limited expedited discovery on the sole issue of verifying Nguema's interest in the Aircraft, which dictates his standing to oppose the Government's forfeiture claim.  Order, ECF No. 41.  Although determining Nguema's interest in the Aircraft may have become more complicated than it should be, it remains a relatively narrow issue, and the limited scope of discovery at this time gestures against holding the deposition in Washington, DC.  Ordering Nguema, a vice president of a foreign nation, to travel to Washington, DC for a limited scope of questioning would be expensive, inconvenient, and inefficient.  *See Koch v. Pechota*, No. 10 CIV. 9152, 2012 WL 2402577, at *6 (S.D.N.Y. June 26, 2012) ("A motion 'not to have a deposition at a particular site, or to compel deposition in a particular location, is considered by reviewing three factors of the cost, convenience, and litigation efficiency of the designated location.'" (quoting *Sloniger v. Deja*, No. 09-CV-858S,

9

2010 WL 5343184, at *5 (W.D.N.Y. Dec. 20, 2010))). These costs are particularly acute when alternative means for conducting the deposition exist. Accordingly, the limited scope of discovery, in conjunction with Nguema's location in Equatorial Guinea, compels against holding the deposition in Washington, DC and in favor of granting the Motion.

          5. Practicability Of Conducting The Deposition In Equatorial Guinea

Nguema argues that the Court should grant the Motion because legitimate alternatives exist for deposing him in Equatorial Guinea. Claimant's Mem. in Supp., ECF No. 42, at 23-24. The Government rejects the possibility of holding the deposition remotely or in person in Equatorial Guinea and instead argues that only a deposition in the United States is appropriate. Pl.'s Mem. in Opp'n, ECF No. 43, at 20. For the reasons discussed below, the Court finds that there are reasonable methods available to the Government for deposing Nguema without requiring him to travel to the United States. The availability of these options further suggests that good cause exists for granting the Motion.

          *a. Intervention From Equatorial Guinea's Government*

As an initial matter, the Government argues that Nguema should not be deposed in Equatorial Guinea because the government may not permit the deposition on its soil. *Id.* at 4, 17 n.8. In support, the Government cites a statement from the Equatorial Guinean government asserting that it will not comply with a judicial order to forfeit or seize the Aircraft. *Id.* at 13 (citing Decl. of Francisco Javier Ngomo Mbengono, ECF No. 12-3, at ¶8). The Government, however, has not provided specific facts showing that the Equatorial Guinean government actually intends to prevent this deposition from occurring there. Instead, Nguema informs the Court on multiple occasions through his Motion that he is ready, willing, and able to be deposed in Equatorial Guinea. Claimant's Mem. in Supp., ECF No. 42, at 12 n.2 ("Claimant would agree

10

that a deposition in E.G. [Equatorial Guinea], whether through written questions, by remote means, or in-person, would be governed by the Federal Rules of Civil Procedure."); *id.* at 19-20 ("[T]he government will get access to the same discovery from Claimant regardless of the location of the deposition, or if it is by remote means.  Indeed, Claimant will be examined on the same documents, and is willing to agree that the same rules of procedure will govern the deposition regardless of location."); *id.* at 25 ("[T]he deposition of Claimant, if any, should commence in E.G. [Equatorial Guinea] via telephonic or videoconference at the government's cost.").

Given that Nguema, the Second Vice President of Equatorial Guinea, tells this Court that the deposition may occur in his country — whether written, remotely, or in person — the Court is not persuaded at this time by the Government's apprehension about the political infeasibility of conducting the deposition there.  If Nguema's position about being deposed in Equatorial Guinea changes, or if the Equatorial Guinean government intervenes to prevent the deposition, the Government is free to return to this Court for reconsideration at that time.[2]

---

[2] If Nguema's position changes regarding his ability to be deposed in his home country, the Government may ask the Court to consider an order compelling him to appear for a deposition in Washington, DC.  The Court notes that Nguema bears the burden of establishing his standing in this matter, and the failure to cooperate with discovery may impact negatively his ability to meet that burden.  *See United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 959 F. Supp. 2d 81, 94-95 (D.D.C. 2013) (explaining that the claimant bears the burden of establishing standing in a civil forfeiture action).  In addition, Nguema's failure to comply with a deposition in Equatorial Guinea, particularly after pledging to this Court his willingness to cooperate, could result in other repercussions against him, including the inability to pursue further his claim for the Aircraft.  *See United States v. $22,555.00 in U.S. Currency*, No. 1:11-CV-1079, 2012 WL 2906835, at *2-4 (N.D.N.Y. July 16, 2012) (explaining that "although Fed. R. Civ. P. 37(b) limits sanctions to parties, courts have consistently held that an *in rem* claimant is a party to an action," and dismissing claimant's claim and answer due to his failure to participate in the discovery process and failure to comply with an order compelling discovery).

11

*b. Compliance With The Federal Rules Of Civil Procedure*

The Government also expresses concern about conducting a deposition under the Federal Rules of Civil Procedure if Nguema is located in Equatorial Guinea, particularly whether the deposition would meet the requirements of Rule 28(b).[3] Pl.'s Mem. in Opp'n, ECF No. 43, at 11, 17 n.8. The Court appreciates this concern but believes Nguema has satisfied the issue based on his Motion. Nguema tells the Court that he "would agree that a deposition in E.G. [Equatorial Guinea], whether through written questions, by remote means, or in-person, would be governed by the Federal Rules of Civil Procedure." Claimant's Mem. in Supp., ECF No. 42, at 12 n.2; *see also id.* at 19-20. The Court is confident that given Nguema's statement of cooperation, the parties can work out how to conduct the deposition in compliance with the Federal Rules. If Nguema changes his position on this point, the Government is free to return to this Court for redress.

*c. Methods For Conducting The Deposition In Equatorial Guinea*

Nguema argues that he need not appear for a deposition in Washington, DC in large part because legitimate alternatives exist for deposing him in Equatorial Guinea. These alternatives include deposing him through written questions, remotely by telephone or videoconference, or in person at his hometown of Malabo, Bioko, Equatorial Guinea. *Id.* at 1. As was explained above, the Government maintains that deposing Nguema while he is in Equatorial Guinea is not a practical option for obtaining the necessary discovery. Pl.'s Mem. in Opp'n, ECF No. 43, at 20. The Court disagrees with the Government and finds that several reasonable alternatives exist.

---

[3] Fed. R. Civ. P. 28(b)(1) states that a deposition may be taken in a foreign country in one of four ways: "(A) under an applicable treaty or convention; (B) under a letter of request, whether or not captioned a 'letter rogatory'; (C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; or (D) before a person commissioned by the court to administer any necessary oath and take testimony."

12

i. Written Interrogatories Or Remote Deposition

The Government is entitled under the Federal Rules of Civil Procedure to conduct Nguema's deposition through written interrogatories or telephonically, although these likely are not the most preferable methods available.[4]  *See* Fed R. Civ. P. 30(b)(4); (c)(3).  Alternatively, the Government may depose Nguema through videoconference.  In his Motion, Nguema indicates that he is amicable to being deposed through videoconference from Equatorial Guinea.  The Government argues that conducting the deposition by videoconference is unfair and impractical given its discovery needs.  Pl.'s Mem. in Opp'n, ECF No. 43, at 20.  Specifically, the Government questions whether Malabo, Bioko, Equatorial Guinea, possesses adequate facilities for a videoconference deposition, *id.* at 23, and argues that a remote deposition "lends itself to the creation of a murky record, potential technical difficulties, obstruction, further delay, and more discovery disputes."  *Id.* at 20.  Nguema counters that the Government's concerns are unfounded, and Malabo possesses "satisfactory technology infrastructure … to conduct a

---

[4] The Court recognizes that telephonic depositions are disfavored because it is impossible to see the witness's demeanor, watch what documents the witness is reviewing, or monitor who else the witness is talking with.  *See United States v. Real Prop. Located at 700 N. 14th St., Springfield, Ill.*, No. 12-cv-3052, 2013 U.S. Dist. LEXIS 147282, at *5 (C.D. Ill. Oct. 11, 2013) ("A telephonic deposition is not as effective [for obtaining controversial testimony] because the examiner cannot observe the demeanor of the deponent over the telephone and so may not be able to ask follow up questions that will secure the needed discovery.  The examiner also cannot know whether anyone is listening in or helping the witness." (citation omitted)).  The Court also understands that written depositions likely are an inferior alternative to the other available remote options.  As the Southern District of California has explained, "[A] written question deposition would be inadequate for the same reasons telephonic depositions are not a reasonable substitute for in-person proceedings.  Moreover, the type of testimony to be elicited from claimants in a forfeiture action does not appear to lend itself to advance formulation of follow-up questions."  *United States v. $160,066.98 from Bank of Am.*, 202 F.R.D. 624, 631 (S.D. Cal. 2001); *see also Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989) (explaining that written depositions do "not permit the probing follow-up questions necessary in all but the simplest litigation" and "counsel are unable to observe the demeanor of the witness and evaluate his credibility in anticipation of trial") (citation omitted)).  Nevertheless, the Government may depose Nguema by written questions or telephonically if it so chooses.

deposition by remote means such as … by videoconference." Claimant's Reply, Apr. 23, 2014, ECF No. 44, at 10.  Nguema also maintains that the omnipresent federal procedural factors of cost, convenience, and efficiency weigh in favor of a videoconference deposition.  Claimant's Mem. in Supp., ECF No. 42, at 25.

Ample case law recognizes that a videoconference deposition can be an adequate substitute for an in-person deposition, particularly when significant expenses are at issue or when the deposition will cover a limited set of topics.  *See*, *e.g*., *Gee v. Suntrust Mortgage, Inc.*, No. 10-CV-01509, 2011 WL 5597124, at *3 (N.D. Cal. Nov. 15, 2011) ("[Defendant's] argument that conducting the depositions via videoconference would be detrimental to its ability to question and observe the deponents is unconvincing.  Parties routinely conduct depositions via videoconference, and courts encourage the same, because doing so minimizes travel costs and permits the jury to make credibility evaluations not available when a transcript is read by another." (citation and quotation omitted)); *Ins. Distributors Int'l (Bermuda) Ltd. v. Edgewater Consulting Grp. Ltd.*, No. A-08-CA-767, 2010 WL 567233, at *2 (W.D. Tex. Feb. 10, 2010) ("The Court notes that, given the narrow focus of the testimony, and the location of the witnesses, it may be most efficient to arrange the deposition via a video conference."); *Brasfield v. Source Broadband Servs., LLC*, 255 F.R.D. 447, 450 (W.D. Tenn. 2008) ("Defendants have given no reason why the subject matter to be covered in the out-of-state [] plaintiffs' depositions is so significant that it requires an in-person oral deposition.  The court sees no reason why the relatively simple straightforward issues in this case would require a deposition that could not be conducted by alternative means, such as phone or video conferencing.").

The Government, however, cites *United States v. Approximately $57,378 in United States Currency* as support for its argument that only an in-person deposition is adequate.  No. C08-

5023, 2010 U.S. Dist. LEXIS 121022 (N.D. Cal. Oct. 27, 2010).  In *Approximately $57,378*, the court denied a motion for a protective order and ordered the claimant to travel from Atlanta to San Francisco for an in-person deposition.  *Id.* at *6-7.  In doing so, the court rejected the claimant's argument for a videoconference deposition because "the Government needs an in-person opportunity to observe [the claimant's] demeanor, ask follow-up questions, and confront [her] with prior inconsistent statements she has made."  *Id.* at *3 (citation omitted).  The court further explained that a videoconference deposition was disfavored because "[t]he Government … requires [the claimant] to examine multiple exhibits, including tax returns and bank statements, during the deposition."  *Id.*

The Court finds the circumstances here distinguishable from *Approximately $57,378* and disagrees about the limitations of a videoconference deposition in this instance.  First, and most importantly, *Approximately $57,378* did not involve a foreign deponent, let alone one who is the sitting vice president of another country.  *See In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010) ("[I]nsofar as a foreign defendant may be more inconvenienced by having to travel to the United States than a defendant who merely resides in another state or in another judicial district, the presumption that the deposition should occur at a foreign defendant's place of residence may be even stronger."); *Alliance for Global Justice v. Dist. of Columbia*, No. CIV.A.01-00811, 2005 WL 1799553, at *1 (D.D.C. July 29, 2005) ("[C]ourts have offered special protections to high-ranking government officials.").

Second, Nguema's deposition will cover only a limited set of topics, which, combined with the extensive travel and cost at issue, is exactly when videoconference depositions are most useful.  *See Ins. Distributors Int'l (Bermuda) Ltd.*, 2010 WL 567233, at *2 ("The Court notes

15

that, given the narrow focus of the testimony, and the location of the witnesses, it may be most efficient to arrange the deposition via a video conference.").

Third, modern videoconference technology will allow the Government to observe Nguema and ask follow up questions as is necessary to obtain the relevant testimony. *See WIHO, LLC v. Hubbauer*, No. 12-CV-1386, 2013 WL 6044424, at *2 (D. Kan. Nov. 14, 2013) ("Conducting the depositions by videoconference addresses the concerns associated with telephonic depositions, such as depriving the opposing party of the opportunity for face-to-face confrontation or the opportunity to evaluate the deponent's nonverbal responses and demeanor." (citation omitted)).

And fourth, the Court is not persuaded that the potential use of exhibits necessitates requiring Nguema to travel to the United States for a deposition, as the Government can overcome this challenge by organizing its exhibits ahead of time and supplementing the exhibits as is needed during the deposition. *See Catipovic v. Turley*, No. C11-3074, 2013 WL 1718061, at *10 (N.D. Iowa Apr. 19, 2013) (explaining that the purported "hurdle" of using exhibits at a videoconference deposition in Hungary "is relatively easily overcome" because "the relevant documents can be emailed, faxed, or sent to Hungary" in advance). In addition, the claimant in *Approximately $57,378* represented herself, 2010 U.S. Dist. LEXIS 121022, at *3, whereas Nguema has obtained counsel from the United States who can assist with handing exhibits. Pl.'s Mem. in Opp'n, ECF No. 43, at 18. For the above reasons, the Court finds that videoconference is a reasonable alternative for deposing Nguema.

ii. In-Person Deposition

Lastly, if the Government still believes that these remote alternatives are inadequate, it is entitled to conduct an in-person deposition of Nguema in Equatorial Guinea. The Government

16

offers several reasons for why only an in-person deposition in Washington, DC is sufficient, such as the need for an interpreter and the use of multiple exhibits, *id.* at 22, as well as concerns about the expense and safety of traveling with attorneys and support personnel to Equatorial Guinea. *Id.* at 16-18.  Nonetheless, in the Motion Nguema proposes conducting an in-person deposition in his home country, and the Government may take him up on that offer if it so chooses.

In sum, the Court finds that satisfactory alternatives exist for deposing Nguema without requiring him to travel to Washington, DC.  The availability of these methods augments the risk of "annoyance, embarrassment, oppression, or undue burden or expense" if Nguema was ordered to appear unnecessarily in the United States for a deposition.  Fed. R. Civ. P. 26(c)(1).

*       *       *

For the reasons discussed above, the Court finds that Nguema has met his burden of demonstrating good cause for a protective order.  The Government, moreover, has not demonstrated special circumstances to overcome the presumption that a deposition should occur where the witness is located — in this instance, Equatorial Guinea.  Accordingly, the Court grants the Motion, and Nguema is not required to appear in Washington, DC for the deposition.  The method of conducting the deposition in Equatorial Guinea remains within the Government's discretion.  Nguema has indicated to this Court that he consents to these alternative methods, including videoconference, so long as he is not required to travel to Washington, DC.  In granting the Motion, the Court expects Nguema will cooperate with whichever method the Government selects when the deposition is rescheduled.

## III.  CONCLUSION

For the foregoing reasons, Claimant's Motion is granted.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 9, 2014                                                                RUDOLPH CONTRERAS
                                                                                                     United States District Judge